Not only is it vague, but it is without substance, for as Judge Odom sagely observed, "the question would by its terms be answered in the affirmative for *all* men." *Id.*, 522 S.W.2d at 946 (emphasis supplied). This unduly vague allocation of the burden therefore transgresses the Due Process Clause and the Eighth Amendment. *See Apprendi*, 530 U.S. at 469; *Winship*, 397 U.S. at 394.

As *Apprendi* instructs, such a failure is unconstitutional and grounds for federal habeas relief. Texas had only to prove that which it could prove of any, even a Saint. As a consequence, Petitioner submits that the presence of the words, "beyond a reasonable doubt" were a meaningless recitation that allocated no real burden. Thus, as to the future dangerousness issue, despite the recitation of this burden, functionally the State bore no burden of proving death was the punishment the jurors should impose - which is precisely the inquiry the issue posed. This failure is legally inappropriate and unconstitutional.

Thus, the finding that there was a "probability" that Escamilla would be a continuing threat to society is constitutionally deficient because the requisite burden of proof was not rightly imposed, the submitted instructions diluted and confused the requisite finding, and the submitted instruction eviscerated the requisite burden.

### 7.   Conclusion

Because the Texas courts' determination of Esamilla's habeas claim resulted in a decision that was contrary to and involved an unreasonable application of, clearly established Federal law, *Apprendi*, as determined by the Supreme Court of the United States, habeas corpus should issue. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Escamilla's habeas claims resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court, this

Court should grant his requested relief in its entirety.  *Id.*

### J:    CLAIM TEN: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO CHALLENGE THE UNLAWFUL PROBABILITY DEFINITION

As noted in Claim Nine, *supra*, while trial counsel preserved the objection to the use of

the term "probability" in the first special issue, appellate counsel did not raise the issue.  (Trial

Court Transcript Vol. 39, pp. 127-28).

### 1.    State Habeas Complaint

During state habeas proceedings, Escamilla complained that appellate counsel failed to

complain that the use of the probability term in the first special issue diluted the burden of proof

in derogation of due process.  (State Habeas Application at 57).  Escamilla noted that he was

entitled to constitutionally effective representation on appeal.  (State Habeas Application at 57)

(citing, *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)).  Escamilla

asserted that the failure to raise the issue was "clearly deficient" and noted that the issue had

been raised in numerous appeals.  (State Habeas Application at 517 (citing, inter alia, *Lagrone*

*v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997)).  Lastly,

Escamilla noted that he had addressed the merits of his contention that the probability term was

improper in his ninth ground and submitted that the use of it rendered TEX. CODE CRIM. PROC.

ANN. art. 37.071 § 2(b)(1) unconstitutional.  (State Habeas Application at 58).

### 2.    State Court Findings

The trial court found that Escamilla did not prevail upon this complaint because as

adduced earlier in its findings the issue did not run afoul of *Ring* and *Apprendi*, and thus,

counsel's decision not to raise the issue was not deficient.  (State Habeas Findings of Fact and Conclusions of Law 231-233).

### 3.      Standard

As initially adduced in Claim Eight, *supra,* criminal defendants possess a constitutional right to effective assistance of counsel on appeal. *Evitts,* 469 U.S. at 393-95, 105 S.Ct. at 83. Contentions of ineffective assistance of counsel on appeal are governed by *Strickland. Phillips,* 210 F.3d at 348.  That said, an "attorney need not advance *every* argument, regardless of merit, urged by the appellant." *Evitts*, 469 U.S. at 394, 105 S.Ct.at 835 (citations omitted).

### 4.      Deficiency - a Nonfrivolous Issue

That the underlying issue, propriety of this future dangerousness issue, has been previously rejected is of no moment for the instant jurisprudential context, capital litigation, has historically been one of evolution or progress.  *See Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).   The responsibility to raise issues that appear foreclosed therefore obtains.  If such responsibility did not attach, the Republic's courts simply could not advance our jurisprudence despite society's evolution.  That in this very generation that which seemed to be settled law beyond and above question, the Federal Sentencing Guidelines, is now found to be far from such is a prime example of such evolution.  *See Booker, supra.*  Evolution of this caliber takes place only when counsel raises issues that appear foreclosed.

Moreover, this issue was not frivolous.  As an initial consideration, the fact that it has been raised before proves its viability in the eyes of the defense bar.  *See, e.g., Lagrone*, 942 S.W.2d at 618.  Further, as initially adduced above in Claim Nine, subsection six, the issue bore merit because the submitted issue is utterly vague, illogical, and consistent with its terms must

always be answered yes. *See Jurek v. State*, 522 S.W.2d at 945 (Odom, J., concurring in part and dissenting in part). The question, therefore, that remains is one of prejudice.

### 5.    Prejudice

Appellate counsel's failure to raise this issue cannot be justified by any strategic reasoning. Indeed, such issue has been raised in other, similar, cases. *See Richardson v. State*, 2008 WL 217973, *5, n. 27 (Tex. Crim. App. 2008). Further, as set forth in the foregoing section, counsel possesses an obligation in the capital context to continue to advance seemingly hopeless challenges for none know the day or the time that the courts will recognize a social advancement and declare a concomitant jurisprudential development. This is not an impossible duty of prescience but a requirement of perseverance. Moreover, as delineated above, in subsection six of Claim Nine, the issue is meritorious and should result in reversal. Thus, there exists a reasonable probability that, but for counsel's omission of the issue Escamilla would have prevailed. The result of counsel's deficiency, therefore, produced a fundamentally unfair and unreliable outcome.

### 6.    Conclusion

Because the Texas courts' determination of Escamilla's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, habeas corpus should issue and Escamilla's requested relief be granted. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Escamilla's habeas claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety. *Id.*

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 154**

**K:    CLAIM ELEVEN: TEXAS'S 10-2 RULE (ALSO REFERRED TO AS THE 12/10 RULE) THAT FAILS TO INFORM JURORS OF THE CONSEQUENCES OF AN 11-1 FINDING REGARDING FUTURE DANGEROUSNESS VIOLATES PETITIONER'S RIGHT TO DUE PROCESS AND RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT**

The Fourteenth Amendment to the United States Constitution forbids deprivation of life or liberty in the absence of due process of law.  U.S. CONST. amend. XIV.  The Eighth Amendment to the United States Constitution forbids the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII.  Escamilla submits that these provisions were violated here.

In Texas, all twelve jurors must answer the first special issue (future dangerousness) affirmatively and unanimously before the trial court may impose the death penalty.  However, to receive a life sentence, at least ten jurors must answer the special issue negatively.  Unanimity is also required from the jury on the mitigation special issue – the consequences of which would result in a death sentence.  Again, in contrast, only ten jurors must vote to grant leniency that would result in a life sentence.  More precisely, neither the trial court, the parties or counsel may disclose to the jury members the consequences of failing to reach unanimity on both issues.  This feature of the Texas statutory scheme necessarily creates confusion and, consequently, a violation of Petitioner's constitutional rights.

More precisely delineated, the constitutional violations evidence are four-fold.  First, the framing of the second issue  prevented the jurors from giving due consideration to mitigating evidence in violation of the United States Supreme Court decision in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).  Second, the instructions undermined the jury's sense of responsibility for imposing a death sentence, in violation of the Eighth

Amendment and so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process. Third, the State was relieved of the duty to prove beyond a reasonable doubt that Escamilla merited a death sentence, denying Escamilla due process. And finally, the mitigation issue and accompanying explanations were excessively vague, resulting in arbitrary and capricious sentencing patterns in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

### 1.    The Special Issues

Upon conclusion of the presentation of evidence at the punishment phase of Escamilla's trial, the jury was instructed to answer Special Issues One (future dangerousness) and Two (mitigation). Regarding unanimity, the jury was told: "You may not answer Special Issue No. 1 'Yes' unless the jury agrees unanimously, and you may not answer Special Issue No. 1 'No' unless 10 or more members of the jury agree. (I. C.R. 319). Concomitantly, the jury was instructed "You may not answer Special Issue No. 2 'No' unless the jury agrees unanimously, and you may not answer Special Issue No. 2 'Yes' unless 10 or more members of the jury agree. (I. C.R. 320).

The trial court instructed the jury that the State bore the burden of proving beyond a reasonable doubt that Special Issue One should be answered affirmatively. (I. C.R. 319). The jury was not so instructed with regards to Special Issue Two. All members of the jury answered issue one affirmatively. (I. C.R. 323). All members of the jury answered issue two negatively. (I. C.R. 324). Consequently, under the trial court's instructions and under the law of Texas, Escamilla was sentenced to death.

## 2.    Appeal and State Habeas Contentions

On direct appeal, Escamilla unsuccessfully contended that the Texas death penalty schema violated the federal constitution "because it simultaneously restricts and allows unlimited or 'open-ended' juror discretion to impose the death penalty." *Escamilla v. State*, 143 S.W.3d 814, 828 (Tex. Crim. App. 2004). Escamilla also unsuccessfully contended that the Texas death penalty schema violated the federal constitution because the mitigation special issue sent mixed signals. *Id.* Escamilla further complained that the charge "implicitly puts the burden [up]on [Escamilla] to prove the mitigation special issue" and also unsuccesfully challenged the 12/10 rule. *Id.* Escamilla also contested, without success, that the charge violated the federal constitution because it failed to define "probability," "continuing threat to society," and "criminal acts of violence." *Id.* Escamilla, furthermore, unsuccesfully contended that the Texas death penalty schema failed to require the jury to consider mitigation. *Id.* at 828-29.

Similarly, as adduced earlier in Claims Seven and Nine, during State habeas proceedings, Escamilla complained that the statutory definition of mitigation was unconstitutionally narrow and that use of the term "probability" in the future dangerousness issue diluted the reasonable doubt standard. These contentions were rejected. (State Habeas Findings of Fact and Conclusions of Law 196-208, 215-227).

As set out earlier in Claims Seven and Nine, *supra,* as well as the reasons adduced below, Escamilla resubmits that these legal conclusions are clearly an erroneous application of established federal precedent.

**3.**     <u>The Instructions in the Charge at the Sentencing Phase Relating to the Mitigation Issue, that Unanimity Was Required for an Answer that Would Result in Death and Ten Votes Were Necessary for an Answer that Would Result in Life Imprisonment, Prevented the Jury from Giving Due Consideration to Mitigating Evidence in Violation of *Mills v. Maryland.*</u>

**(a)** *Mills*

In *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Supreme Court reviewed a statute requiring imposition of a death sentence if the jury unanimously found an aggravating circumstance but could not agree unanimously regarding the existence of any particular mitigating circumstance. The statute is substantially similar to the Texas procedure, which requires a death sentence if the jury unanimously fails to find that sufficient mitigating circumstances exist to warrant imposition of a sentence of life imprisonment but permits imposition of a life sentence only if ten jurors agree that sufficient mitigating circumstances exist.

The High Court viewed this procedure as operating to prevent the jurors from affording due consideration to mitigating evidence, in violation of the principles stated in *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and reiterated in *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The rule is thus that no barrier be imposed between the sentencer and its consideration of mitigating evidence. *Mills*, 486 U.S. at 376 (citing to *Lockett, supra*; *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *and, Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). As a result, whatever the barrier's origin, where a sentencer fails to consider all mitigation evidence, the rule of *Lockett* is violated, and the duty to remand for re-sentencing obtains. *Mills*, 486 U.S. at 377.

**(b)  A Reasonable Juror's Interpretation**

The Supreme Court has held that, in judging the constitutionality of a capital sentencing charge, a court must ask how a reasonable juror could have understood it: "'The question, however, is not what the State Supreme Court declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning.'"  *California v. Brown*, 479 U.S. 538, 541. 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (quoting *Francis v. Franklin*, 471 U.S. 307, 315-316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985); and citing *Sandstrom v. Montana*, 442 U.S. 510, 516-517, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979)).

**(c)  A Distinguishing Case**

In comparatively recent times, this Court has confronted and rejected  a similar contention.  *See Hudson v. Quarterman*, 2007 WL 2735490, *17 (N.D.Tex. Sept. 20, 2007) (memorandum op. and order).  This Court looked first to the holding in  *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), that "the Eighth Amendment was not violated simply because the jury was not informed of the consequences of a deadlock on the issue of punishment."  *Hudson, supra* at *17.  This Court also noted the opinions in *Jones* made it "clear that the Supreme Court does not consider it a requirement of the Eighth Amendment that a capital jury be informed of the consequences of a failure to agree with respect to its verdict at the punishment phase of the trial."  *Id.*  This Court lastly looked to Fifth Circuit precedence in this area to reject Hudson's similar challenge:

> [T]he Fifth Circuit has held that an argument that the "12-10" rule in Texas violated a capital murder defendant's Eighth and Fourteenth Amendments was without merit. *Alexander v. Johnson*, 211 F.3d 895, 897, n. 5 (5th Cir.2000). Moreover, the Fifth Circuit has also consistently held that any ruling that the "12-10" rule violated the federal constitution would be a new constitutional rule of criminal procedure as defined in *Teague v. Lane*, 489 U.S. 288, 311-13 (1989),

that did not place certain kinds of individual conduct beyond the power of the criminal law-making authority to proscribe and was not a watershed rule of criminal procedure, and therefore could not form the basis for federal habeas corpus relief. *See Hughes v. Dretke,* 412 F.3d 582, (th Cir. (Tex.) 2005); *Alexander,* 211 F.3d at 897; *Davis v. Scott,* 51 F.3d 457, 467 (5th Cir.1995); *Webb v. Collins,* 2 F.3d 93 (5th Cir.1993).

*Hudson, supra,* 2007 WL 2735490 at *18.

Petitioner, though, submits the countervailing logic of the Seventh Circuit. In *Kubat,* when confronted with a *Mills* challenge to instructions that called for a unanimous agreement not to impose the death penalty, found the death penalty inappropriate:

> [Defendant's] jurors were never expressly informed in plain and simple language that even if one juror believed that the death penalty should not be imposed, [defendant] would not be sentenced to death. . . .  [T]here is a substantial possibility that one or more of [defendant's] jurors might have been precluded from granting mercy to [defendant] because of a mistaken belief that the sufficiency of mitigating factors had to be found unanimously.

*Kubat v. Thieret,* 867 F.2d 351, 370, 373 (7th Cir. 1989), *cert. denied sub nom Kubat v. Greer,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989).  The Ninth Circuit confronted a similar challenge and also followed *Mills* to its logical conclusion in *Mak v. Blodgett,* 970 F.2d 614 (9th Cir. 1992), *cert. denied sub nom Blodgett v. Kwan Fai Mak,* 5507 U.S. 951, 113 S.Ct. 1363, 122 L.Ed.2d 742 (1993).  Escamilla submits that the absence of the clear directive called for renders his sentence unconstitutional.

### (d) Probable Effect

No one possesses the clairvoyance to assert with absolute confidence what transpired in the minds of Escamilla's jurors.  Absolute certainty, however, is not the standard.  The *Mills* Court recognized this:

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 160**

> We cannot say with any degree of confidence which interpretation Mills' jury adopted. But common sense and what little extrinsic evidence we possess suggest that juries do not leave blanks and do not report themselves as deadlocked over mitigating circumstances after reasonable deliberation . . . unless they are expressly instructed to do so.

*Mills*, 486 U.S. at 383; 108 S.Ct. at 1870.

Because there was no such directive here the instructions advanced in Escamilla' case make the risk feared by the *Lockett* Court - that death be imposed where other factors called for a less severe penalty 438 U.S. at 605 - is manifest. Accordingly, Escamilla' sentence should be vacated pursuant to *Mills*.

**4.**     **<u>The Instruction in the Charge at the Sentencing Phase that Unanimity Was Required for a Negative Answer and Ten Votes Were Necessary for an Affirmative Answer Undermined the Jury's Sense of Responsibility for Imposing a Death Sentence, in Violation of the Eighth Amendment, and So Infected the Sentencing Proceeding with Unfairness as to Render the Jury's Imposition of the Death Penalty a Denial of Due Process.</u>**

Escamilla recognizes that the Court of Criminal Appeals has repeatedly denied challenges of the "10-12" rule. *See, e.g., Francois v. State,* 2006 WL 2615306, *1 n.15 ((Tex. Crim. App. 2006) (not designated for publication) (citing battery of cases); *Russeau v. State,* 171 S.W.3d 871, 886 (Tex. Crim. App. 2005). Escamilla also notes that the Court of Criminal Appeals has ruled that a version of the Texas death penalty scheme that had the same 12/10 requirement was held to be constitutional by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262 (1976). In *Jurek,* however, the Court never specifically addressed the constitutionality of the 12/10 requirement.

More precisely, the instructions to the jury at the sentencing phase of Escamilla's trial effectively requiring ten jurors to agree to impose a life sentence inaccurately stated the governing law. The holdout of one lone soul would have spared Escamilla's life. By

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 161**

inaccurately stating the law and necessarily impressing upon the jurors that no single juror could have a determinative impact on the outcome of the sentencing phase of the trial, the instructions undermined the juror's sense of responsibility for imposing a death sentence, in violation of the Eighth Amendment, and so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process. *See Mills v. Maryland*, 486 U.S. 367 (1988).

The context of the instant case could not be more crucial because the decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. As set forth earlier, state-sanctioned deprivation of life is the greatest power the State can exercise and is qualitatively different from any other state act. *See, e.g., Gardner v. Florida*, 430 U.S. 349 at 357-58, 97 S.Ct. at 1204.

From this signal qualitative difference issues two corresponding demands: one, "a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case," *Woodson*, 428 U.S. at 305, and two, a corresponding greater degree of scrutiny. *Ramos, supra.* Justice Souter, looking to the heightened standard of reliability prescribed by *Woodson* wrote that "The Eighth Amendment entitles a defendant to a jury capable of a reasoned moral judgment about whether death, rather than some lesser sentence, ought to be imposed." *Simmons v. South Carolina*, 512 U.S. 154, 172, 114 S.Ct. 2187, 2198, 129 L.Ed.2d 133 (1994) (SOUTER, J. concurring). As a consequence, the Eighth Amendment "requires provision of 'accurate sentencing information [as] an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die,' *Gregg v. Georgia*, 428 U.S. 153, 190, 96 S.Ct. 2909, 2933, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.), and invalidates 'procedural rules that ten[d] to

diminish the reliability of the sentencing determination,' *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980)." *Simmons,* 512 U.S. at 172, 114 S.Ct. at 2198 (SOUTER, J. concurring)

In this case, that correspondingly high requirement of reliability dictates finding the Texas jury scheme as applied to Escamilla is unconstitutional. Under Texas law, the prosecution can secure the death penalty only if the jurors answer the future dangerousness issue in the affirmative and the mitigation issue unanimously in the negative. Thus, if even one lone juror determines to answer any of these issues differently, Escamilla would, as a matter of law, be sentenced to life imprisonment.

The instructions, however, do not inform the jury of this saving measure. Instead, they affirmatively mislead the jurors by stating, *inaccurately*, that if the jury answers yes to issue one and no to issue two the trial court will impose a death sentence (I. C.R. 320) they were not instructed on what would occur if there was less than unanimity; rather, they were told that if ten or more agreed they could answer a special issue in a given fashion. The instructions effectively provide the jury with a false statement of Texas law. Each individual juror was left with the impression that his or her single vote could not determine the outcome. Rather, that juror must convince at least nine others to join the decision.

Consequently, each juror's responsibility for the ultimate decision was undermined. Each juror could take solace in the fact that his or her single decision would have only minimal (1/10 or 1/12) effect on the ultimate decision. Thus, the instructions minimized each juror's responsibility for the ultimate sentence in derogation of the Eighth Amendment.

The inaccuracy in the instructions and their probable effect on the jurors so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 163**

denial of due process. *See Sawyer v. Smith*, 497 U.S. 227, 243-44 (1990) (observing that the *Caldwell* rule was added to the guarantee in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), of due process protection against fundamental unfairness). *See also Darden v. Wainwright*, 477 U.S. 168, 178-81 (1986). The jurors were seriously and unconstitutionally constrained from imposing a sentence of life imprisonment. They apparently struggled with the issue, as their note suggests. (I. C.R. 325). An instruction that required the votes of 10 jurors seriously impeded the capacity of any single juror to vote for life, as was his or her right under the law. *See Romano*, 512 U.S. at 8.

The instructions further violate the tenant of fundamental fairness that is the bedrock of due process. *See Spencer v. Texas*, 385 U.S. 554, 563-564, 87 S.Ct. 648, 653, 17 L.Ed.2d (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."; citing a battery of precedent); *cf. Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976) ("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.") (citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975)). Escamilla respectfully submits that he was not granted this requisite opportunity of fundamental fairness. Instead, he was sentenced to death by a jury that was  improperly charged on the effect of their votes.

### (a) Reduced Responsibility

Further, a reasonable likelihood exists that this erroneous charge influenced the jury's ultimate verdict, to the substantial prejudicial effect of Escamilla. The one or more who might be inclined to answer any of the issues differently from the majority, who effectively would vote to sentence Escamilla to life imprisonment, cannot take comfort in what truly is the law,

knowing that one vote would result in life imprisonment. Rather, they are misled into believing that the only means of avoiding the death penalty is to persuade enough jurors to answer as they intend to do until the total number reaches 10. This false impression undermines the reliability in the sentencing determination that death is the appropriate punishment in violation of the Eighth Amendment. *See, e.g., Woodson*, 428 U.S. at 305 (1976) (plurality opinion).

### (b) Inherent Coercion

The instructions are inherently coercive. Holdouts feel obligated to vote with the majority inasmuch as the jury has been instructed to return a verdict, and no possibility of a life sentence, under the instructions as given, is possible. *See Mills v. Maryland*, 486 U.S. 367, 383, (1988) (stating that, "[C]ommon sense . . . suggest[s] that juries do not leave blanks and do not report themselves as deadlocked over mitigating circumstances after reasonable deliberation . . . unless they are expressly instructed to do so.") (record citation omitted).

Escamilla submits that the instructions at bar are analogous to the forbidden coercive practice of inquiring into the numerical division of deadlocked juries prior to sending the jury back for further deliberation. *See, e.g., Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926); *but see, Id.* 272 U.S. at 240 n.3, 47 S.Ct. at 136 (noting that federal courts have "uniformly rejected the notion that *Brasfield's per se* reversal approach must be followed when reviewing state proceedings on habeas corpus"); *cf. Lowenfield v. Phelps*, 484 U.S. 231, 239-40, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988) (denominating *Brasfield* as "instructive as to the potential dangers of jury polling"). Therefore, just as an inquiry into division is inherently coercive so to was the instruction at bar because it left the impression that division was wholly unacceptable. This coercive effect violates the Constitution. Thus, the

coercive effect inherent in the instructions on mitigation in Escamilla' case necessarily violated Escamilla' federal constitutional rights and, accordingly, merits relief.

### (c) Arbitrary Verdicts

Without accurate instructions, any assurance of reliability in the final decision is seriously undermined.   Further, simple due process fairness commands accurate jury instructions.  The Supreme "Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings v. Oklahoma*, 455 U.S. 104, 188, 102 S.Ct. 869, 878, 71 L.Ed.2d 1 (1982) (O'CONNOR, J., concurring).   This guarantee does not exist in Escamilla' case.   The inaccuracy of the instructions submitted to the jury at the sentencing phase of Escamilla' trial violated the Eighth and Fourteenth Amendments.

> **6.**     **The Failure to Place Upon the State the Burden of Proving the Mitigation Issue Beyond a Reasonable Doubt Relieved the State from Proving Beyond a Reasonable Doubt that Escamilla Merited a Death Sentence, Denying Escamilla Due Process.**

The *Winship* principle extends to requiring the State to bear the burden of proving beyond a reasonable doubt all elements that result in an increased penalty. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).   Thus, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224, 143 L.ED.2d (1999). The United States Supreme Court recently reaffirmed this principle of jury findings beyond a reasonable

doubt in the capital context. *See Ring v. Arizona*, 536 U.S. 584, 589, 602, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002).

These principles are particularly compelling in capital cases. The Eighth Amendment simply requires States to apply special procedural safeguards when they seek the death penalty. *Gregg v. Georgia*, 428 U.S. 153 (1976). When the State fails to afford these minimal protections, the constitutional prohibition against "cruel and unusual punishments" forbids its use. *Furman v. Georgia*, 408 U.S. 238 (1972).

The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. The Supreme Court has affirmed on numerous occasions that the penalty of death is qualitatively different from a sentence of imprisonment. *See, e.g., Bullington v. Missouri*, 451 U.S. 430, 442 (1981); *Gardner v. Florida*, 430 U.S. 349, 357 (1977) (plurality opinion). *See also Furman v. Georgia*, 408 U.S. 238, 306 (1972) (STEWART, J., concurring). This qualitative difference engenders a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. *See Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality opinion). In *California v. Ramos*, 463 U.S. 992, 998-99 (1983), the Court stated that, "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *See id.* at 999 n. 9. *See also Sawyer v. Smith*, 497 U.S. 227 (1990); *Ford v. Wainwright,* 477 U.S. 399, 411 (1986) (MARSHALL, J., plurality opinion) (stating, "In capital proceedings generally, this Court has demanded that fact-finding procedures aspire to a heightened standard of reliability. . . . This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different."); *Ake v. Oklahoma*, 470 U.S. 68, 87 (1985) (BURGER, C. J.,

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 167**

concurring in judgment) (stating, "In capital cases the finality of the sentence imposed warrants protections that may or may not be required in other cases"); *Barefoot v. Estelle*, 463 U.S. 880, 924 (1983) (BLACKMUN, J., dissenting) (stating that, *Woodson*'s concern for assuring heightened reliability in the capital sentencing determination, "is as firmly established as any in our Eighth Amendment jurisprudence"); *Godfrey v. Georgia*, 446 U.S. 420, 443 (1980) (BURGER, C.J., dissenting) (stating, "[I]n capital cases we must see to it that the jury has rendered its decision with meticulous care").

Such guiding considerations stand behind *Apprendi* and its progeny. To this end, Escamilla submits the statement of Justice Thomas, concurring in the judgment: "In the areas of capital punishment, unlike any other area, we have imposed special constraints on a legislature's ability to determine what facts shall lead to what punishment – we have restricted the legislature's ability to define crime." *Apprendi*, 530 U.S. at 522-23.

The application of this principle to Escamilla' case is clear. Because a negative finding on the mitigation issue, which the State so assiduously advanced, mandates the death penalty, rather than life imprisonment, the State must prove the elements of the issue beyond a reasonable doubt lest as before: "When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.'" *Id.* at 495 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)). The person who is charged with actions that expose him to the death penalty has an absolute entitlement to a jury trial on all the elements of the charge." *Almendarez-Torres v. United States*, 523 U.S. 224, 257 n. 2 (1998) (SCALIA, J., dissenting) (emphasis deleted). The State did not prove the elements of the mitigation issue beyond a reasonable doubt, making Escamilla's sentence unconstitutional under the Due Process Clause.

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 168**

To be sure, in *Basso v. State,* the Texas Court of Criminal Appeals squarely engaged a contention that it was error to not assign the burden of proof on mitigation to the State. No. 73672, 2003 WL 1702283 (Tex. Crim. App. January 15, 2003) *cert den'd* 540 U.S. 864 (2003) (not designated for publication). The Court wrote:

> We have held that neither party bears the burden of proof at punishment on the mitigation special issue. *Prystash v. State,* 3 S.W.3d 522, 535 (Tex. Cr. App. 1999); *Lawton v. State,* 913 S.W.2d 542, 557 (Tex. Cr. App. 1995). The holding in *Aprendi* does not affect our prior decisions or our determination of the appellant's point. Where the finding of a fact (other than a prior conviction) *increases the authorized punishment* for a crime, the State must prove and a jury must find that fact beyond a reasonable doubt. *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002); *Aprendi,* 530 U.S. at 476 (emphasis added). Under Article 37.071, there is no authorized increase in punishment contingent on the jury's finding on the mitigation special issue. *See Ring,* 122 S.Ct. at 2439. A jury will answer the mitigation special issue only "if [it] returns an affirmative finding to each issue submitted under Subsection (b) [future dangerousness and guilt as a party]." Art. 37.071 sec. (2)(e)(1). In other words, a jury's finding on mitigation occurs only after the State has proven the elements of capital murder, at the guilt stage, and the aggravating circumstances-evidence of the defendant's future dangerousness-beyond a reasonable doubt. *Prystash,* 3 S.W.3d at 535. By the time the jury reaches the mitigation issue, the State has already demonstrated the defendant's eligibility for a death sentence; a negative answer on mitigation cannot increase his authorized punishment. The statute mandates only a reduction in punishment to a life sentence upon an affirmative finding of mitigation. *See* Art. 37.071 sec. (2)(g). Therefore, *Apprendi* is not applicable . . . .

*Basso, supra,* at *18.

This attempt to avoid a constitutional obligation is not well-taken. In order to be assessed a death penalty for a qualifying offense, the accused must be selected through the factor set out in special issue number one and the jury must not find sufficient mitigation. A finding on the first special issue alone will not pass muster. Both questions must be answered in order to increase the punishment. The sophistry of this reasoning is readily demonstrated by merely inverting the issues. If the jury answers the Mitigation (first) issue yes, then there would be no

need answer the aggravation issue. If the issue is answered no, then the state would still be required to prove the aggravating factor beyond a reasonable doubt. Claiming that the mitigation issue merely ratchets down a death sentence to life is an illogical construct that, as with the discussion of most issues related to mitigation, severely mis-analyses the purpose for, and importance of, that issue.

The instruction submitted to the jury asks whether the jury finds sufficient mitigating circumstances exist such that a sentence of death is not appropriate. The mitigation instruction, though, effectively asks the jury to find whether the sentence of death is appropriate – a fact on which the State bears the burden of proof. However, the jury receives no instruction that the State bears this burden, much less the scope of that burden. This transgresses the Due Process Clause and the Eighth Amendment. *See Apprendi*, 530 U.S. at 469; *Winship*, 397 U.S. at 394.

In *Walton v. Arizona*, 497 U.S. 639, 650 (1990), *overruled in part; Ring v. Arizona*, 536 U.S. 584, 589 (2002), the Supreme Court wrote that, "as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." *Id.* The *Walton* case is, however, distinguishable from the instant application.

In Escamilla's case, Texas' method of allocating the burden of proof (or not allocating it at all) unconstitutionally lessened the State's burden to prove the existence of aggravating circumstances. As *Apprendi* instructs, such a failure is unconstitutional and grounds for federal habeas relief. While the State steadfastly advocated a penalty of death, the State bore no burden to prove that a sentence of death was appropriate because mitigating circumstances did not

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 170**

warrant a sentence of life imprisonment. Thus, as to the mitigation issue, the State bore no burden of proving death was the punishment the jurors should impose - precisely the inquiry the issue posed. This failure is legally inappropriate and unconstitutional.

The State cannot shift to a capital defendant the burden of proving he does not merit death. This shifting of burdens effectively imposes upon the defendant the burden of disproving the State's case something the federal Constitution does not permit. If the State chooses to seek death, it must prove, beyond a reasonable doubt, all elements necessary to imposition of that punishment, including that mitigating circumstances do not warrant a lesser penalty. Due process – and the Eighth Amendment in the context of capital cases – requires the State bear the onus of proving its case. Because it did not do so at Escamilla' trial, the Court must vacate Escamilla'S sentence.

###   7.   __Conclusion__

Because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law - *Mills, supra,* the jury's sense of responsibility for imposing a death sentence, the State's burden to prove beyond a reasonable doubt that Escamilla merited a death sentence, denying Escamilla due process, and the requirement that the mitigation issue not be so vague as to produce an arbitrary and capricious sentencing patterns - as determined by the Supreme Court of the United States, habeas corpus should issue and Petitioner's requested relief be granted. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety. *Id.*

**L:  CLAIM TWELVE:  THE TEXAS STATUTE UNDER WHICH PETITIONER WAS SENTENCED TO DEATH IS UNCONSTITUTIONAL IN VIOLATION OF DUE PROCESS BECAUSE IT IMPLICITLY PUTS THE BURDEN OF PROVING MITIGATION ON PETITIONER RATHER THAN REQUIRING A FINDING AGAINST PETITIONER ON THIS ISSUE UNDER THE TRADITIONAL BEYOND A REASONABLE DOUBT STANDARD.**

Petitioner submits that *Apprendi* and its progeny necessitates a finding that the Texas death penalty scheme is unconstitutional because it does not require Texas to prove beyond a reasonable doubt that there are no mitigating circumstances sufficient to warrant the imposition of a life sentence rather than death.  530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 589, 602, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002).

**1.   Direct Appeal**

On direct appeal, Escamilla unsuccessfully assailed the Texas death penalty schema as violating the federal constitution "because it simultaneously restricts and allows unlimited or 'open-ended' juror discretion to impose the death penalty." *Escamilla v. State*, 143 S.W.3d 814, 828ff (Tex. Crim. App. 2004).   More precisely, Escamilla unsuccessfully contended that the Texas death penalty schema violated the federal constitution because the mitigation special issue sent mixed signals.  *Id.*  Escamilla further complained that the charge "implicitly puts the burden [up]on [Escamilla] to prove the mitigation special issue" and also unsuccesfully challenged the 12/10 rule.  *Id.*   As set out earlier in Claims Seven and Eleven, *supra,*  as well as the reasons adduced below, Escamilla submits that these legal conclusions finding the mitigation issue (Special Issue No. 2) proper are clearly an erroneous application of established federal precedent.

## 2.   *Apprendi*

The *Winship* principle extends to requiring the State to bear the burden of proving beyond a reasonable doubt all elements that result in an increased penalty. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).   Thus, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224, 143 L.ED.2d (1999).   The United States Supreme Court recently reaffirmed this principle of jury findings beyond a reasonable doubt in the capital context. *See Ring v. Arizona*, 536 U.S. 584, 589, 602, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002).

These principles are particularly compelling in capital cases.   The Eighth Amendment simply requires States to apply special procedural safeguards when they seek the death penalty. *Gregg v. Georgia*, 428 U.S. 153 (1976).   When the State fails to afford these minimal protections, the constitutional prohibition against "cruel and unusual punishments" forbids its use. *Furman v. Georgia*, 408 U.S. 238 (1972).

The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. *See, e.g., Bullington v. Missouri*, 451 U.S. 430, 442 (1981); *Gardner v. Florida*, 430 U.S. 349, 357 (1977) (plurality opinion). *See also Furman v. Georgia*, 408 U.S. 238, 306 (1972) (STEWART, J., concurring).   This qualitative difference engenders a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. *See Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality opinion).

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 173**

Such considerations are behind the *Apprendi* line of cases, including the statement of Justice Thomas, concurring in the judgment: "In the areas of capital punishment, unlike any other area, we have imposed special constraints on a legislature's ability to determine what facts shall lead to what punishment – we have restricted the legislature's ability to define crime." *Apprendi*, 530 U.S. at 522-23.

Because a negative finding on the mitigation issue here, which the State so assiduously advanced, mandates the death penalty, rather than life imprisonment, the State must prove the elements of the issue beyond a reasonable doubt lest as previously: "When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.'" *Id.* at 495 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)). The person who is charged with actions that expose him to the death penalty has an absolute entitlement to a jury trial on all the elements of the charge." *Almendarez-Torres v. United States*, 523 U.S. 224, 257 n.2 (1998) (SCALIA, J., dissenting) (emphasis deleted). The State did not prove the elements of the mitigation issue beyond a reasonable doubt, making Escamilla' conviction unconstitutional under the Due Process Clause.

To be sure, as noted in the foregoing claim in *Basso v. State,* the Texas Court of Criminal Appeals squarely engaged a contention that it was error to not assign the burden of proof on mitigation to the State. No. 73672, 2003 WL 1702283 (Tex. Crim. App. January 15, 2003) *cert den'd* 540 U.S. 864 (2003) (not designated for publication). Again, this attempt to avoid a constitutional obligation appears improper. In order to be assessed a death penalty for a qualifying offense, the accused must be selected through the factor set out in special issue number one and the jury must not find sufficient mitigation. A finding on the first special issue

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 174**

alone will not pass muster. Both questions must be answered in order to increase the punishment. The sophistry of this reasoning is readily demonstrated by merely inverting the issues. Claiming that the mitigation issue merely ratchets down a death sentence to life is an illogical construct that, as with the discussion of most issues related to mitigation, severely mis-analyses the purpose for, and importance of, that issue.

### 3.    Application

The instruction submitted to the jury asks whether the jury finds sufficient mitigating circumstances exist such that a sentence of death is not appropriate. The jury is also instructed that certain answers on the two punishment issues submitted will result in imposition of a death sentence, while the opposite answers will result in imposition of a life sentence.

The mitigation instruction effectively asks the jury to find whether the sentence of death is appropriate – a fact on which the State bears the burden of proof. However, the jury receives no instruction that the State bears this burden, much less the scope of that burden. This transgresses the Due Process Clause and the Eighth Amendment. *See Apprendi*, 530 U.S. at 469; *Winship*, 397 U.S. at 394.

In *Walton v. Arizona*, 497 U.S. 639, 650 (1990), *overruled in part; Ring v. Arizona*, 536 U.S. 584, 589 (2002), the Supreme Court wrote that, "as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." *Id.*   The *Walton* case is, however, distinguishable from the instant application.

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 175**

In Escamilla's case, Texas's method of allocating the burden of proof (or not allocating it) unconstitutionally lessened the State's burden to prove the existence of aggravating circumstances. As *Apprendi* instructs, such a failure is unconstitutional and grounds for federal habeas relief. While the State steadfastly advocated a penalty of death, the State bore no burden to prove that a sentence of death was appropriate because mitigating circumstances did not warrant a sentence of life imprisonment. Thus, as to the mitigation issue, the State bore no burden of proving death was the punishment the jurors should impose -- which is precisely the inquiry the issue posed. This failure is legally inappropriate and unconstitutional.

The State cannot shift to a capital defendant the burden of proving he does not merit death. This shifting of burdens effectively imposes upon the defendant the burden of disproving the State's case something the federal Constitution does not permit. If the State chooses to seek death, it must prove, beyond a reasonable doubt, all elements necessary to imposition of that punishment, including that mitigating circumstances do not warrant a lesser penalty. Due process – and the Eighth Amendment in the context of capital cases – requires the State bear the onus of proving its case. Because it did not do so at Escamilla's trial, the Court must vacate Escamilla' sentence.

### 4.   Conclusion

Because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law, *Apprendi* and its progeny, habeas corpus should issue and Petitioner's requested relief be granted. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety.  *Id.*

**M:**    **CLAIM THIRTEEN:    THE TEXAS DEATH PENALTY SYSTEM IS UNCONSTITUTIONAL BASED ON THE UNITED STATES SUPREME COURT'S OPINIONS IN *SMITH v. TEXAS*, 543 U.S. 37 (2004) AND *PENRY v. JOHNSON*, 532 U.S. 782 (2001).**

Petitioner submits that the Texas death penalty scheme in its present form continues to violate *Penry v. Johnson*, 532 U.S. 782 (2001), and *Smith v. Texas*, 543 U.S. 37 (2004).  This is the case for the current format continues to ignore pronouncements that require a trial court to empower the jury with a vehicle capable of giving full consideration to mitigating evidence.

### 1.    Direct Appeal

On direct appeal, Escamilla unsuccessfully launched a comprehensive attack upon the Texas death penalty scheme.  *Escamilla v. State*, 143 S.W.3d 814, 828ff  (Tex. Crim. App. 2004).  More specifically, Escamilla unsuccessfully contended that the Texas death penalty schema violated the federal constitution because the mitigation special issue sent mixed signals in derogation of *Penry*.  *Id.* at 828.

### 2.    Argument

Petitioner submits that the current special issue submission authorized by article. 37.071 of the Texas Code of Criminal Procedure creates the same ethical dilemma faced by jurors in the *Smith* case even after the Texas legislature amended the special issues.  While the special issue applied in Petitioner's case was not directly addressed in *Smith*, Petitioner urges this Court that the amended special issue is equivalent to the nullification issue addressed there.

Under the current system, Texas juries are presented a special issue on the State's burden of proof on the issue of future dangerousness.  If the jury answers this special issue affirmatively

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 177**

and unanimously, then the defendant is sentenced to death unless the jury nullifies this issue by answering "yes" to the mitigation special issue; however, the jury is not instructed that the State possesses the burden upon this second issue.

This failure to assign the burden produces a confusing effect, sending a mixed signal in derogation of *Penry v. Johnson*, 532 U.S. 782, 802, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001).  It allows jurors to consider and evaluate the evidence in an inconsistent fashion.  Indeed, the charge encourages diverse consideration in both issues by telling the jury that its member "need not agree on what particular evidence" supports findings favorable to Escamilla.  (I. C.R. 319, 320).  It is also logical to infer the jury drew the converse inference, that it did not have to agree as to what particular evidence supported findings that resulted in death.  Moreover, as adduced in Claims Eleven and Twelve, *supra*, this is an improper burden allocation.

Second, as adduced in Claim Seven, *supra*, because the mitigation definition was unduly narrow the jury could not give effect to all of the presented mitigation evidence.  That is, in function, the jury was given no vehicle to afford consideration to all mitigating evidence.  Thus, just as written in *Smith*, "the dilemma faced by ethical jurors" obtained because "[j]ust as in *Penry II,* [the] jury was required by law to answer a verdict form that [functionally] made no mention whatsoever of mitigation evidence."  543 U.S. at 48, 125 S.Ct. at 407.

Disregarded by confusion, therefore, were such quantums of evidence as Escamilla's love and compassion for a helpless animal (Trial Court Transcript Vol. 39, p. 25); his cooperative playfulness as a child (Trial Court Transcript Vol. 39, p. 107-08); his tender and absolute devotion to his mother (Trial Court Transcript Vol. 39, pp. 25, 28, 45, 56, 108-09); and, his obvious love for family.  (Trial Court Transcript Vol. 39, pp. 26, 28).  Nor could it under the

submitted definition rightly account for the potential of a religious awakening whilst incarcerated. (Trial Court Transcript Vol. 39, p. 123).

Thus, Escamilla's jury had to first find that the State carried its burden of proof that the defendant poses a future danger and should be put to death and then, only if it found that some mitigating evidence (defined all too narrowly as adduced in Claim Seven) alters this initial determination that death is appropriate, could it spare Escamilla's life. This procedural scenario presents functionally the same ethical dilemma to jurors that the Supreme Court found unacceptable in *Smith*.

### 3. Conclusion

Because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law, *Penry*, habeas corpus should issue and Petitioner's requested relief be granted. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety. *Id.*

**N. CLAIM FOURTEEN: INEFFECTIVE ASSISTANCE OF COUNSEL AT TRAIL FOR FAILING TO PROPERLY OBJECT TO AN UNACCEPTABLE JUROR THAT WAS UNABLE TO APPLY THE DOCTRINE OF MITIGATION BECAUSE SHE ERRONEOUSLY BELIEVE THAT IT APPLIED ONLY TO SELF-DEFENSE OR ACCIDENT.**

Petitioner incorporates all previously discussed cases, legal explanations and arguments regarding ineffective assistance of counsel. As set forth above, Petitioner received ineffective assistance of counsel at trial for numerous reasons. In addition to those previously detailed,

Petitioner also received ineffective assistance of counsel when trial counsel failed to properly assert and preserve an objection to an unacceptable juror.

### 1.    **Direct Appeal**

On direct appeal, Escamilla complained "that the trial court denied his challenges for cause to veniremembers Denton (point of error one), Medley (point of error two), Overton (point of error three) and Fletcher (point of error four)." *Escamilla*, 143 S.W.3d at 821. Turning to the record, the Court of Criminal Appeals noted that:

> The record in this case reflects that appellant exercised peremptory challenges on Denton, Medley and Overton after the trial court had denied his challenges for cause to them. The record also reflects that the trial court granted appellant three additional peremptory challenges. Both parties assert in their briefs that appellant challenged Fletcher for cause. *Our review of the record, however, reflects that appellant did not challenge Fletcher for cause and that appellant (who was out of peremptory challenges) identified Fletcher as an "unacceptable" juror after the trial court had denied appellant's request for a fourth additional peremptory challenge which he apparently would have used to remove Fletcher who became the twelfth juror.*
>
> [THE COURT]: Does the State have any challenge for cause on juror number eight seventy-four, Mollie Fletcher?
>
> [PROSECUTION]: No, Your Honor.
>
> [THE COURT]: Does the Defense?
>
> [DEFENSE]: No, Your Honor.
>
> [THE COURT]: What says the State?
>
> [PROSECUTION]: The State will accept Ms. Fletcher.
>
> [THE COURT]: What says the Defense?
>
> [DEFENSE]: Your Honor, we would show the Court that Ms. Fletcher, it would be a juror unacceptable to the Defense for the reason that she does not have a consideration of mitigation. In fact, on her questionnaire, she said that each person is responsible for their own actions and, her answer under questioning, her concept of mitigation, although, she couldn't think of it, the only thing she could think of was, would involve self-defense or accident. And, the fact, that she in the past, worked for the City of Dallas and as a police dispatcher and due to the reason that she is not acceptable to the Defense, we ask for an additional challenge to challenge juror eight seventy-four, Mollie Fletcher.

[THE COURT]: Court denies your request for an additional peremptory challenge.

*Escamilla*, 143 S.W.3d at 821-822 (emphasis supplied).  As a consequence of this seminal procedural deficiency by trial counsel, the Court of Criminal Appeals rejected Escamilla's complaint because trial counsel failed to preserve error. *Id.* at 822.

### 2.  Standard

Ineffective assistance of counsel claims are governed under the familiar two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Escamilla thus must demonstrate that his counsel's performance was deficient and that this deficiency prejudiced him. *Id.*

### 3.  Deficiency

Beyond question, "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts." *Romero v. Lynaugh,* 884 F.2d 871, 878 (5th Cir.1989).  Because Escamilla was afforded no evidentiary hearing during state habeas proceedings, all that remains is the written record and counsel's affidavits.

However, that is sufficient here for "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel *unless* counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir.1995) (quoting *Garland v. Maggio,* 712 F.2d 199, 206 (5th Cir. 1983)) (emphasis supplied).  That is, this error is so profound that the contemplated scenario - when no strategy can authorize a given omission - obtains.  This is because the omission left remaining a

juror "uncommonly willing to condemn a man to die." *Witherspoon v. Illinois*, 391 U.S. 510, 521, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968).

### 4.    **Prejudice**

The prejudice is obvious and galling, to-wit:  an unacceptable juror was placed on the jury despite a complete lack of understanding of the doctrine of mitigation.   (Trial Court Transcript Vol. 26, pp. 52).   As it has been written, a juror is impermissible if the juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath". *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir.), *cert. denied*, 530 U.S. 1286, 121 S.Ct. 2, 147 L.Ed.2d 1027 (2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).   Fletcher clearly fell within that ambit as her answers in voir dire indicate that the only mitigating circumstance she would consider would be of sufficient moment was self-defense.   (Trial Court Transcript Vol. 26, pp. 48-49).   A concept trial counsel foreclosed by her un-assented to concession  that, as delineated above in Claim Two, constitutes manifest ineffective assistance in derogation of the Sixth Amendment.

This omission resulted in Petitioner being tried by a jury, at least one of the members of which, did not understand the doctrine of mitigation or how such doctrine should apply in the case.  As a consequence, counsel's actions in failing to properly object and preserve this error violated Petitioner's rights under the Sixth Amendment to the effective assistance of counsel and essentially guaranteed a death sentence.

### 5.    **Conclusion**

Because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law, the right to effective assistance of counsel during voir dire, habeas corpus should

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 182**

issue and Petitioner's requested relief be granted. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety. *Id.*

O:    **CLAIM FIFTEEN: THE TEXAS DEATH PENALTY SCHEME DENIED PETITIONER DUE PROCESS AND VIOLATES THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE IT PERMITS THE VERY OPEN-ENDED JURY DISCRETION CONDMENED BY THE UNITED STATES SUPREME COURT IN *PENRY v. LYNAUGH*, 492 U.S. 302 (1989), *PENRY v. JOHNSON*, 532 U.S. 782 (2001), and *FURMAN v. GEORGIA*, 408 U.S. 238 (1972).**

Petitioner has been denied due process of law and is being subjected to cruel and unusual punishment in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution because it is impossible to simultaneously restrict the jury's discretion to impose the death penalty while also allowing the jury unfettered discretion to consider all mitigating evidence against the imposition of the death penalty.

### 1.    **Below**

Escamilla initially launched this challenge without success in the trial court. (I. C.R. 94-95, 104). Thereafter, on direct appeal, Escamilla unsuccessfully contended that the Texas death penalty schema violated the federal constitution "because it simultaneously restricts and allows unlimited or 'open-ended' juror discretion to impose the death penalty." *Escamilla v. State*, 143 S.W.3d 814, 828 (Tex. Crim. App. 2004).

## 2.   **Argument**

The trial court erred in overruling Petitioner's motion challenging the constitutionality of Art. 37.071 §§ 2(e) and 2(f).  As currently structured, the Texas statutory scheme fails to require that the jury properly and fully consider mitigation evidence.  The statutory special issue is unconstitutional because it permits the very type of open-ended jury discretion condemned by *Furman v. Georgia*, 408 U.S. 238 (1972).

Beyond peradventure, in this context our law requires an individualized determination of the sentence.  *Tuilaepa v. California,* 512 U.S. 967, 983, 114 S.Ct. 2630, 2640 (1994) (citing *Lockett*, 438 U.S. 586, 602-605, 98 S.Ct. 2954, 2963-2965, 57 L.Ed.2d 973 (1978)).  Given this mandate, Escamilla submits that experience reflects the impossibility of satisfying this mandate and remaining consistent with the elimination of arbitrariness and discrimination in the capital context.  *Callins v. Collins*, 510 U.S. 1141, 1144, 1149, 1155, 114 S.Ct. 1127, 1132, 1129, 1136 (1994) (BLACKMUN, J., dissenting).  As Justices Blackmun and Thomas observed, several Members of the Supreme Court have noted the existence of tension between the need for individualized fairness and the need for consistency.  *Id.* 510 U.S. at 1151; 114 S.Ct. at 1133 (citations omitted); *Graham v. Collins,* 506 U.S. 461, 479, 113 S.Ct. 892, 904, 122 L.Ed.2d 260 (1993) (THOMAS, J., concurring) (citations omitted).

As Justice Blackmun observed the "theory underlying *Penry* and *Lockett* . . . that an appropriate balance can be struck between the *Furman* promise of consistency and the *Lockett* requirement of individualized sentencing if the death penalty is conceptualized as consisting of two distinct stages." *Callins v. Collins*, 510 U.S. at 1152,  114 S.Ct. at 1134 (BLACKMUN, J., dissenting).  Escamilla submits that herein lies the raison d'etre of the two aspect approach and its signal failure and unacceptability:

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 184**

> It simply reduces, rather than eliminates, the number of people subject to arbitrary sentencing. It is the decision to sentence a defendant to death-not merely the decision to make a defendant eligible for death-that may not be arbitrary. While one might hope that providing the sentencer with as much relevant mitigating evidence as possible will lead to more rational and consistent sentences, experience has taught otherwise. It seems that the decision whether a human being should live or die is so inherently subjective-rife with all of life's understandings, experiences, prejudices, and passions-that it inevitably defies the rationality and consistency required by the Constitution.

*Callins v. Collins,* 510 U.S. 1141, 1152, 114 S.Ct. 1127, 1134-1135, 127 L.Ed.2d 435 (1994)

(BLACKMUN, J., dissenting).

Just as the death penalty experiment has failed at large, *id.* 510 U.S. at 1145, 114 S.Ct. at 1130, so too has the machinery of its implementation failed here. Because the proper course when confronting "irreconcilable constitutional commands" is not to sacrifice one but rather "to admit the futility of the effort to harmonize them" it is follows that it must be accepted that "the death penalty cannot be administered in accord with our Constitution." *Id.* 510 U.S. at 1156, 114 S.Ct. at 1137. It is intolerable that one constitutional right be surrendered for the sake of another constitutional right. *Simmons*, 390 U.S. at 394, 88 S.Ct. at 976.

No correct individualized determination can warrant death and remain consistent with the ideals of the Republic. Escamilla, therefore, submits that the day for abandonment of the death penalty, foreseen by the Honorable Justice Blackmun to come after his passing, has arrived. *Callins v. Collins,* 510 U.S. at 1158, 114 S.Ct. at 1139. Such a jurisprudential advancement would be consistent with the notion of progress of our society. *Cf. Trop v. Dulles*, 356 U.S. at 101, 78 S.Ct. at 598. It would also bring the Republic in line with global consensus:

> The international community views the United States as monolithic and anomalous in its retention of the death penalty. Whereas virtually all democracies--and certainly all Western industrialized ones--have repudiated the death penalty as unnecessary or even a violation of basic human rights, the United

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 185**

States continues to sentence offenders to death to punish ordinary (non-treasonous) crimes.

Carol S. Steiker, Jordan M. Steiker, *A Tale of Two Nations: Implementation of the Death Penalty in "Executing" Versus "Symbolic" States in the United States,* 84 TEX. L. REV. 1869, 1870 (2006).

As a consequence, though tragically Justice Blackmun no longer lives, the time he forsaw to abandon placement of the Republic's imprimatur upon death has finally arrived in the form of the cause sub judice here in the very "center of the modern American death penalty." *Id.* at 1875. This is appropriate here for "[i]It is no coincidence that Justice Blackmun chose a death penalty case from Texas in which to express [his condemnation of the penalty]." Brent Newton, *A Case Study in Sytemic Unfairness: The Texas Death Penalty, 1973-1994,* 1 TEX. F. ON C.L. & C.R. 1, 37 (Spring 1994).

### 3.   **Conclusion**

Because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was contrary to *and* involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, habeas corpus should issue and Petitioner's requested relief be granted. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). Further, because the Texas courts' determination of Petitioner's habeas claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court, this Court should grant his requested relief in its entirety. *Id.*

## Conclusion

**WHEREFORE,** Petitioner prays that the Court grant petition or relief to which he may be entitled in this proceeding.

Respectfully submitted,

NATHAN KIGHT
Texas State Bar No. 24025472

**SORRELS, UDASHEN & ANTON**
2301 Cedar Springs, Suite 400
Dallas, Texas 75201
(214) 468-8100 - Telephone
(214) 468-8104 - Facsimile

MARY MARGARET PENROSE
Texas State Bar No. 00788179

**UNIVERSITY OF OKLAHOMA
COLLEGE OF LAW**
300 Timberdell Road
Norman, OK  73019
(405) 514-1811 – Telephone
(405) 325-0389 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above writ to  Ms. Ana Jordan, Esq.  on the the 3rd day of May 2008, by United States mail, proper postage affixed, and via e-mail at ana.jordan@oag.state.tx.us. Hard copies of the exhibits were enclosed in the U.S. Mail with Petitioner's brief .

NATHAN KIGHT

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - Page 188**