IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| LICHO ESCAMILLA, | § | |
|     Petitioner, | § | |
| vs. | § | 3:06-CV-2248-BH |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Director TDCJ-CID, | § | |
|     Respondent. | § | |

**PETITIONER'S REPLY BRIEF**

COMES NOW Petitioner, Licho Escamilla, and files this his Reply Brief to Respondent's Answer. For the following reasons, Petitioner prays that his original federal habeas corpus be, in all respects, GRANTED.

**A.    RULE 5 OBJECTION**

Respondent wrongfully urges this Court to deny Escamilla's claims for failure to exhaust these claims by "fairly presenting them to the state courts as required by 28 U.S.C. § 2254(b)." Answer, at 4. This contention is neither supported by nor consistent with Fifth Circuit precedent. *Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005).

Where newly submitted evidence simply bolsters or supplements, but does not alter, the fundamental character of a claim, such claim is adequately exhausted. *Id. See also Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003). Much like the facts in *Anderson*, the essence of Petitioner's claims was presented during the state habeas proceedings.

Accordingly, Respondent's objection is misplaced.

**B.    RULE 606(b) OBJECTION**

Respondent also attempts to disqualify three of Petitioner's affidavits and accompanying exhibits based upon Fed. R. Evid. 606(b). Answer, at 16-18. However, Respondent's objections are not supportable.

Rule 606(b) restricts the use of "any matter or statement *occurring during the course of the jury's deliberations*" or "influencing the juror to assent to or dissent from the verdict . . . concerning the juror's mental process in connection therewith." The Advisory Committee Notes for Rule 606(b) elaborate that "[u]nder the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict." Such is not the purpose or intent of Petitioner in presenting this evidence.

None of the challenged evidence purports to use any statement occurring during the course of the jury's deliberations. Further, none of the evidence attempts to describe the particular juror's mental process in connection with the jury's actual verdict in this case. Rather, the affidavits and accompanying exhibits provide admissible evidence regarding the paltry mitigation evidence presented by Petitioner's counsel and the potential difference that the presentation of mitigation evidence might have made on each juror's decision had such mitigation evidence actually been presented.

This testimony does not deal with any of the events that actually occurred during jury deliberations. Instead, this highly probative testimony and accompanying notes seek only to prove that *had* certain readily available mitigation evidence been presented, such evidence would have been received and considered by at least two jurors – who might, in such a case, render a different verdict of a life sentence as opposed to a sentence of death.

In fact, Toni Knox, the state mitigation expert, extracted this testimony, initially, by simply posing hypothetical questions – never going into jury deliberations. Likewise, James Sutton's 2008 affidavit (which confirms the accuracy of Toni Knox's earlier notes) simply states that "a more thorough family history could have been presented with more specific factors, including criminal activities, and with that information I would

2

have considered it in my sentencing decision. As I recollect, not much extended family background information was given during sentencing and this absence of information made it more difficult to put Licho's crime into complete context." Sutton Affidavit.

None of this testimony seeks to reveal the jury deliberations that occurred in this case or how Mr. Sutton arrived at his actual verdict. Instead, the affidavit addresses what evidence might have been considered, if presented, and how it might have affected his sentencing decision. This testimony simply confirms that Petitioner was prejudiced by counsel's failure to present a mitigation case. A Rule 606(b) objection is not sustainable.

## C. CLAIM ONE -- INEFFECTIVE ASSISTANCE & PREJUDICE

Petitioner thoroughly asserted and supported a claim for ineffective assistance of counsel during his state habeas proceedings. State Habeas, at 11 – 21. While Respondent invests only five and one half pages defending against this claim, no mention is made of the following pertinent facts and evidence presented by Petitioner:

1) Trial counsel failed to meet the 2003 ABA Guidelines because they did not hire or consult a mitigation specialist or conduct a proper social history;
2) Counsel failed to perform adequately by hiring a forensic psychiatrist as an expert who had never worked on a death penalty case, was not informed this was a death penalty case, did not interview Petitioner until sometime during trial and was never provided with an accurate social or family history;
3) Most of the records gathered in this case came from the State's file; and,
4) Trial counsel's failure to investigate in this case – and discover Petitioner's true family scenario – permitted the Prosecutor to wrongfully suggest that:
    a) There was no evidence of an abusive upbringing or disadvantages in Petitioner's life
    b) Petitioner's actions were a result of free choice, despite "loving parents that were role models" and law-abiding citizens.

This evidence, in particular, allowed the Prosecutor to miscast Petitioner as an evil young man who grew up in a normal household. Yet, due to trial counsel's complete failure to investigate, they never learned about the extensive family history of violence,

3

arrests and incarcerations. Trial counsel also failed to uncover that Petitioner was severely physically abused by an alcoholic and dictatorial father. Trial counsel's lack of knowledge in this area permitted the Prosecution to use inflammatory rhetoric to suggest that Petitioner was *not* a product of his environment. Had trial counsel learned of the voluminous abuse and arrest issues permeating the family, such portrait of Petitioner could never have been presented. No strategy could justify such mischaracterizations.

Further, purported "strategy" decisions can only be deemed reasonable to the extent that the underlying investigation was reasonable. Here, counsel failed to independently investigate this case – despite knowledge at the time of trial that at least one of Petitioner's brother's was then incarcerated – or to employ the services of a mitigation or psychiatric expert *prior to* jury selection – at a time when the expert's services could have been helpful in developing a trial or punishment strategy.

In addition, Petitioner has presented evidence of prejudice in that at least two jurors have indicated reticence with the death penalty *in this case* if proper mitigation evidence had been presented. James Sutton testifies that very little evidence regarding Petitioner's family was presented and that had more evidence been presented, it could have placed Petitioner's behavior in a different context. There could be no more potent and direct evidence of prejudice in an ineffective assistance of counsel case than two members of the actual jury indicating that had mitigation evidence of familial abuse and discord been presented, they might have considered a lesser punishment of life in prison.

Accordingly, Petitioner has demonstrated prejudice by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4

proceeding would have been different." *Harrison v. Quarterman*, 496 F.3d 419, 427 (5th Cir. 2007)(quoting *Strickland*). Petitioner has met his burden of proving prejudice.

Thus, the state habeas court's failure to mandate compliance with the governing ABA Guidelines, failure to adequately assess the use of counsel's "drive-by" expert who has testified in these proceedings he *never* would have testified in favor of the death penalty, and failure to adequately apply clearly established federal law in *Williams, Wiggins* and *Rompilla* is an unreasonable determination of the facts in light of the evidence presented. Further, the state habeas court's findings are both an unreasonable application of, and contrary to, clearly established federal law under ADEPA.

The state habeas court's failure to properly assess Toni Knox's affidavit and accompanying notes ignored the true character of Petitioner's evidence and was an unreasonable determination of the facts in light of the evidence presented during the state court proceedings. Petitioner's evidence fully supports a legal determination, consistent with *Strickland, Wiggins* and *Rompilla* (cases that unquestionably qualify as clearly established federal law under AEDPA), that had a reasonable mitigation investigation been conducted, there is a reasonable probability that the outcome of Petitioner's sentencing hearing would have resulted in a life sentence. At a minimum, the Prosecutor could never have mischaracterized Petitioner and his upbringing as counsel allowed.

Petitioner has met his burden of proving both deficiency and prejudice in this case. Two actual jurors *in Petitioner's case* have indicated that had proper mitigation evidence been presented – evidence that reasonable counsel would have discovered regarding Petitioner's alcoholic and physically abusive father and his family's extensive criminal history – they would have considered granting a life sentence *in this case*.

5

Thus, the state habeas court's findings on this issue are an unreasonable determination of the facts in light of the evidence and record presented and further amount to an unreasonable application of clearly established federal law.  In addition, the state court findings resulted in a decision that was contrary to clearly established Sixth Amendment law as determined by the Supreme Court.  At a minimum, Petitioner should be provided a new punishment hearing at which time he can present the voluminous mitigation evidence that his counsel failed to investigate, uncover or present.  Petitioner's sentence of death is a direct result of counsel's failures – failures which actual jury members indicate caused Constitutional prejudice in this case.  As such, federal habeas should be granted on this issue.

### D. CLAIM TWO

Respondent answers Petitioner's second claim by averring that "Though counsel did not obtain 'consent' for their trial strategy, they discussed it with Escamilla, who did not object to it[]."  Answer, at 63.  For the greater part, Petitioner relies upon the arguments and authorities adduced in his original petition.  Petitioner does, however, pause to submit three observations.

First, the Government's response does not address the manifest inconsistency present in the affidavits of trial counsel or the salient fact that such a concession by Petitioner is wholly inconsistent with his person.  Petition at 81-82.  That is, the Government's response rests upon factual findings that turn a blind eye to manifestly inconsistent affidavits and that are contrary to what is known of Petitioner.

Second, Respondent relies upon the recitation in *Nixon*, that while counsel has a duty to discuss *potential* strategies with an accused, when such accused "informed by counsel, neither consents nor objects . . . counsel is not automatically barred from pursuing that course." Answer, at 64 (citing *Florida v. Nixon*, 543 U.S. 175, 178 (2004)). Petitioner adduced a three-fold rationale upon which *Nixon* should be distinguished: counsel in *Nixon* conceded guilt with an eye toward and having adequately prepared for sentencing, there was no legally viable route to exoneration present in *Nixon*, and there was meaningful opposition to the prosecution's case presented. Petition, at 87-89. These rationale for distinguishing *Nixon* are not addressed.

Lastly, Petitioner's signal rationale for distinguishing *Nixon* – that his trial counsel did not rightly prepare for the mitigation phase – is squarely tied to Claim One. In trial counsel's failure to properly prepare for the imminent mitigation phase lies the very reason that *Nixon* should not control disposition of the cause sub judice against Petitioner.

E. **CLAIM THREE**

Respondent answers Petitioner's third claim by relying upon the state court findings that "Escamilla's allegation that counsel prevented him from testifying is not credible." Answer, at 65-67. Petitioner respectfully disagrees and relies upon the arguments and authorities adduced in his original petition. Petition, at 92.

### F. CLAIMS SEVEN, NINE AND ELEVEN

Respondent contends that claims seven, nine, and eleven are procedurally barred, lack merit, and are *Teague* barred. Answer, at 39. Regarding procedural bar arguments, Petitioner relies upon the arguments and authorities adduced in his original petition and set forth above. For the balance, Petitioner also relies upon the arguments and authorities adduced in his original petition; however, Petitioner pauses here to adduce two further contentions.

First, regarding the mitigation instruction claim, Claim Seven, Respondent argues, inter alia, that the jury was asked to consider "'all the evidence' that would justify a life sentence in the mitigation instructions." Answer, at 43-46. To support its argument, Respondent notes that the jury was asked whether "taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant that there is a sufficient mitigating circumstance . . . to warrant . . . a sentence of life . . . ." Answer, at 44-45, citing CR at 324. Petitioner submits, however, that the restrictive nature of the definition remains, for in interpretation, more specific provisions control over more general provisions. *See, e.g., Guidry v. Sheet metal Workers Nat'l Pension Fund,* 493 U.S. 365, 375-76 (1990).

Second, with reference to Claim Eleven, Respondent argues, inter alia, that there is no Supreme Court authority requiring the State to prove the lack of mitigating circumstances beyond a reasonable doubt and cites to *Rowell v. Dretke,* 398 F.3d 370, 379 (5th Cir. 2005). Answer, at 55. Respondent further notes that

8

Petitioner's argument, that the absence of such an instruction violates the principles of *Apprendi* and *Ring*, has been previously rejected by the Fifth Circuit in *Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007). Answer, at 55-56.

Notably, *Scheanette* cites to *Granados v. Quarterman*, 455 F.3d 529, 536-37 (5th Cir. 2006). Answer, at 56. Petitioner submits that the rationale of *Granados*, and thus the underpinning of *Scheanette*, is logically flawed. Namely, the recitation in *Granados* is that while a state must prove beyond a reasonable doubt every finding that is necessary to exposing a defendant to the penalty of death, "a finding of mitigating circumstances *reduces* a sentence from death, rather than *increasing* it to death." *Granados*, 455 F.3d at 537 (emphasis supplied). Petitioner respectfully disagrees because pursuant to *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the "maximum" sentence is that which a judge may impose without additional findings. To suffer a death sentence, a jury must find a *new* ultimate fact adverse to a defendant. Consequently, the rationale of *Granados*, offends the principles of *Apprendi*, *Ring,* and *Blakely*.

### G.   CLAIMS EIGHT AND TEN

In responding to Claims Eight and Ten, wherein Petitioner asserted that appellate counsel afforded ineffective assistance for not challenging the unlawful mitigation instruction and the unlawful probability definition, Respondent relies upon its early arguments that "each of these subclaims is without merit." Answer, at 63. However, Petitioner relies upon the arguments and authorities adduced in his original petition.

9

**H.** **ALL REMAINING CLAIMS**

For all remaining claims, Petitioner relies upon the arguments and authorities presented in his original petition to address Respondent's Answer.

**CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in Petitioner's federal habeas petition, Petitioner PRAYS that this Court GRANT, in all respects, the claims he has presented. In the alternate, Petitioner PRAYS this Court GRANT Petitioner an evidentiary hearing at which time he will supplement the state habeas record and further support his federal claims.

Respectfully Submitted,

/s/ Mary Margaret Penrose

Mary Margaret Penrose
SBOT 00788179
Nathan Kight
SBOT

University of Oklahoma
College of Law
300 Timberdell Road
Norman, OK 73019
mpenrose@ou.edu
phone: (405) 514-1811
facsimile: (405) 325-0389

## **CERTIFICATE OF SERVICE**

      I, Mary M. Penrose, certify that a true and correct copy of Petitioner's Reply Brief was sent to Respondent's counsel, Ms. Ana Jordan, via email at Ana.Jordan@oag.state.tx.us on this the 14th day of January, 2009.

                                            /s/ Mary M. Penrose
                                            MARY M. PENROSE

11