**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LICHO ESCAMILLA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **No: 3:06-CV-2248-O (BH)** |
| | § | |
| **RICK THALER, Director TDCJ** | § | |
| **Institutional Division,** | § | |
| | § | |
| **Respondent.** | § | |

**PETITIONER'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S FINDINGS OF FACT & CONCLUSIONS OF LAW**

Comes now, LICHO ESCAMILLA, the Petitioner in this case and through his

counsel files these, his Objections, to the Magistrate Judge's Findings of Fact and

Conclusions of Law.  Petitioner respectfully requests that this Court review his objections

*de novo* and grant his requested habeas relief.

I.  Procedural Posture

On August 5, 2011, the Honorable Irma Ramirez, entered 59 pages of Findings

and Recommendations in this case denying all of Petitioner's habeas claims.[1]  This Court

extended Petitioner's time to prepare and file these Objections until Wednesday,

November 2nd.  Because Petitioner's Objections have been timely filed, he is entitled to

*de novo* review.  For the reasons that follow, Petitioner respectfully requests that this

Court embrace his Objections and grant his federally requested habeas relief.

---

[1] Judge Ramirez dismissed, without prejudice, Petitioner's sixth claim for relief alleging that the Texas
three-drug cocktail violates his Eighth Amendment right to be free from cruel and unusual punishment.
Judge Ramirez indicated that the proper vehicle for such claim is a civil rights action filed pursuant to 42
U.S.C. § 1983.

II.     General Objections

A.     Differing Standards Applied to Affidavit Evidence

Petitioner respectfully objects to the *Magistrate's Findings* because they apply differing standards of review to the affidavit evidence in this case.  The *Magistrate's Findings* discount Petitioner's affidavit testimony from family members and neighbors indicating that Petitioner's father physically abused family members, including Petitioner, because the affidavits do not state these individuals would have testified to these matters.  Their very testimony via affidavit indicates a willingness to testify to these matters and, regardless of such willingness, would have been relevant to trial counsel's development of mitigation evidence and trial strategy.  The *Magistrate's Findings* completely disregard the value, both substantively and strategically, of Petitioner's affidavit testimony.  This constitutes error and Petitioner objects.

In contrast, trial counsels' affidavits containing hearsay evidence and testimony regarding their mitigation investigation, which likewise fail to assert they would have been willing to testify to these matters, are accepted by the Court as credible.  Such differing standards violate due process.  The *Magistrate's Findings* fail to appreciate the broader evidentiary value of Petitioner's witnesses and their affidavit testimony.  In reducing the proffered affidavits to a question of whether the witnesses would have actually testified to the abuse, the *Magistrate's Findings* erroneously divorce this testimony from Petitioner's overall claim of ineffectiveness.  The very fact that there *was* evidence of abuse in the family, available through multiple sources (family and neighbors) and evidence of extensive criminality among male family members suggests that counsel's failure to find, consider and evaluate this information when constructing

their strategy violates clearly established federal law.  Accordingly, the *Magistrate's Findings* on this point are objectionable.

B.      606(b) Evidence

Petitioner respectfully objects to the *Magistrate's Findings*, at 10 – 11 regarding Federal Rule of Evidence 606(b).  Petitioner specifically objects that the Magistrate Judge improperly applied FED. R. EVID. 606(b) by excluding James Sutton's affidavit. *See Guy v. Dretke*, 2004 WL 1462196, at *2n.2 (N.D. Tex. 2004)(considering a juror's affidavit as evidence of prejudice finding "a reasonable probability that at least one juror could have reasonable determined that death was not an appropriate sentence").  Sutton's affidavit should have been considered by the court for many reasons:  (1) Fifth Circuit permits such use, *see Guy v. Cockrell*, 343 F.3d at 352 n.2.; (2) it directly disputes counsel's testimony characterizing the main punishment phase witness as leaving a positive feeling with jurors (a material fact question not calling into question "the validity of a verdict"); and, (3) it directly disputes counsel's testimony that "a more thorough family history could have been presented with more specific factors, including criminal activities," in order to humanize Petitioner and place his crime in context.

Sutton's affidavit confirms his recollection that, "not much extended family background was given during sentencing and this absence of information made it more difficult to put [Petitioner's] crime into complete context."  *See James E. Sutton Affidavit*.

Although Sutton further testified that he "would have considered more family information during the sentencing phase, including the criminal element of the Escamilla family, which may have harmfully influenced the development of [Petitioner]," there is nothing in the affidavit that falls under Rule 606(b)'s proscription against testimony "as

to any matter or statement occurring during the course of the jury's deliberations . . . ."

*See Guy v. Dretke*, 2004 WL 1462196, at *2n.2 (N.D. Tex. 2004). Further, while Sutton

clearly indicates an openness to considering mitigation evidence, the importance of his

testimony goes to its demonstration that the state court findings violate §2254(d)(2).

Sutton's affidavit proves with clear and convincing evidence that the state court findings

regarding trial counsel's performance during the sentencing phase "resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence

presented."

Petitioner further objects to the *Magistrate's Findings* citation to *Williams v.*

*Collins* as supporting the decision to bar Sutton's testimony. *Williams* involved a

challenge to the district court's refusal to permit live testimony from former jurors at an

evidentiary hearing. *Williams v. Collins*, 16 F.3d 626, 636 (5th Cir. 1994). A more

appropriate and recent decision involving F.R.E. 606(b) is *Guy v. Cockrell*, 343 F.3d at

352 n.2. The *Guy* court indicated that upon remand of the case, a juror's affidavit

relating to an ineffective assistance of counsel claim should be evaluated by the court to

assess its probative value. *Id.* Much like Petitioner's case, *Guy* involved an ineffective

assistance of counsel claim for failure to present mitigating evidence.[2]

*Williams* was not a case where an affidavit was presented to challenge counsel's

deficient performance. *Guy* was. *Williams* involved an abuse of discretion application to

the court's refusal to call live witnesses. Petitioner requests this Court, like the court in

*Guy*, to consider the affidavit testimony presented by a juror. The affidavit testimony

---

[2] While Petitioner appreciates that *Guy* is factually distinguishable from his case, the *Guy* court's F.R.E. 606(b) application demonstrates this Circuit permits consideration of post-verdict juror testimony identical to that Petitioner proffers.

was allowed in *Guy* to prove prejudice under ineffective assistance of counsel and should be similarly allowed in this case.

For all of these reasons, Petitioner objects to the *Magistrate's Findings* regarding FED. R. EVID. 606(b). Petitioner objects to the exclusion of Sutton's affidavit despite its relevancy to counsel's characterization of the penalty phase witness and the issue of prejudice. Petitioner objects to the *Magistrate's Findings* sole citation to and reliance on *Williams*. Petitioner further objects to the Magistrate Judge's overlooking *Guy*, despite its being more analogous than *Williams*. Petitioner urges this Court to consider the testimony of Sutton, as recommended and utilized in *Guy*, in determining both that Petitioner received constitutionally ineffective assistance of counsel and that such deficient performance prejudiced his case. *See Guy v. Cockrell*, 343 F.3d at 352 n.2; *Guy v. Dretke*, 2004 WL 1462196, at *2n.2 (N.D. Tex. 2004).

C.      Need for Independent Review

Petitioner respectfully objects to the *Magistrate's Findings,* at 2 – 5, because this factual recitation is a near literal reproduction of Respondent's Brief on pages 5 – 10. While the practice of having parties submit findings and factual statements is common at the state court level, such practice is unusual in federal court. Petitioner objects to the reliance on Respondent's brief as a factual source because such use suggests an inherent bias and preference for the State's version of events.

Petitioner further objects that the Magistrate Judge's "facts" presented on pages 6 and 7 are similarly drawn from Respondent's Brief on pages 12 –14. Again, the Magistrate Judge, in failing to draft an original factual statement suggests that the

Respondent's characterization of the evidence, and selected portions of the Court of Criminal Appeals testimony, is inherently credible.

The purpose of federal habeas review is to ensure that a state inmate receives at least one unbiased review of the facts and evidence. Petitioner objects to the Magistrate's adoption of Respondent's Brief as factual, action mirroring the state court practice, and allowing the State of Texas to dictate the facts and findings in habeas cases. Such practice is as odds with the role of an independent federal judiciary to "say what the law is." *See Marbury v. Madison*, 5 U.S. 137 (1803). *See also McCulloch v. Maryland*, 17 U.S. 316 (1819). Without an independent federal judiciary, federal habeas review becomes illusory under 28 U.S.C. § 2254. Petitioner objects to the Magistrate Judge's failure to provide independent federal review or independently prepare a statement of facts in these proceedings.

<u>III. Substantive Objections</u>

**OBJECTION NO. I**
**Ineffective Assistance of Counsel -- Mitigation**

Petitioner respectfully objects to the *Magistrate's Findings* on pages 32 – 52. The bulk of the *Magistrate's Findings* are, appropriately, dedicated to Petitioner's claims that trial counsel rendered constitutionally ineffective assistance of counsel in failing both to investigate *and* present mitigating evidence in conformity with clearly established federal law. Petitioner objects to the *Magistrate's Findings* that he did not receive constitutionally ineffective assistance of counsel and that counsel's deficient performance did not prejudice his sentence. Had counsel conducted a meaningful, independent mitigation investigation there is a reasonable probability that Petitioner would have

received a life sentence.  For these reasons, Petitioner respectfully objects to the

*Magistrate's Findings* on pages 32 – 52.

## OBJECTION NO. IA

      IA.  The *Magistrate's Findings* committed error in finding that
counsel conducted a constitutionally adequate mitigation investigation.

      The *Magistrate's Findings* recommend denial of Petitioner's claim that his

attorneys were ineffective for failing to conduct a constitutionally adequate mitigation

investigation, *Magistrate's Findings*, at 44 – 47. Petitioner respectfully objects to this

finding for five reasons:   (1) the *Magistrate's Findings* fail to properly apply the

governing 1989 ABA Guidelines; (2) the *Magistrate's Findings* fail to evaluate trial

counsel's strategy in light of *Strickland, Wiggins* and *Rompilla*; and, (3) the *Magistrate's*

*Findings* fail to place trial counsel's strategic decisions in the context of their incomplete

and dilatory mitigation investigation; (4) the *Magistrate's Findings* improperly state that

the only source of information regarding physical abuse and criminal history was from

Petitioner's family; and, (5) the *Magistrate's Findings* fail to properly apply the prejudice

standard for ineffective assistance of counsel claims which requires a weighing of all the

evidence in mitigation against the existing aggravating evidence.

      A.      Failure to Properly Apply 1989 ABA Guidelines

      Clearly established federal law mandates that courts reviewing ineffective

assistance of counsel claims evaluate capital counsel's actions in light of objective ABA

Guidelines.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).   The *Magistrate's Findings* fail

to properly apply these guidelines.  The *Magistrate's Findings* only notation regarding

the governing ABA Guidelines occurs on page 45.  Rather than assess counsel's

performance pursuant to these guidelines, the *Magistrate's Findings* simply state that

"petitioner cites to the 2003 [ABA] guidelines for counsel in death penalty cases as evidence of counsel's ineffectiveness." *Magistrate's Findings*, at 45. Petitioner objects to this passing reference, at 45, and the failure to analyze counsel's actions in light of the governing 1989 ABA Guidelines.  Indeed, thereafter, there is no mention of how the governing 1989 Guidelines should be applied in this capital case.  Petitioner objects to the *Magistrate's Findings* regarding his ineffective assistance of counsel claims because these findings make no effort to evaluate counsel's conduct under the governing ABA Guidelines despite the directive to do so in *Wiggins v. Smith*.  *Wiggins*, 539 U.S. at 522.

Petitioner objects to the *Magistrate's Findings* failure to apply the following 1989 ABA Guidelines in reaching its decision in the following specific areas:

GUIDELINE 11.4.1 INVESTIGATION

A. Counsel should conduct independent investigations relating to the guilt/innocence phase and to the penalty phase of a capital trial. Both investigations should begin immediately upon counsel's entry into the case and should be pursued expeditiously.

 . . . . .

C. The investigation for preparation of the sentencing phase should be conducted regardless of any initial assertion by the client that mitigation is not to be offered. This investigation should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.

GUIDELINE 11.8.3 PREPARATION FOR THE SENTENCING PHASE

A. As set out in Guideline 11.4.1, preparation for the sentencing phase, in the form of investigation, should begin immediately upon counsel's entry into the case. Counsel should seek information to present to the sentencing entity or entities in mitigation or explanation of the offense and to rebut the prosecution's sentencing case.

Petitioner objects to the *Magistrate's Findings*, at 44 – 51 both explicit and implicit in the opinion, that trial counsel's dilatory conduct relating to experts, consultations with certain family members (Petitioner's sister Maria, which first occurred *during* trial) and failure to gather the extensive family criminal history conformed to the 1989 ABA Guidelines.

Trial counsel did not conduct an immediate investigation in this case thereby violating both Guideline 11.4.1 and 11.8.3.  Further, Petitioner objects to the *Magistrate's Findings* that trial counsel conformed their conduct to Guideline 11.4.1 by pursuing their investigation expeditiously.  In fact, as Dr. Pearson's affidavit indicates, the lone psychological/psychiatric expert being consulted did not examine Petitioner until *after* trial had already begun in his case.  Thus, there is no possibility that any findings proffered by the expert could have been conscientiously evaluated and incorporated into counsel's trial or punishment strategy.  Instead, as Petitioner argued before the state courts, this 11th hour "drive-by" consultation with Dr. Pearson violates the governing ABA Guidelines.  Trial counsel's failure to comply with the governing ABA guidelines constitutes an objective deviation from the governing professional standards and falls well below "prevailing professional norms" at the time of Petitioner's trial.  *Wiggins*, 539 U.S. at 521-523.

Petitioner objects to the *Magistrate's Findings*, at 45-46, that Petitioner has not overcome by clear and convincing evidence that the state habeas courts' factual finding "that the ABA standards in place at the time of trial" did not require a social history regarding petitioner and his family or the use of a mitigation expert.  In fact, Guideline 11.4.1 unequivocally required that counsel:

C. Collect information relevant to the sentencing phase of trial including, but not limited to:

medical history, (mental and physical illness or injury of alcohol and drug use, birth trauma and developmental delays); educational history (achievement, performance and behavior) special educational needs including cognitive limitations and learning disabilities); military history (type and length of service, conduct, special training); employment and training history (including skills and performance, and barriers to employability); family and social history (including physical, sexual or emotional abuse); prior adult and Juvenile record; prior correctional experience (including conduct or supervision and in the institution/education or training/clinical services); and religious and cultural influences.

. . .

E. Obtain names of collateral persons or sources to verify, corroborate, explain and expand upon information obtained in (c) above.

*ABA Guidelines* (1989).  Contrary to the *Magistrate's Findings* on page 45, the 1989

ABA Guidelines specifically required capital counsel to collect information regarding to

"family and social history."  In this case, no such compilation occurred.  Instead, trial

counsel relied on three primary information sources:  Petitioner, his father and his half-

sister.  This limited approach does not comply with 11.4.1.  The *Magistrate's Findings*, at

45, to the contrary are error and should be reversed.

The 1989 ABA Guidelines further require:

GUIDELINE 11.8.6 THE DEFENSE CASE AT THE SENTENCING PHASE

A. Counsel should present to the sentencing entity or entities all reasonably available evidence in mitigation unless there are strong strategic reasons to forego some portion of such evidence.

B. Among the topics counsel should consider presenting is:

1. Medical history (including mental and physical illness or injury, alcohol and drug use, birth trauma and developmental delays);

2. Educational history (including achievement, performance and behavior, special educational needs including cognitive limitations and learning disabilities) and opportunity or lack thereof;

. . .

5. Family, and social history (including physical, sexual or emotional abuse, neighborhood surroundings and peer influence); and other cultural or religion influence, professional intervention (by medical personnel, social workers, law enforcement personnel, clergy or others) or lack thereof; prior correctional experience (including conduct on supervision and in institutions, education or training, and clinical services);

6. Rehabilitative potential of the client.

7. Record of prior offenses (adult and juvenile), especially where there is no record, a short record, or a record of non-violent offenses.

8. Expert testimony concerning any of the above and the resulting impact on the client, relating to the offense and to the client's potential at the time of sentencing.

C. Counsel should consider all potential methods for offering mitigating evidence to the sentencing entity or entities, including witnesses, affidavits, reports (including, if appropriate, a defense presentence report which could include challenges to inaccurate, misleading or incomplete information contained in the official presentence report and/or offered by the prosecution, as well as information favorable to the client), letters and public records.

The *Magistrate's Findings*, at 45, err in suggesting that a family and social history and evidence regarding the family history and social history are not mandated under the governing 1989 ABA Guidelines and *Wiggins*. Trial counsel failed to collect sufficient information regarding Petitioner's violent upbringing, his physically abusive father and his family's extensive criminal history. These failures violate Guideline 11.4.1 and 11.8.6. Petitioner objects to the *Magistrate's Findings* failure to apply 11.4.1 and 11.8.6 in reviewing the state court findings.

The *Magistrate's Findings*, at 44 – 45, also err in finding that trial counsel's delayed use of Dr. Pearson does not violate the governing ABA Guidelines relating to experts.  First, trial counsel was required to use their investigative efforts to develop a trial and punishment strategy.  *See* GUIDELINE 11.7.1 GENERAL TRIAL PREPARATION A. (mandating that "as the investigations mandated by Guideline 11.4.1 produce information, counsel should formulate a defense theory. In doing so, counsel should consider both the guilt/innocence phase and the penalty phase, and seek a theory that will be effective through both phases.")  Waiting until *after* trial has begun to have a client evaluated by an expert precludes proper strategic development.  Further, failure to provide an expert with accurate information (such as the family's extensive criminal history, including in this case over 38 convictions excluding Petitioner's convictions) prevented the expert from providing useful, if not usable, information.  In this regard, the *Magistrate's Findings* are objectionable because they fail to evaluate trial counsel's investigative efforts in light of the governing ABA Guidelines.  Petitioner objects to the *Magistrate's Findings* failure to review the state court findings in light of Guideline 11.71.

The *Magistrate's Findings*, at 44-45, err by not considering the ABA Guidelines governing sentencing preparation.  GUIDELINE 11.8.3 PREPARATION FOR THE SENTENCING PHASE A. (As set out in Guideline 11.4.1, preparation for the sentencing phase, in the form of investigation, should begin immediately upon counsel's entry into the case. Counsel should seek information to present to the sentencing entity or entities in mitigation or explanation of the offense and to rebut the prosecution's sentencing case.)

Petitioner submitted two affidavits proving, and thus establishing by clear and convincing evidence, that trial counsel did not even attempt to utilize their psychological expert until *after* trial had begun.  Trial counsel's own affidavit concedes this point.  This proves that trial counsel failed to conform to both Guideline 11.4.1 and 11.8.3 by not beginning their expert preparation until after the time for considering and adopting a trial strategy had passed.  Petitioner objects to the *Magistrate's Findings* failure to apply 11.4.1. and 11.8.3 in reviewing the state court findings.

Petitioner further objects to the *Magistrate's Findings*, at 45, that suggest that trial counsel hired "a defense investigator, a psychologist, and a psychiatrist," as incomplete. As set forth above, Dr. Pearson did not even meet with Petitioner until *after* trial had begun.  Thus, Dr. Pearson's opinion could not have been considered in preparing for trial. Second, the other medical expert, Dr. Crowder, had an extremely limited role – merely evaluating Petitioner to discern whether there was organic brain damage.  Petitioner objects to any suggestion that a psychologist or psychiatrist was used in the traditional mitigation sense in his case, neither were.  Finally, the investigator failed Petitioner on nearly every important aspect, failing to contact family members or uncover the extensive family criminal history that provides crucial insight into Petitioner's upbringing.

Petitioner's counsel is aware of no case holding that where an expert's first consultation with the defendant occurs *after* trial has begun meets either the 1989 ABA Guidelines or qualifies as effective assistance of counsel.  Petitioner's counsel is likewise unaware of any case that condones ignoring family members, such as Petitioner's sister, Maria, until after trial has begun as being timely or effective.  Petitioner objects that the Magistrate Judge's analysis regarding the governing ABA Guidelines ignores the fact

that counsel's "strategy," including its decision whether to use a psychological expert or have Petitioner's sister Maria testify, was reached without conducting a constitutionally effective investigation prior to trial.  Both the expert and Maria were *first utilized* after trial had begun.

As the United States Supreme Court has indicated, a "strategy" formed after an incomplete investigation is not entitled to the traditional *Strickland* deference.  *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).  Petitioner objects to the *Magistrate's Findings* regarding ineffective assistance of counsel because the Findings fail to undertake the proper analysis mandated by *Wiggins* – that "a reviewing court must consider the reasonableness of the investigation said to support" any proposed strategy.  *Id.*  As the Supreme Court has "made clear, counsel [was] not in a position to make a reasonable strategic choice as to whether to focus on [Petitioner's] direct responsibility, the sordid details of his life history, or both, *because the investigation supporting their choice was unreasonable*."  *Id.*

Petitioner also objects to the *Magistrate's Findings* indicating that delaying an expert assessment until *after* trial has begun does not constitute ineffective assistance of counsel.  Waiting until after trial has begun to consult a psychological or psychiatric expert, or to speak with a family member for the first time, negates any opportunity to utilize the expert's and family member's opinions in crafting a trial and sentencing strategy.  Dr. Pearson testified via affidavit that he did not realize the importance of his evaluation or that his assessment was being considered for use in a death penalty case.  As someone who opposes the death penalty, this knowledge would have been critical to provide to the lone psychological/psychiatric expert relied upon by the defense team.

More importantly, Dr. Pearson's letter report to trial counsel contained a blatant error regarding the family's criminal history. *See Glen T. Pearson, M.D. Letter, Nov. 29, 2002.* Despite more than 38 convictions scattered among Petitioner's male family members, including two murder convictions, Dr. Pearson's report falsely states that there was no criminal history in the family or among Petitioner's siblings. *Id.* at 1 ("[n]one of Licho's siblings were involved with illegal activity). Petitioner's two brothers *each* had close to 10 adult convictions. And, both are currently serving extensive prison sentences, one in federal custody, the other in TDCJ custody. Petitioner's half-brother, Mr. Escamilla's son from a prior marriage, was also convicted of murder. Petitioner's counsel never corrected this inaccuracy to enable Dr. Pearson to properly evaluate Petitioner.

Counsel's failure to apprise Dr. Pearson of the purpose and scope of his evaluation, or to provide an accurate family history, falls far below the objective standard of reasonable counsel as required by the Sixth Amendment. Counsel's failure to interview Petitioner's sister, Maria, prior to the start of trial falls far below the objective standard of reasonable counsel as required by the Sixth Amendment. For these reasons, Petitioner objects to the Magistrate Judge's Findings suggesting that trial counsel's delayed and incomplete use of Dr. Pearson, and dilatory contacts with Petitioner's sister, Maria, were not deficient under the 1989 ABA Guidelines.

Petitioner specifically objects that the *Magistrate's Findings* fail to apply the governing and applicable 1989 ABA Guidelines contained in 11.4.1, 11.7.1, 11.8.3, and 11.8.6 in reviewing the state court findings. Clearly established federal law mandates using the ABA Guidelines as a starting place. *See Wiggins v. Smith*, 539 U.S. 510, 522

(2003); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005).  Because the *Magistrate's Findings*

fail to do so, the findings are erroneous and should be overturned.

      B.      Failure to Evaluate Trial Counsel's "strategy" under clearly
                 established Federal Law as set forth by the U.S. Supreme Court

      Petitioner's second basis for this objection is that the *Magistrate's Findings* fail to

properly apply the governing doctrines of *Strickland, Wiggins* and *Rompilla*.

      Petitioner objects to the *Magistrate Finding's* narrow presentation of *Wiggins v.*

*Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*, 545 U.S. 374 (2005).  The

*Magistrate's Findings* recite that the Court's analysis regarding counsel's performance

"is determined through an objective review of counsel's performance under the

prevailing professional norms and in the context of his/her perspective at the time of

trial."  *Magistrate's Findings*, at 32.  However, in presenting *Wiggins* and *Rompilla* on

pages 32-33, the *Magistrate Findings* make no reference to the applicable ABA

Guidelines that the Supreme Court has increasingly relied upon in ineffective assistance

of counsel cases.  *See Rompilla*, 545 U.S. at 387 (remarking that the ABA "Standards for

Criminal Justice in circulation at the time of Rompilla's trial describes the obligation in

terms no one could misunderstand in the circumstances of a case like this one").

      Petitioner's objects to the Magistrate Judge's failure to rely upon Petitioner's

evidence submitted regarding the governing 1989 ABA Guidelines in place during

Petitioner's trial.  Had the *Magistrate's Findings* relied upon these Guidelines, the Court

would have necessarily found counsel's investigation constitutionally deficient.

      *Wiggins* explains that "[i]n highlighting counsel's duty to investigate, and in

referring to the ABA Standards for Criminal Justice as guides, [the Supreme Court]

applied the same 'clearly established' precedent of *Strickland* we apply today."  *Wiggins*,

539 U.S. at 522 (citing *Strickland v. Washington*, 466 U.S. at 688-689; "Prevailing norms

of practice as reflected in American Bar Association standards and the like . . . are guides

to determining what is reasonable.").  Further, much like *Wiggins*, counsel's conduct in

this case

> fell short of the standards for capital defense work articulated by
> the American Bar Association (ABA) – standards to which we long
> have referred as "guides to determining what is reasonable." *Strickland*,
> 466 U.S. at 688, *Williams v. Taylor*, 529 U.S. at 396.  The ABA Guidelines
> provide that investigations into mitigating evidence "should comprise
> efforts to discover *all reasonably available* mitigation evidence and
> evidence to rebut any aggravating evidence that may be introduced by the
> prosecutor." ABA Guidelines for the Appointment and Performance of
> Counsel in Death Penalty Cases 11.4.1(c), p. 93 (1989)(emphasis added).
> Despite these well-defined norms, however, counsel abandoned their
> investigation of petitioner's background after having acquired only
> rudimentary knowledge of his history from a narrow set of sources.
> Cf. *id.*, 11.8.6, p.133 (noting that among the topics counsel should
> consider presenting are medical history, educational history, employment
> and training history, *family and social history*, prior adult and juvenile
> correctional history, and religious and cultural influences)(emphasis
> added); 1 ABA Standards for Criminal Justice 4.4.1, commentary, p. 4-55
> ("The lawyer also has a substantial and important role to perform in
> raising mitigating factors both to the prosecutor initially and to the court
> at sentencing . . . . Investigation is essential to fulfillment of these functions").

*Wiggins*, 539 U.S. at 522.

Petitioner also objects to the *Magistrate's Findings* failure to set forth the legal

importance the ABA Guidelines have in Sixth Amendment challenges.  *See Wiggins*, ("In

highlighting counsel's duty to investigate, and in referring to the ABA Standards for

Criminal Justice as guides, we applied the same 'clearly established' precedent of

*Strickland* we apply today").  By failing to set forth and utilize the 1989 ABA Guidelines

in existence during Petitioner's trial in assessing trial counsel's behavior, the

*Magistrate's Findings* failed to properly apply the investigative standard as set forth in

clearly established federal law.  *See Rompilla v. Beard*, 545 U.S. at 387 (reminding that

federal courts have long referred to the ABA Guidelines to determine whether counsel's investigation was reasonable). Petitioner objects to the *Magistrate's Findings* in this regard as *Wiggins* and *Rompilla* require a more searching inquiry into precisely what counsel did, whether their behavior comported with the governing ABA Guidelines and whether the "strategy" ultimately selected was reached *after* a reasonable investigation into all potentially available mitigating evidence.

Because trial counsel was still consulting with experts even after Petitioner's trial began, *see Magistrate's Findings*, at 44,[3] there is no possibility that their strategy could be considered reasonable under either the governing ABA Guidelines or clearly established federal law; it could not have been clearly formed.  Such delayed consultations violate the ABA guidelines regarding investigation and the Sixth Amendment.  *Wiggins v. Smith*, 539 U.S. at 522; *Rompilla v. Beard*, 545 U.S. at 387.

C.     Failure to Place Strategic Decisions in Proper Context

Petitioner's third basis for this objection is that the *Magistrate's Findings* state that "petitioner's trial attorneys began investigating potentially mitigating evidence immediately after being appointed." *Magistrate's Findings,* at 44. Petitioner presented evidence proving that counsel did not have Petitioner evaluated by the medical expert Dr. Pearson until *after* trial began.  This delay did not satisfy the governing 1989 ABA Guidelines that counsel begin penalty phase investigation immediately.   The delay in evaluating Petitioner ensured that Dr.

---

[3] While the *Magistrate's Findings* indicate that "Dr. Pearson's new affidavit states that he did not meet with petitioner until trial had begun," this fact is corroborated by Dr. Pearson's letter to Ms. Busbee which indicates that he met with "Mr. Escamilla in the holding cell adjacent to the courtroom in which his trial was proceeding."  *Letter from Glen T. Pearson, M.D.* (November 29, 2002).  One fact that has never been clearly determined is precisely when – at what point in Petitioner's trial – did this meeting take place.  This is a factual issue that must be resolved before this, or any other, court can discern whether trial counsel's use of Dr. Pearson was constitutionally reasonable.  This unresolved issue provides additional impetus for conducting an evidentiary hearing.

Pearson's input could not be used by counsel in developing a pre-trial strategy. This delay is compelling evidence of counsel's ineffectiveness and proves Petitioner's claim that counsel failed to conduct a meaningful mitigation investigation as required by clearly established federal law.

Further, Petitioner objects to the *Magistrate's Findings*, at 44–45, suggesting that Dr. Pearson could not have proffered any useful information. This ignores the fact that trial counsel failed to provide Dr. Pearson with Petitioner's background and life history. Dr. Pearson's letter to Ms. Busbee inaccurately states that "[n]one of Licho's siblings were involved with illegal activity." *Glen T. Pearson, M.D. Letter, Nov. 29, 2002.* This statement is clearly false and was known to trial counsel, at the time, to be false. Accordingly, Dr. Pearson's examination, which he indicates was based in part on a review of Ms. Busbee's records in the case file, was grounded on false, incomplete and inaccurate information having direct relevance to the evaluation.

Criminal behavior is endemic to the Escamilla family, particularly the male family members. This detail was not conveyed to Dr. Pearson and undermines his assessment of Petitioner and, further, his father. *See Glen T. Pearson, M.D. Letter, Nov. 29, 2002.* Dr. Pearson, not appreciating the violent criminal history of Petitioner's father, including two gun-related arrests, and the abusive, alcoholic environment in which Petitioner was raised had no meaningful context in which to place Petitioner's conduct. Trial counsel wholly failed to prepare Dr. Pearson for Petitioner's assessment.

The *Magistrate's Findings* are objectionable because they fail to note the incomplete and inaccurate information upon which Dr. Pearson's assessment is based. Any "strategic" reason for not calling Dr. Pearson cannot be justified when his assessment was made during trial (presumably, after the trial and punishment strategy had already been crafted) and reached without key family historical information. These deficits, attributable to counsel, render the *Magistrate's Findings* objectionable and in conflict with the governing 1989 ABA Guidelines.

As the Supreme Court has indicated, a "strategy" formed after an incomplete investigation is not entitled to the traditional Strickland deference." *Wiggins v. Smith*, 539 U.S. at 527. Petitioner objects that in the "Timing of Investigation and Types of Experts:" section, at 44, the *Magistrate's Findings* fail to undertake the proper analysis mandated by *Wiggins* – that "a reviewing court must consider the reasonableness of the investigation said to support" any proposed strategy. *Id.* Petitioner further objects that the Magistrate Judge failed in her analysis on this issue to consider the unreasonable nature of Ms. Busbee's "investigation" and delayed utilization of an expert. *See Wiggins*, at 536. As the Supreme Court has "made clear, counsel [was] not in a position to make a reasonable strategic choice as to whether to focus on Wiggins' direct responsibility, the sordid details of his life history, or both, *because the investigation supporting their choice was unreasonable*." *Id.*

*Wiggins* explained:

In this case, as in *Strickland*, petitioner's claim stems from counsel's decision to limit the scope of their investigation into potential mitigating evidence. *Id.* Here, as in *Strickland*, counsel attempt to justify their limited investigation as reflecting a tactical judgment not to present

mitigating evidence at sentencing and to pursue an alternate strategy
instead.  In rejecting Strickland's claim, we defined the deference owed
such strategic judgment in terms of the adequacy of investigations
supporting those judgments:

"Strategic choices made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable; and strategic
choices made after less than complete investigation are reasonable
precisely to the extent that reasonable professional judgments support
the limitations on investigation.  In other words, counsel has a duty to
make reasonable investigations or to make a reasonable decision that
makes particular investigations unnecessary.  In any ineffectiveness
case, a particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances . . . ."

*Wiggins*, 539 U.S. at 521-22.  Petitioner objects to the *Magistrate's Findings* for failing

to consider the delay in contacting Dr. Pearson as a relevant fact.  Petitioner further

objects to the *Magistrate's Findings* for failing to reject counsel's reliance on Dr.

Pearson's letter that provides patently false information about Petitioner's family criminal

history as unreasonable and falling below reasonably objective professional behavior.

Trial counsel's reliance on a letter report from an expert based on false information,

known by counsel to be false at the time, suggests an incomplete or reckless

investigation.

  *Wiggins* is applicable in this case and was misapplied by both the state courts and

the *Magistrate's Findings.*  Under *Wiggins*, the timing of trial counsel's resort to Dr.

Pearson is relevant, if not decisive, to their so-called strategy not to rely on his assistance.

Petitioner objects to the *Magistrate's Findings* regarding the "strategy" in this case

because counsel's decision, based on an incomplete investigation, was clearly

unreasonable and "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  *Id.*

The *Magistrate's Findings* regarding the timeliness of counsel's investigation, their trial strategy and witness selection in this case, including the decision to forego any expert testimony, much like the state court findings below, are contrary to clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003). As *Wiggins* found:

> In light of [governing ABA] standards, our principal concern in deciding whether [trial counsel] exercised "reasonable professional judgment[t], *id.*, at 691, is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [Petitioner's] background *was itself reasonable*.

*Wiggins*, 539 U.S. at 522.

Further, the *Magistrate's Findings* regarding the timeliness of counsel's investigation, their trial strategy and witness selection, including the decision to forego any expert testimony, much like the state court findings below, are an unreasonable application of clearly established federal law. *Id. See also Williams v. Taylor*, 529 U.S. 362 (2000); *Rompilla v. Beard*, 545 U.S. 374 (2005). Finally, the *Magistrate's Findings* regarding the timeliness of counsel's investigation, their trial strategy and witness selection, including the decision to forego any expert testimony, much like the state court findings below, resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *Id. See also Williams v. Taylor*, 529 U.S. 362 (2000); *Rompilla v. Beard*, 545 U.S. 374 (2005). For these reasons, Petitioner's objections, and his habeas petition, should be granted.

D.     Failure to Consider All Sources for Abuse Evidence

Petitioner's fourth basis for this objection is that the *Magistrate's Findings*, at 41, state that without documentary evidence regarding abuse by petitioner's father, the

"information about the abuse would have to had come from petitioner's family." This finding is in clear conflict with U.S. Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).

In capital cases, trial counsel has a constitutional obligation to thoroughly investigate mitigating evidence and present this evidence at trial. *Wiggins v. Smith*, 539 U.S. at 521-23; *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Rompilla v. Beard*, 545 U.S. 374 (2005). In *Williams*, the Supreme Court iterated that "it is undisputed that [a capital defendant has] a right – indeed, a constitutionally protected right to provide the jury with the evidence that his trial counsel either failed to discover or failed to offer." *Williams*, 529 U.S. at 393. The importance of the mitigating evidence arises from "the unique and irreversible penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 287 (1976) (plurality opinion).

In *Woodson*, the Supreme Court warned that "[a] process that accords no significance to relevant facts of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of human kind." *Id.* at 304. Petitioner's counsel did little in this case to individually portray Petitioner in the context of his violent, abusive upbringing and criminal familial environment.

Based on this precedent, Petitioner further objects to the *Magistrate's Findings*, at 41, that erroneously suggest "[c]ounsel had made every effort to uncover evidence of abuse, petitioner and his family chose not to disclose such evidence, and counsel had no

reason to disbelieve them."  In fact, the *Magistrate's Findings* and trial counsel's affidavit confirm that Petitioner's family was uncooperative, thereby suggesting that they were not likely the best, much less a reliable, source of information.  This finding, at 41, is at odds with the record, with evidence from family and neighbors that challenge counsel's version of their exchanges, and with clearly established federal law.  *See Wiggins v. Smith*, 539 U.S. at 526-27.

*Wiggins* explained that "[i]n rejecting petitioner's ineffective assistance claim, [the state court] appears to have assumed that because counsel had *some* information with respect to petitioner's background . . . they were in a position to make a tactical choice not to present a mitigation defense.  In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but whether the known evidence would lead a reasonable attorney to investigate further."  *Id.*

Equally persuasive is *Rompilla v. Beard,* 545 U.S. 374, 381-82 (2005).  Much like *Rompilla,*

> Rompilla's own contributions to any mitigation case were minimal. Counsel found him uninterested in helping, as on their visit to his prison to go over a proposed mitigation strategy, when Rompilla told them he was "bored being here listening," and returned to his cell.  To questions about childhood and schooling, his answers indicated they had been normal, save for quitting school in the ninth grade.  There were times when Rompilla was even actively obstructive by sending counsel off on false leads.
>
> The lawyers also spoke with five members of Rompilla's family . . . [although counsel indicated the family] didn't really feel as though they knew him all that well . . .
>
> The third and final source tapped for mitigating material was the cadre of three mental health witnesses who were asked to look into Rompilla's mental state as of the time of the offense and his competency to stand

> trial, but their reports revealed "nothing useful" to Rompilla's case, and
> the lawyers consequently did not go to any other historical source that
> might have case light on Rompilla's mental condition.
> . . .
> If the defense lawyers had looked in the file on Rompilla's prior
> conviction, it is uncontested they would have found a range of
> mitigation leads that no other source opened up. . . .
>
> The accumulated entries would have destroyed the benign conception
> of Rompilla's upbringing and mental capacity defense counsel had
> formed from talking with Rompilla himself and some of his family
> members, and from the reports of the mental health experts.  With
> this information, counsel would have been skeptical of the impression
> given by the five family members and would have unquestionably
> gone further to build a mitigation case.

*Rompilla*, 545 U.S. at 381-391.  Petitioner, like Rompilla, suffered physical abuse by his father, including being beat "when he was young with his [father's] hands, fists, leather straps, belts and sticks."  *Id.* at 392.  *See also Maria Escamilla Affidavit* (detailing the various methods Petitioner's father used to beat him).  *Rompilla* underscores that counsel must look beyond family members, who have a self-interest that may preclude candor, to pursue other viable leads.  *Id.*  The fact that Ms. Busbee was aware that Petitioner's brothers had legal trouble before and during her representation should have encouraged her to evaluate their convictions to see whether there was a pattern or trend among in the family.  Ms. Busbee should also have spoken with Maria much sooner than when she first did, sometime during trial.  Maria testified that no member of the trial team spoke to her prior to trial.  *Maria Escamilla Affidavit.*  This evidence has not been contradicted and provides further evidence regarding counsel's ineffectiveness.  *See Rompilla*, 545 U.S. at 381-391.

Neither Mr. Huff nor Ms. Busbee nor their investigator made any attempt to locate extended family members or to speak with neighbors about abuse.  Ms. Busbee

concedes in her affidavit that the earliest she met with Petitioner's sister, Maria, was after the punishment phase had begun.  Ms. Busbee's affidavit further indicates that she still is not sure who the second person she met during punishment was and indicates that it was "possibly Rachel Hinojosa."  Counsel limited their information sources to two self-interested witnesses, Petitioner's father and half-sister in contravention of clearly established federal law.  *Rompilla*, 545 U.S. at 381-391.

The trial team did not attempt to locate the plethora of evidence revealing that Petitioner's father was an abusive alcoholic, a violent father that beat his children and their mother, and a repeat offender with multiple arrests on weapons charges.  Maria provided evidence that Petitioner's father hit the children regularly with his closed fist, boards, sticks, whips and belts.  *Maria Escamilla Affidavit* (testifying that Petitioner's "father would hit us with his belt, switches or whatever he could find.  He had this one wooden stick that almost had like a whip on the end and he broke it on [Petitioner]").  *See also Rompilla*, 545 U.S. at 392.

Maria's testimony was further corroborated by Petitioner's brother Juan who told state habeas counsel that Petitioner's father:

> abused us when we were young also whipped us with his belt,
> and smacked us around.  When he was really mad he would beat
> us down with his bare hands punching us.  When we would get in
> trouble at school he would make us get on our knees and whip us
> with his belt til he got tired.
> I guess that was the way he thought we would learn to behave.
> But the way he would talk to us didn't help either.  I mean he would
> curse us out when we wouldn't do what he wanted us to do.  For
> example:  If my father asked me to cut the grass and I forget to do
> it?  My dad would curse me out and say things like "You not worth
> the fuck.  You never going to amount to shit.  You son of a bitch.
> You fucken faggot."

*See State Habeas Exhibit 18.*  Counsel's failure to gather such information from Petitioner's brother prevented them from placing Petitioner's behavior and his language calling the police officers faggots in the context of his upbringing.  Clearly established federal law requires counsel to seek out evidence that places a capital defendant's crime in context.  Because counsel failed to speak with family members and neighbors to gather mitigating evidence, there was no evidence to contextualize Petitioner's behavior.

Further, even recognizing that one of Petitioner's brothers was in jail at the time of the investigation, and had been previously incarcerated for shooting another individual, the trial team wholly failed to inquire into the family background which would have revealed numerous incarcerations and arrests among the Escamilla men for crimes of violence.  Petitioner's Uncle Juan has two weapons convictions; his uncle Eliezar a conviction for burglary; his father has two weapons convictions; his half-brother has six adult convictions, including murder; his cousin Eliezar has ten convictions including assault with a deadly weapon and murder; his brother Jose has eight adult convictions and is currently serving a fifteen to eighteen year sentence in federal custody; and, his brother Juan has nine adult convictions, including two for aggravated assault with a deadly weapon, and is currently in TDCJ custody.

*Wiggins* found such failings constitutionally ineffective.  *See Wiggins v. Smith*, 539 U.S. at 534 ("Counsel's investigation into [Petitioner's] background did not reflect reasonable professional judgment.  Their decision to end their investigation when they did was neither consistent with the professional standards that prevailed in 1989, nor reasonable in light of the evidence counsel uncovered in the social services records – evidence that would have led a reasonably competent attorney to investigate further.").

The *Magistrate's Findings* fail to properly apply this portion of *Wiggins*.  The *Magistrate's Findings* do not justify how a reasonably competent attorney would abandon efforts to consider the extensive family criminal history when they were aware that Petitioner's brother was then in jail and all his brothers had prior convictions. While the *Magistrate's Findings*, at 49, credit Ms. Busbee with awareness "of the criminal backgrounds of both of petitioner's brothers," they fail to explain how such awareness – of 10 and 9 convictions each – would have negated further need for investigation.

Even a cursory investigation, as was conducted by state habeas counsel, demonstrated that every male in the Escamilla family had extensive criminal histories. Further, state habeas counsel was easily able to unearth proof that Petitioner's father's other son, Petitioner's half-brother, also had a murder conviction (among his many other criminal convictions).  Without even skimming the surface of Petitioner's family background, how could trial counsel have made any meaningful strategic decision? *Wiggins* holds that, constitutionally speaking, they can not.  *See Wiggins v. Smith*, 539 U.S. at 534.

Petitioner objects to the *Magistrate's Findings*, at 49-50, regarding trial counsel's appreciation of these criminal histories; the relevance of these criminal histories; and, minimizing the similarities between Petitioner's murder and the other 38 familial convictions for crimes of violence, including murder.  The *Magistrate's Findings* ignoring the plethora of existing, but unearthed, mitigating evidence conflict with clearly established federal law.  As the Supreme Court has held, strategic decisions, made on less than adequate investigation, violate the Sixth Amendment right to effective assistance of

counsel.  *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374

(2005).

Much like *Wiggins*, "[i]n this case, as in Strickland, petitioner's claim stems from

counsel's decision to limit the scope of their investigation into potential mitigating

evidence," without conducting a thorough or complete investigation. *Wiggins v. Smith*,

539 U.S. 510, 521 (2003).  In writing for the majority, Justice O'Conner found

> Here, as in *Strickland*, counsel attempt to justify their
> limited investigation as reflecting a tactical judgment not
> to present mitigating evidence at sentencing and to pursue
> an alternative strategy instead.  In rejecting respondent's
> claim, we defined the deference owed such strategic
> judgments in terms of the adequacy of the investigations
> supporting those judgments:
>
> [S]trategic choices made after thorough investigation
> of law and facts relevant to plausible options are virtually
> unchallengeable; and strategic choices made after less than
> complete investigation are reasonable precisely to the extent
> that reasonable professional judgments support the limitations
> on investigation.  In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary.  In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.
>
> Our opinion in Williams v. Taylor is illustrative of the proper
> application of these standards.  In finding Williams' ineffectiveness
> claim meritorious, we applied Strickland and concluded that
> counsel's failure to uncover and present voluminous mitigating
> evidence at sentencing could not be justified as a tactical decision
> to focus on Williams' voluntary confessions, because counsel had
> not "fulfill[ed] their obligation to conduct a thorough investigation
> of the defendant's background.

*Id.* at 521-522.  Petitioner objects that the *Magistrate's Findings* fail to properly apply the

*Wiggins* test.  Petitioner specifically objects to the *Magistrate's Findings*, at 46,

misstating that "Petitioner identifies numerous friends and family that were never contacted, but he did not submit any affidavits from these proposed witnesses to meet his burden to show that any of them knew of the alleged abuse." In fact, two neighbors clearly testified via affidavit during the state court proceedings that Petitioner's father physically abused Petitioner's mother, leaving her beaten, black-eyed and with bruises. *Luis Gonzalez Affidavit*; *Margaret Barajas Affidavit.*   The *Magistrate's Findings* committed error by ignoring these un-contradicted affidavits providing further proof of undiscovered family violence.  Petitioner objects to these findings as being both an incorrect and unreasonable application of clearly established law.

The narrow sources of mitigation evidence in this case include Petitioner, Petitioner's father (who, unsurprisingly, did not reveal his abusive or violent background) and Petitioner's half-sister, Brenda.  No other sources were contacted or considered by trial counsel despite the clear mandates of *Wiggins* and *Rompilla*. *Wiggins v. Smith*, 539 U.S. at 521-522; *Rompilla*, 545 U.S. at 381-391.

The Supreme Court has found, under AEDPA, that mitigating evidence can negate one's moral blameworthiness even in cases where the murder was particularly gruesome or involved torture and the offender had a long history of violent felonies.  *See Wiggins*, 539 U.S. 510 (2003), *Rompilla v. Beard* 545 U.S. 374 (2005).  The role of counsel is to conduct a reasonable investigation that unearths and assess the universe of mitigating evidence available to counsel.  *Wiggins*, 539 U.S. at 524 ("In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.").   In this case, if counsel was

aware that Petitioner's brothers had criminal histories, counsel was obliged to follow these leads to discern whether Petitioner was a product of his environment (which he has proven to be) or the "black sheep" that the prosecutor falsely suggested without objection from counsel.

While strategic decisions will generally be insulated under ineffective assistance claims, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments supports the limitations of investigation." *Strickland*, 466 U.S. at 690-91. "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins*, 539 U.S. at 31 (citing *Strickland*, 466 U.S. at 691). In this case, the *Magistrate's Findings* wholly fail to consider the decisions made by counsel not to delve into readily available evidence in light of the information already known. Instead, the *Magistrate's Findings* provide far too much deference to the state court findings which failed to credit or receive Petitioner's evidence contradicting counsels' claims of investigation.

Petitioner further objects that the *Magistrate's Findings* failed to properly apply clearly established federal law which, following *Wiggins* and *Rompilla* requires an independent and timely investigation. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). Using two family members and ignoring potential leads about the criminal history of Petitioner's brothers does not suffice under these standards. Petitioner objects that in reviewing the state court findings in this case, the Magistrate Judge failed to use the proper standards enunciated in clearly established federal law. *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*, 545 U.S. 374 (2005). The

Magistrate Judge's misapplication of the law to these facts has resulted in a decision that is erroneous and should be reversed.

Petitioner objects that the *Magistrate's Findings* regarding the adequacy of the evidence discovered, and counsel's abandonment of their investigation despite obvious leads, much like the state court findings below, are an contrary to and involve an unreasonable application of clearly established federal law. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). Petitioner also objects that the *Magistrate's Findings* regarding the adequacy of the evidence discovered, and counsel's abandonment of their investigation despite obvious leads, much like the state court findings below, resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). For these reasons, Petitioner's objections, and his habeas petition, should be granted.

## OBJECTION NO. IB

> IB. The *Magistrate's Findings* committed error in finding
> that trial counsel relied upon a reasonable strategy in failing
> to present mitigation evidence regarding Petitioner's violent and
> abusive upbringing, his father's violent and criminal past,
> and his family's criminal past.

In preparing for the penalty phase of a capital trial, the ABA Guidelines direct that counsel should consider all potential methods of offering mitigating evidence to the sentencing entity, including witnesses, affidavits, reports, letters, and public records. *ABA Guidelines for the Appointment and Performance of Counsel* § 11.8.6 (1989).

Moreover, the Supreme Court has clarified it is not enough for a defendant to be allowed to develop mitigating evidence, the jury must be allowed to hear

and consider mitigating evidence. *Penry v. Johnson*, 532 U.S. 782 (2001). Here, the jury did not have the ability to fully consider mitigating evidence favorable to Petitioner, and, therefore, Petitioner was denied his constitutional rights. *See*, *e.g.*, *Simmons v. Luebbers*, 299 F.3d 929, 938-39 (8th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003) ("By the time the state was finished with its case, the jury's perception of Simmons could not have been more unpleasant. Mitigating evidence was essential to provide some sort of explanation for Simmons's abhorrent behavior. Despite the availability of such evidence, however, none was presented. Simmons' attorney's representation was ineffective."); *accord Karis v. Calderon*, 283 F.3d 1117, 1136 (9th Cir. 2002), *cert. denied*, 283 F.3d 1117 (2003) ("Despite his conceded knowledge of this history, counsel failed to present any evidence of Karis's family abuse to the jury."). Petitioner's trial counsel similarly failed him in this case.

Petitioner respectfully objects to the *Magistrate's Findings*, at 48, declaring that "[c]ounsel cannot be faulted for failing to present the evidence that was not revealed by the witnesses." This finding suggests that counsel met with a variety of witnesses and the witnesses were obstructionist or otherwise not forthcoming. The truth is that trial counsel used three evidentiary sources: Petitioner, his father and his half-sister. Counsel did not utilize an expert to evaluate Petitioner until *after* trial had begun. Counsel did not speak with all of Petitioner's siblings, available neighbors or seek to discern whether Petitioner's brother's incarceration would have led to additional mitigating evidence, such as the discovery of 38 familial convictions – including two other murder convictions.

Petitioner objects to the *Magistrate's Findings*, at 49-50, that credit Ms. Busbee with a strategic decision to ignore the family criminal history.  Under Supreme Court precedent, one cannot use what they do not know as a basis for forming strategy.  *Wiggins v. Smith*, 539 U.S. 521-522; *Rompilla*, 545 U.S. at 381-391.

Further, Petitioner objects to the *Magistrate's Findings*, at 50, that credit Ms. Busbee with a strategic decision not to put the family's extensive criminal history on in mitigation because such evidence is a "double-edged sword." Nearly all mitigation evidence is "double-edged" and, thus, counsel's decision to consider, evaluate, embrace and reject putting certain mitigation evidence on during the penalty phase will usually receive great deference.  The shortcoming in this case, however, is that Ms. Busbee was never aware of the 38 other family convictions, including Petitioner's father's two weapons convictions, to consider, evaluate, embrace or reject.  *See Wiggins v. Smith*, 539 U.S. 521-522; *Rompilla*, 545 U.S. at 381-391.

  Ms. Busbee's *post-hoc* rationalization cannot be credited under clearly established law.  *See Wiggins*, 539 U.S. at 526 ("[T]he 'strategic decision' the state courts and respondents all invoke to justify counsel's limited pursuit of mitigating evidence resembles more of a *post-hoc* rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing"). Rather, reviewing courts must assess whether it was reasonable to ignore obvious leads, such as a family history of crime and family abuse, in devising an incomplete strategy.  *Id.* (reminding that "a reviewing court must consider the

reasonableness of the investigation said to support that strategy"). Petitioner objects to the *Magistrate's Findings* that strategic decisions explain why a meaningful mitigation case was not established. Petitioner further objects to the *Magistrate's Findings* because they fail to "consider the reasonableness of the investigation said to support" the strategy to focus on Petitioner's father's recent loss of his wife and how that loss, coupled with a death sentence for his son, would be overwhelming. Unlike the generous packaging by the state courts and the *Magistrate's Findings* that counsel's "strategy" limited their investigation, counsel's failing were omissions, not tactical errors. *Wiggins v. Smith*, 539 U.S. 521-522; *Rompilla*, 545 U.S. at 381-391.

Trial counsel opted for the "empathy for Petitioner's father" strategy because they failed to appreciate that it was Petitioner, not his father, who merited empathy. Had counsel undertaken a constitutionally adequate investigation, there is little doubt that the positive, sympathetic attention would have focused on Petitioner's father. *Wiggins v. Smith*, 539 U.S. 521-522; *Rompilla*, 545 U.S. at 381-391. Two neighbors testified via affidavit that they saw Petitioner's mother "beaten and with a black eye" and saw bruises on her. *Luis Gonzales Affidavit*; *Margaret Barajas Affidavit.*

Petitioner objects to the *Magistrate's Findings*, at 50, characterizing Petitioner's crime as an execution-style murder. There is no evidence in the record that Petitioner's crime was committed execution-style. Petitioner further objects to the *Magistrate's Findings*, at 50, labeling Petitioner's crime an execution-style murder as a means of distinguishing the 38 other crimes of

violence committed by Escamilla family members.  Contrary to the *Magistrate's Findings* suggesting Petitioner is somehow unique among his family, the record reveals two other family members with murder convictions, including his father's other son, Petitioner's half-brother.  Petitioner is not the black sheep of his family.  Rather, tragically, Petitioner is a product of his violent upbringing and lawless environment.

Petitioner's father has four sons, all of whom have extensive and violent criminal histories, including two sons that have been convicted of murder.  The lack of investigation into this evidence could have been devastating for counsel had the prosecution entered evidence about the Escamilla family's criminal past.  *Wiggins* found that "[a] decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances."  *Wiggins*, 539 U.S. at 533.  Petitioner objects that the *Magistrate's Findings* fail to assess counsel's decision not to investigate in light of the vast and readily available mitigating evidence.

Reasonable professional norms require that counsel familiarize themselves with their mitigation witnesses and their weaknesses.  Surely, if Ms. Busbee were aware that her main witness had two weapons convictions and that his three sons (excluding Petitioner) had 23 convictions among them, including another one for murder, she would have not so cavalierly relied upon Petitioner's father as a sympathetic figure.  In fact, counsel was fortunate that the prosecution failed to investigate Petitioner's family background because they could have completely discredited Petitioner's father's claim of being an upstanding citizen and good father.

Petitioner objects to the *Magistrate's Findings*, at 50, that use of the family's extensive criminal history would somehow have worsened Petitioner's situation because the state could have used this evidence "to support a claim by the state that petitioner was the worst of a bad bunch and beyond hope or assistance."   In fact, the family history would have provided context for what otherwise was characterized as a vicious and heartless murder.   Lawlessness and disregard for authority are evident in the family's 38 criminal convictions – all 38 of which exclude Petitioner.   And, while the Escamilla fathers each have a conviction or two, Petitioner's generation, including his brothers and cousin, have 10, 9, 8 and 6, respectively.

The State's theory was that Petitioner was the "black sheep" of an otherwise intact and functioning family.   No set of circumstances could have been further from the truth.   *See e.g., Wiggins*, 539 U.S. at 535 ("Petitioner thus has the kind of troubled history we declared to be relevant to assessing a defendant's moral culpability").   *See also Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

Petitioner presented affidavit testimony from a juror, Sutton, who confirms that scant family history was presented and that Petitioner's crime was never put into context.   *Sutton Affidavit. See also Guy v. Cockrell*, 343 F.3d at 352 n.2; *Guy v. Dretke*, 2004 WL 1462196, at *2n.2 (N.D. Tex. 2004).   Had counsel followed the leads clearly indicating a criminal trend in the family – or, cared to mention that all of Petitioner's brothers (even his half-brother) had 8, 9, and 6

adult criminal convictions, respectively – it is implausible to believe that counsel would have sat mute and allowed the State to mischaracterize Petitioner's place in his family.  Or, had trial counsel been aware of Petitioner's father's past gun convictions, or the 23 convictions for his three other sons, it is unthinkable that trial counsel would not have evaluated this potential weakness in choosing their strategy.

The sole reason that these convictions were not considered was they were not known.  Had the State presented the full familial picture, trial counsel would have been incapable of responding because they were wholly unaware of the breadth and depth of the family's violent tendencies.  Petitioner objects to the *Magistrate's Findings* to the contrary as not supported by the record.

Equally important, the *Magistrate's Findings*, at 43 – 52, are contrary to and involve an unreasonable application of clearly established federal law as set forth by the Supreme Court.  *See Wiggins*, 539 U.S. at 535 ("[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse."); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) (noting that consideration of the offender's life history is "a part of the process of inflicting the death penalty"). Petitioner's case can also be compared to: *Williams v. Taylor*, 529 U.S. 362 (2000), *Frierson v. Woodford*, 463 F.3d 982, 998 (9th Cir. 2006), *Rompilla v. Beard* , 545 U.S. 374,382 (2005) and *Coleman v. Mitchell*, 268 F.3d 417 (2001), among others.

These cases are not aberrations.  Death sentences from nearly every capital jurisdiction have been set aside due to counsel's failure to investigate adequately or present the client's background, character, or mental health to the jury during the penalty phase.  *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (Maryland) (counsel failed to present life history evidence, including sexual victimization);  *Outten v. Kearney*, 464 F.3d 401, 418-19 (3d Cir. 2006) (Delaware) (counsel was ineffective for failing to investigate the violence committed by petitioner's alcoholic father and the defendant's own substance abuse); *Douglas v. Woodford*, 316 F.3d 1079, 1087-88 (9th Cir. 2003) (California) (counsel was ineffective for failing to investigate and present evidence of mental disabilities and evidence that he was abandoned as a child); *Lockett v. Anderson*, 230 F.3d 695, 713-14 (5th Cir. 2000) (Mississippi) (counsel failed to investigate and present defendant's mental disabilities, including temporal lobe lesions, epilepsy, and schizophrenia that would have mitigated even the particularly aggravated crime); *Collier v. Turpin*, 177 F.3d 1184, 1202 (11th Cir. 1999) (Georgia) (counsel was ineffective for failing to delve deeply into petitioner's past as a good family man, upstanding citizen, his impoverished background, and relationship between his diabetes and his impulsive behavior); *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (Illinois) (counsel was ineffective for failing to investigate defendant's good moral character and adaptability to prison); *Loyd v. Whitley*, 977 F.2d 149, 160 (5th Cir. 1992) (Louisiana) (trial counsel failed to investigate defendant's preexisting mental defects); *Mak v. Blodgett*, 970 F.2d 614, 617 (9th Cir. 1992) (Washington) (counsel failed to present testimony of defendant's family "to show Mak's human qualities" and failed to present expert testimony of "the effects of cultural conflict on young Chinese immigrants"); *Harlow v. Murphy*, No. 05-

CV-039-B, slip op. 41, 44 (D. Wyo. Feb. 15, 2008) (counsel failed to present evidence of

defendant's adaptation to prison and to explain that a prison fight was not because

defendant was "a dangerous person, but . . . was in a dangerous place"); *Sanford v. State*,

25 S.W.3d 414, 421 (Ark. 2000) (trial counsel was ineffective for failing to investigate

school records, medical records, jail records, and family history showing a long-standing

history of mental retardation); *Green v. State*, 32 Fla. L. Weekly 619 (Fla. 2007) (counsel

was ineffective for failing to investigate and present petitioner's prior juvenile robbery

conviction, which would have produced facts disqualifying the incident as an aggravating

factor to justify imposition of death); *Doleman v. State*, 921 P.2d 278, 281 (Nev. 1996)

(counsel failed to introduce testimony of defendant's childhood and institutional history

that "could have effectively humanized Doleman in the eyes of the jury"); *State v. Chew*,

844 A.2d 487, 506 (N.J. 2004) (counsel failed to provide defense experts to testify about

defendant's history of child sex abuse); *Marquez-Burrola v. State*, 157 P.3d 749, 764-65

(Okla. Crim. App. 2007) (counsel failed to substantiate mitigation testimony of

defendant's family with corroborating evidence from a broad set of sources);

*Commonwealth v. Gorby*, 900 A.2d 346, 362 (Pa. 2006) (counsel failed to investigate

witnesses and documents substantiating defendant's childhood maltreatment and related

indicators of brain injury); *Nance v. Ozmint*, 626 S.E.2d 878, 883 (S.C. 2006) (counsel

"failed to reveal that Petitioner was beaten throughout his childhood; . . . he grew up in a

family of extreme poverty and physical deprivation" and did not elaborate about the fact

that petitioner had "a family history of schizophrenia"); *Goad v. State*, 938 S.W.2d 363,

370-71 (Tenn. 1996) (counsel failed to present testimony that defendant's demeanor had

changed since returning from Vietnam and that he suffered PTSD).

Petitioner respectfully objects to the *Magistrate's Findings* that any decision to forego a mitigation presentation was due to strategic reasons. *Strickland* and its progeny admonish that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments supports the limitations of investigation." *Strickland*, 466 U.S. at 690-91. "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins*, 539 U.S. at 31 (citing *Strickland*, 466 U.S. at 691). In this case, the *Magistrate's Findings* fail to consider the decisions made by counsel in the context of the available evidence. Instead, the *Magistrate's Findings* afford unjustifiable deference to the state court findings which failed to credit or receive Petitioner's evidence contradicting counsels' claims of investigation. These state court findings, as explained above, are both contrary to and involve an unreasonable application of clearly established federal law.

Neither the state court findings nor the *Magistrate's Findings* reflect clearly established federal law as announced by the Supreme Court. *Rompilla v. Beard* held that "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review" potentially mitigating evidence. *Rompilla*, 545 U.S. 374, 376 (2005). Petitioner objects to the *Magistrate's Findings*, at 41, suggesting "[c]ounsel had made every effort to uncover evidence of abuse, petitioner and his family chose not to disclose such evidence, and counsel had no reason to disbelieve them." *Rompilla* upends the propriety of this finding. Further, as counsel failed to even speak

with Maria, Petitioner's sister, until the penalty phase of trial began, counsel can hardly
be credited as making "every effort to uncover evidence of abuse."

Petitioner also objects to the *Magistrate's Findings*, at 44, suggesting that "much
of Petitioner's evidence in support of his claim [for failure to investigate and present
mitigating evidence] comes from these same family members."  In fact, only two family
members were interviewed by trial counsel, Petitioner's father and his half-sister Brenda.
Counsel did not even speak to Maria until the penalty phase of trial and, even then, was
so far entrenched in the trial that anything she might offered could hardly be used as
effective strategy.  And, these findings ignore the testimony of two neighbors both
testifying to the physical abuse Petitioner's father inflicted on his mother, leaving her
beaten, bruised and black-eyed.

*Rompilla* requires much more from trial counsel than the *Magistrate's Findings*
required.  *Rompilla*, 545 U.S. at 381-391.  A diligent, thorough investigation must
transcend the limited family members that are willing to engage and cooperate with
counsel.  Thus, the *Magistrate's Findings* emphasizing Petitioner and his family's role in
counsel's investigative shortcomings is contrary to and unreasonably applies firmly
established federal law and is reversible error.

Petitioner objects that the *Magistrate's Findings* regarding the adequacy of the
evidence discovered, blaming Petitioner and his family for investigative shortcomings,
and counsel's abandonment of their investigation despite obvious leads, much like the
state court findings below, are an contrary to and involve an unreasonable application of
clearly established federal law.  *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v.
Beard*, 545 U.S. 374 (2005).   Petitioner also objects that the *Magistrate's Findings*

regarding the adequacy of the evidence discovered, blaming Petitioner and his family for

investigative shortcomings, and counsel's abandonment of their investigation despite

obvious leads, much like the state court findings below, resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented.

*See Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).  For

these reasons, Petitioner's objections, and his habeas petition, should be granted.

### OBJECTION NO. IC

IC.  The *Magistrate's Findings* committed error in finding that
trial counsel's failings relating to mitigation evidence did not prejudice the
sentencing phase of Petitioner's trial.

Petitioner respectfully objects to the *Magistrate's Findings*, at 51-52, finding that

Petitioner failed to demonstrate he suffered prejudice as a result of counsel's failure to

investigate and present mitigating evidence.  The *Magistrate's Findings*, at 52, indicate

that Petitioner's evidence shows "his father's alcoholism, brutal discipline and domestic

violence."  However, the *Magistrate's Findings* wholly fail to note how consideration by

the jury of his family's 38 criminal convictions, including two other murders, would have

impacted the jury.  Thus, the *Magistrate's Findings* err in failing to follow clearly

established federal law that requires "[i]n assessing prejudice, [reviewing courts] reweigh

the evidence in aggravation against the totality of the available mitigating evidence."

*Wiggins*, 539 U.S. at 534.  The *Magistrate's Findings* omit critical evidence in weighing

aggravating evidence against mitigating evidence and, accordingly, violates clearly

established federal law.

Without conducting the proper prejudice analysis, the *Magistrate's Findings*, at

52, concluding that the state court's determination was not unreasonable, cannot stand.

*Id.*  Much like *Wiggins*, "[t]he mitigating evidence counsel failed to discover and present in this case is powerful."  *Id.*  "Given both the nature and the extent of the abuse petitioner suffered," and the extensive criminal family history involved in this case, there was "a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form."  *Id.*  Due to the *similarity* that Petitioner's case has to *Wiggins*, the *Magistrate's Findings* adopting the state court's ruling constitutes an unreasonable application of, and contrary to, clearly established federal law.  *Id.  See also Williams v. Taylor*, 529 U.S. 362 (2000); *Rompilla v. Beard*, 545 U.S. 374 (2005). Further, the *Magistrate's Findings* regarding prejudice resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  *Id. See also Williams v. Taylor*, 529 U.S. 362 (2000); *Rompilla v. Beard*, 545 U.S. 374 (2005).  For these reasons, Petitioner's objections, and his habeas petition, should be granted.

As *Rompilla* explains, the missing "evidence adds up to a mitigation case that bears no relation to the few naked pleas for mercy actually put before the jury, and although we suppose it is possible that a jury could have heard it all and still have decided on the death penalty, that is not the test.  It goes without saying that the undiscovered 'mitigating evidence, taken as a whole "might have influenced the jury's appraisal" of [Petitioner's] culpability, and the likelihood of a different result if the evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing."  *Rompilla*, 545 U.S. at 393.

Petitioner objects to the *Magistrate's Findings* for not considering all of Petitioner's mitigation evidence in resolving his claims.  Petitioner provided evidence of

an actual juror, Sutton, that indicates he would have "considered more family information during the sentencing phase, including the criminal element of the Escamilla family, which may have harmfully influenced the development of Licho." *Sutton Affidavit.*  This evidence affirmatively provides a reasonable probability that had the mitigation evidence been presented, Petitioner would not have been sentenced to death.

Petitioner objects to the *Magistrate's Findings*, at 51 n.12, discounting the two jurors affidavits in this case because they did not affirmatively testify that such information "would have changed their minds."  This is not the standard and, in fact, is contrary to *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).  Unlike the level of proof demanded by the *Magistrate's Findings*, which sounds more of requiring conclusive proof, all that must be demonstrated is "a reasonable probability that [the jury] would have returned with a different sentence."  *Wiggins v. Smith*, 539 U.S. 510 (2003).  Affidavits from two jurors, one of whom clearly indicated that context and family background were missing and would have been relevant to his decision, certainly provides more evidence than was presented in *Wiggins* and *Rompilla*.  The *Magistrate's Findings* fail to apply the proper standard regarding prejudice set forth in clearly established federal law and, therefore, are contrary to and involve an unreasonable application of clearly established federal law. The *Magistrate's Findings* regarding prejudice are, accordingly, constitutionally inadequate and merit reversal.  Petitioner respectfully objects to these findings and requests this Court grant his habeas petition.

### OBJECTION NO. II

II. The *Magistrate's Findings* committed error in finding that counsel's decision to concede guilt for murder was a reasonable strategy without

considering the totality of the circumstances or how counsel's concession
is unlike that confronted by the High Court in *Florida v. Nixon.*

The *Magistrate's Findings* recommend denial of Petitioner's claim that his
attorneys were ineffective for conceding that he was guilty of murder without his consent,
*Magistrate's Findings*, at 28-32, and conclude that trial counsel's concession strategy
was reasonable. *Id.* at 32. Petitioner respectfully objects to this finding for two reasons.

Petitioner's first basis for objection is that the *Magistrate's Findings*, at 31-32,
erred by isolating Petitioner's ineffective assistance of counsel claim to the guilt-
innocence phase of the case. *Strickland* requires consideration of the totality of the
circumstances of representation. *Strickland v. Washington*, 466 U.S. 668, 695 (1984).
Concessions in a capital case must be considered in the context of both trial phases: "in a
capital case, counsel must consider *in conjunction* both the guilt and penalty-phases in
determining how best to proceed." *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (emphasis
added).

The *Magistrate's Findings*, though, considered the concession only in context of
the guilt phase: "given petitioner's many statements that he intentionally . . . killed . . .
counsel determined that the only viable defense *at the guilt phase* of the trial was to argue
that petitioner was only guilty of murder . . . ." *Magistrate's Findings*, at 31 (emphasis
supplied). By isolating Petitioner's ineffective assistance of counsel claim to the guilt
phase, the *Magistrate's Findings* did not apply the totality scope of review set forth by
*Strickland*, *supra*, to both trial phases and so violated the principles of *Nixon*, *supra.*

As a consequence of this narrow scope of review, the *Magistrate's Findings* did
not address Petitioner's supporting legal arguments of ineffective assistance; namely,
that by conceding guilt despite a legal anchor – the jury charge – from which to argue

self-defense trial counsel sacrificed Petitioner's credibility (Pet. at 88, 91) and foreswore any contention of residual doubt. (Pet. at 84). Petitioner contended that counsel's decision was ineffective because it forsook any hope at both phases of trial but these arguments were not considered because the *Magistrate's Findings* improperly considered only the guilt phase of the case.

Therefore, Petitioner objects to the *Magistrate's Findings* because its limited scope of review for this issue: violates *Strickland, supra*; violates *Nixon, supra*; necessarily does not address his supporting legal arguments that are directed at the penalty phase; and, compels the erroneous denial of his claim.

Petitioner's second basis for objection is that his case is readily distinguishable from *Nixon, supra*. The concession in *Nixon* was made with a clear view towards punishment and a well-prepared punishment case. 543 U.S. at 181-84; *see also*, (Pet. at 87). As adduced in Petitioner's first ground for relief, *supra*, counsel here did not similarly prepare a full mitigation case. Further, as argued above, the concession here, unlike that in *Nixon*, destroyed any hope of success at the penalty phase because it abandoned Petitioner's claim of self-defense it labeled him an abject liar and erased any residual doubt. *Cf.* (Pet. at 88, 91). Lastly, there was no legal defense in *Nixon* while here there was, as proven by submission of the self-defense instruction. (Pet. at 87-88). Therefore, Petitioner objects to the *Magistrate's Findings*, at 31, because it fails to properly account for how this case is distinguishable from the *Nixon* scenario.

Therefore, for the reasons set forth in this Objection, this Court should find that Petitioner has made a sufficient showing of ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments.

**OBJECTION NO. III**

III. The *Magistrate's Findings* committed error in finding Petitioner did not rebut the presumption that the state court findings are correct when the state court was faced with conflicting affidavits and that there is no reasonable probability that Petitioner would have avoided conviction absent admission of a media interview.

The *Magistrate's Findings* recommend denial of Petitioner's third claim: his attorneys were ineffective for precluding him from testifying at a suppression hearing that he was told by a guard it would be good for him to speak to a reporter, and so, the trial court determined the videotaped interview petitioner gave to a local television reporter was admissible. *Magistrate's Findings*, at 26-28. Petitioner respectfully objects to this finding for two reasons.

Petitioner's first basis for objection is this finding is premised upon the conclusion that: "The record supports the state court's finding that petitioner never informed his attorneys of this statement. The state . . . findings on this issue are presumptively correct, and petitioner has not shown clear and convincing evidence that rebuts this presumption." *Magistrate's Findings*, at 27. However, as Petitioner argued, counsel's affidavits conflicted with his own, *see* (State Application, Ex. #29), and there was no hearing on the matter for state habeas purposes. (Pet. at 99). As a consequence, Petitioner objects to the *Magistrate's Findings* adopting the state court's determination as supported by the record when the record betrays a manifest inconsistency between Petitioners's and counsel's recollection.

Petitioner's second basis for objection is that this finding is premised upon the conclusion that there was no reasonable probability that exclusion of the video would have prevented Petitioner's conviction. *Magistrate Findings*, at 27-28.  In so finding, the

*Magistrate Findings* failed to address Petitioner's supporting contentions that the state court viewed the interview as part and parcel of the state's case (Pet. at 103) and the state's stressing of the interview in its closing at both guilt and penalty phases of the cause. (Pet. at 104) (citing R. 37:88, 94, 130-31, 133, 134, 155, 159).

In sum, the *Magistrate's Findings* erred by not addressing Petitioner's supporting legal arguments. And, for the reasons set forth in this Objection, this Court should find that Petitioner has clearly stated a violation of his Sixth and Fourteenth Amendment right to effective assistance of counsel.

## OBJECTION NO. VIIA

VII. The *Magistrate's Findings* erred by finding that Petitioner's claim that the mitigation definition was unconstitutionally narrow was procedurally barred because he raised claims on direct appeal related to the jury's consideration of mitigating evidence.

Petitioner complained that the definition of mitigation was unconstitutionally narrow. The *Magistrate's Findings* found this claim procedurally barred after noting the state court finding that it was not raised on direct appeal. *Magistrate's Findings*, at 13-14, 19 n.7. Petitioner respectfully objects to this finding for two reasons.

Petitioner's first basis for objecting is that the *Magistrate's Findings* failed to consider s Petitioner's appellate claims did relate to the jury instructions as they concerned mitigating evidence. (Pet. at 130). Petitioner's seventeenth issue on appeal claimed that the mitigation special issue sent mixed signals. *See Escamilla v. State*, 143 S.W.3d 814, 828 (2004). And, four of Petitioner's other issues on appeal related to the jury instructions vis-à-vis mitigating evidence. *Id.* at 828 (summarizing four other issues as "claims that Texas death-penalty law violates the . . .  constitutions because it

implicitly puts the burden on appellant to prove the mitigation special issue . . .  [and] that Texas death-penalty law violates various federal constitutional provisions because it fails to place the burden of proof on the State 'regarding aggravating evidence' in the mitigation special issue.").

These issues clearly related to the jury's inability to consider mitigating evidence. As a consequence, Petitioner submits for consideration the illustrative decision *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 237, 243 (2007). There, the High Court considered the issue of whether jury instructions prevented meaningful consideration of constitutionally relevant evidence, *id.* at 237, where three of petitioner Cole's twenty-one state habeas claims "*related to* the jury's inability to consider mitigating evidence. *Id.* at 243 (emphasis added).

In summary, Petitioner respectfully submits that he did challenge the mitigation issue on appeal and it should not be found that he did not and that his challenge to the mitigation definition is procedurally barred.

## OBJECTION NO. VIIB

VII. The *Magistrate's Findings* erred by finding that Petitioner's claim that the mitigation definition was unconstitutionally narrow was without merit by relying upon *Beazley v. Johnson*, not addressing Petitioner's arguments, and relying upon a saving instruction in the charge.

Petitioner complained that the definition of mitigation was unconstitutionally narrow and precluded consideration of certain mitigating evidence in his cause. *Magistrate's Findings*, at 19 (citing (Pet. at 135)). The *Magistrate's Findings* found this claim procedurally barred and addressed the merits in an abundance of caution. *Id.*, at 13-14, 19 n.7. The Findings determined that neither Supreme Court nor Fifth Circuit case law supports Petitioner's contention and relied upon *Beazley v. Johnson*, 242 F.3d 248,

260 (5th Cir. 2001), as holding the moral blameworthiness instruction as not unconstitutionally limiting consideration of any factor. *Magistrate's Findings*, at 20. Petitioner respectfully objects for three reasons.

Petitioner's first basis for objection is that in this context reliance upon *Beazley* is misplaced. *Beazley* predates *Nelson v. Quarterman*, 472 F.3d 287 (5th Cir. 2006) (en banc). *Nelson* suggested that the Fifth Circuit revised its view of what constitutes clearly established Supreme Court law on the question of mitigating evidence. *See Reed v. Quarterman*, 504 F.3d 465, 478-479 (5th Cir. 2007). In contrast with earlier opinions, *Nelson* emphasized that it was clearly established federal law that the jury must be able to give "full consideration" and "full effect" to a defendant's mitigating evidence. *Id.* at 479 (quoting *Nelson*, 472 F.3d at 297). This mandatory phrasing conflicts with the more equivocal view of *Beazley*, which speaks in terms of "can be given effect," "does not . . . preclude," and "does *not* limit." 242 F.3d at 260.

To be sure, the *Nelson* court had before it the old pre-*Penry* special issues, not the current framework. Petitioner submits, though, that reflexive reliance upon *Beazley* is improper because the constitutional principles recognized in *Nelson* require that the *Beazley* view does not survive as a correct one. As the Fifth Circuit has written, summarizing the impact of *Abdul-Kabir v. Quarterman, supra*, and *Brewer v. Quarterman*, 550 U.S. 286 (2007), "prior to *Nelson*, our court had 'mischaracterized the law as demanding only that [mitigating] evidence be given 'sufficient mitigating effect,' and [had] improperly equated 'sufficient effect' with 'full effect.'" *Coble v. Quarterman*, 496 F.3d 430, 433 (5th Cir. 2007) (quoting *Brewer,* 550 U.S. at 295). Accordingly, Petitioner objects that *Beazley* is not dispositive of his claim; rather, *Nelson* obtains and,

Petitioner submits it supports his contention for as there, "there is a reasonable likelihood that the jury was precluded from giving full consideration and full effect to . . . mitigating evidence . . . ." *Nelson*, 472 F.3d at 316.

The second basis for Petitioner's objection is that his supporting legal arguments bear merit and were not addressed. Petitioner contended that: individualized sentencing requires all forms of mitigating evidence and the jury could not be misled regarding its role (Pet. at 131-32) (citing, *inter alia*, *Mills v. Maryland*, 486 U.S. 367 (1988)); the definition was too limiting (Pet. at 135-36); the definition allowed unchecked discretion (Pet. at 136-138); and, the instruction inevitably leads to failure. (Pet at 138-141). Significantly, as the Findings acknowledge, Petitioner's contended that the submitted definition of mitigating evidence did "not include evidence about his character, record, or uniqueness as an individual, including his love and devotion for his family, playfulness as a child, previous compassion for a helpless animal, or potential for a religious awakening while in prison." *Magistrate's Findings*, at 19 (citing (Pet. at 135)). These arguments were wholly unaddressed and they bear consideration because the jury must be allowed to consider all mitigation evidence, *Mills,* 486 U.S. at 375-76, and so Petitioner objects.

The third basis for Petitioner's objection is that the *Magistrate's Findings* viewed a second instruction as addressing Petitioner's complaint by instructing the jury: "[y]ou shall consider all evidence . . . including evidence of the defendant's background or character or the circumstances of the offense that militates or mitigates . . . ." *Magistrate's Findings*, at 20. This, however, contravenes the logical and legal principle that the more specific controls the general. *See, e.g.*, *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375 (1990).

For the reasons set forth in this Objection, this Court should find that Petitioner's claim that the definition of mitigation was unconstitutionally narrow and precluded consideration of certain mitigating evidence in his cause, *see Mills*, 486 U.S. at 375-76, possesses merit.

## OBJECTION NO. VIII

VIII. The Magistrate Judge committed error by finding that appellate counsel was not deficient and that Petitioner was not prejudiced within the ambit of *Strickland* by appellate counsel's refusal to challenge the submitted mitigation definition.

The Magistrate Judge erred by finding that Petitioner's eighth ground for relief, that he received ineffective assistance of appellate counsel because counsel failed to argue on appeal that the statutory definition of mitigation was unconstitutionally narrow, was without merit. *Magistrate's Findings*, at 52. To so find, the Magistrate Judge incorporated by reference its previous discussion of ground seven. *Magistrate's Findings*, at 52. Petitioner objects to this finding on the basis that his claim does possess merit as set forth in his objection to denial of relief on his seventh ground, *supra*, because as adduced earlier the mitigation definition was so narrow in derogation of *Mills*, *supra*, that the jury could not consider "evidence about his character, record, or uniqueness as an individual, including his love and devotion for his family, playfulness as a child, previous compassion for a helpless animal, or potential for a religious awakening while in prison." *Magistrate's Findings*, at 19 (citing (Pet. at 135)).

## OBJECTION NO. IXA

IX. The *Magistrate's Findings* erred by finding that Petitioner's claim that use of the term "probability" in the first special issue was unconstitutional was procedurally barred because he raised claims on direct appeal related to the issue.

Petitioner complained that the use of the term "probability" in the first special issue was unconstitutional because it diluted the reasonable doubt standard in derogation of the principles adduced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). The *Magistrate's Findings* noted that the state court found this ground was not raised on appeal because, on appeal, Petitioner argued "the federal constitution is violated because the term 'probability' is not defined for the jury." *Id.* at 17 n.7 (citation omitted). Accordingly, the Magistrate Judge found this claim procedurally barred. *Id.* (citing *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)).

Petitioner respectfully objects that the *Magistrate's Findings* erred by wholly failing to consider that Petitioner's twenty-second direct appeal issue did concern the mitigation instructions. (Pet. at 148). As the state appellate court wrote: "appellant claims that Texas death-penalty law violates various federal constitutional provisions by failing to define the terms 'probability,' 'continuing threat to society,' and 'criminal acts of violence.'" *Escamilla v. State*, 143 S.W.3d 814, 828 (2004). Because this issue related to term "probability," Petitioner submits that it should be considered. *Cf. Abdul-Kabir*, 550 U.S. at 237, 243 (considering the issue of whether jury instructions prevented meaningful consideration of constitutionally relevant evidence where three of petitioner Cole's twenty-one state habeas claims "related to the jury's inability to consider mitigating evidence).

Therefore, Petitioner submits that he did challenge the constitutionality of using the term "probability" on appeal and so his claim is not procedurally barred.

## OBJECTION NO. IXB

IX. The *Magistrate's Findings* erred by finding that Petitioner's claim that use of the term "probability" in the first special issue was unconstitutional

was procedurally barred because he raised claims on direct appeal related to the issue.

Petitioner complained that the use of the term "probability" in the first special issue was unconstitutional because it diluted the reasonable doubt standard against the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). The *Magistrate's Findings* determined that the state court's conclusion that the special punishment issues are not aggravating factors under *Apprendi/Ring* and rejected that the term "probability" did not lessen the burden of proof did not constitute unreasonable applications of federal law. *Magistrate's Findings*, at 18-19. Petitioner respectfully objects to this finding for three reasons.

Petitioner's first basis for objection is that the determination that the complained-of special issue "passes constitutional muster" *Magistrate's Findings*, at 18, is based upon an improper reliance upon *Jurek v. Texas*, 428 U.S. 262 (1976). *Jurek* concerned a facial challenge to the statute, and thus, its holding "did not preclude the possibility that the Texas sentencing statute might be found unconstitutional *as applied* in a particular case." *Abdul-Kabir*, 550 U.S. at 247 (emphasis in original). And, *Jurek's* holding apparently rested on an express assurance that the special issues would be interpreted with sufficient breadth to allow full consideration of all relevant mitigating evidence. *Id.* at 254 n. 15 (citing *Penry v. Lynaugh*, 492 U.S. 302, 318 (1989)). In practice, though, this assurance failed for not every problem was anticipated: "When we deemed the Texas sentencing scheme constitutionally adequate in *Jurek*, we clearly failed to anticipate that when faced with various other types of mitigating evidence, the Texas special issues would not provide the sentencing jury with the requisite 'adequate guidance.'" *Abdul-*

*Kabir*, 550 U.S. at 250 n. 12. As a consequence, *Jurek* cannot rightly be relied upon to deny Petitioner's claim.

Petitioner's second basis for objection is directed at the conclusion that nothing in *Apprendi*, *Ring*, or *Blakely*, requires the future dangerousness special issue be subjected to the reasonable doubt burden of proof. *Magistrate's Findings*, at 18 (citing *Rowell v. Dretke*, 398 F.3d 370, 379 (5th Cir. 2005)). Respectfully, Petitioner concedes that his argument is foreclosed by circuit precedent and he maintains it to preserve the issue for further review. Petitioner therefore respectfully submits that in fact and in logic, what is determined by the special issues is, in fact, an aggravating factor.

*Blakely* was as an application of the *Apprendi* rule: "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490). The relevant statutory maximum in context was "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04. Thus, *Blakely* clarifies and advances the *Apprendi* rule and, the reasonable doubt standard obtains under *Apprendi*.

In the context of this case and in logic, the maximum is that which may be imposed without any additional jury findings. That maximum, the sentence that may be imposed upon a capital defendant whose jury returns an affirmative answer to future dangerousness issue alone is life. To receive death, the jury must also answer the mitigation issue negatively. Thus, the jury has found a new ultimate fact adversely to the defendant: his mitigation case was not sufficient to warrant a life sentence. To make this

finding the jury must find facts adverse to the defendant. Consequently, Petitioner objects that the logic of *Apprendi* demands application of the reasonable doubt standard.

Petitioner's third basis for objection is that the *Magistrate's Findings* conclude that adoption of the rule advanced by Petitioner, that "probability" as used "swallows the reasonable doubt standard" would constitute a new rule pursuant to *Teague v. Lane*, 489 U.S. 288 (1989). *Magistrate's Findings*, at 18-19. Petitioner objects that the basis for the instant claim is *Apprendi* and progeny. That is, the rule Petitioner claims was violated is dictated by *Apprendi*. Consequently, it is not a new rule within the ambit of *Teague*. *See, e.g., Abdul-Kabir*, 550 U.S. at 248 n. 10 (observing that the rule sought by Penry in *Penry I* was not a new rule under *Teague* because it was dictated by earlier precedent).

In *Abdul-Kabir*, the Court held that Texas" instructions on punishment in capital cases – many parts of which remain unchanged – were unconstitutional. *Id*. at 262-64. Relying on its continuously evolving precedents interpreting the Eighth Amendment and emphasizing the magnitude of the decision to execute a human being, the Court addressed the application of its recent decisions to the federal habeas petitioner in that case. *Id*. Ultimately, the Court found that it the federal habeas petitioner must be granted relief and that *Teague* did not prevent this result. *Id*.

As *Abdul-Kabir* makes clear, the Eighth Amendment's protections must be vigorously enforced when it is a matter of life and death. Moreover, courts must follow the lead of the Supreme Court and recognize that the procedural bars of *Teague* do not trump the Eighth Amendment. The Magistrate Judge erred by failing to follow the guidance of *Abdul-Kabir*

For the reasons set forth in this Objection, this Court should find that Petitioner has clearly stated that his claim that possesses merit.

## OBJECTION NO. X

X. The Magistrate Judge committed error by finding that appellate counsel was not deficient and that Petitioner was not prejudiced within the ambit of *Strickland* by appellate counsel's refusal to challenge submission of the term "probability" in the punishment issues.

The Magistrate Judge erred by finding that Petitioner's tenth ground for relief, that he received ineffective assistance of appellate counsel because counsel failed to argue on appeal that the term "probability" in the first special punishment issue dilutes the reasonable doubt standard, was without merit. *Magistrate's Findings*, at 52-53. To so find, the Magistrate Judge incorporated by reference its previous discussion of ground nine. *Magistrate's Findings*, at 53. Petitioner objects to this finding on the basis that his claim does possess merit as set forth in his objection to denial of relief on his ninth ground, *supra*, because as adduced earlier: it fails to account for the clear dictates of *Apprendi*.

## OBJECTION NO. XI

XI. The Magistrate Judge committed error by finding that the submitted "12-10" rule did not violate the principles of *Mills v. Maryland* and that finding the rule unconstitutional would not be allowed by *Teague v. Lane*.

Petitioner contended that his Eighth and Fourteenth Amendment rights were violated because the "12-10" rule is unconstitutional and the jury should have been instructed about the consequences of a deadlock. He complained that the rule "prevented the jury from giving due consideration to mitigating evidence, undermined its sense of responsibility for imposing a death sentence, relieved the State of its duty to prove

beyond a reasonable doubt that petitioner merited a death sentence, and that these instructions were excessively vague, resulting in arbitrary and capricious sentencing patterns." *Magistrate's Findings*, at 21. Petitioner relied upon *Mills*, 486 U.S. 367. (Pet. at 158ff); *Magistrate's Findings*, at 21-22.

Petitioner's claim was denied admittedly based upon the prevailing case authority: *Jones v. United States*, 527 U.S. 373, 381 (1999); *Alexander v. Johnson*, 211 F.3d 895, 897 n.5 (5th Cir. 2000). *Magistrate's Findings*, at 21-22. Petitioner respectfully objects for two reasons.

Petitioner's first basis for objection is that the "12-10" rule is contrary to provisions of the United States Constitution and applicable precedent, to-wit: no barrier is constitutionally tolerable between a jury and its consideration of mitigating evidence. *Mills v. Maryland*, 486 U.S. at 375-76. As a corollary, the Eighth Amendment requires that the jury not be misled in the role it plays in the sentencing decision. *Romano v. Oklahoma*, 512 U.S. 1, 8 (1994); *Caldwell v. Mississippi*, 472 U.S. 320, 336 (1985) (plurality opinion). In cases such as this, though, jurors are not informed of the consequence of a deadlock. This is deception by omission.

To be sure, in judging the constitutionality of a capital sentencing statute, a court must ask how a reasonable juror could view his or her role under the statutory scheme. *See California v. Brown*, 479 U.S. 538, 541 (1987); *Francis v. Franklin*, 471 U.S. 307, 315-16 (1985).

Petitioner respectfully submits the following reasoning to explain his logic for the reasonable juror. Each juror knew that an affirmative answer on the first issue and a negative answer on the second yielded death. Each knew or deduced that the only means

of avoiding death sentence after answering the first special issue affirmatively was to convince nine others to answer the second issue affirmatively.   The jurors could not impose life if a few – or even one – thought mitigating circumstances warranted that sentence.   Under the unconstitutional instructions submitted, a dissenting juror must garner ten total votes to reach that verdict.   Thus, the juror(s) who may have believed the mitigating evidence, were coerced into joining with the majority to reach a verdict.   They were thus prevented from giving due consideration to mitigating evidence because, under the instructions, a reasonable juror could have believed -- in fact, most certainly would have believed -- that she had no ability to give effect to mitigating evidence unless nine other souls joined.

Petitioner is not alone in his view regarding the reasoning taking place. The Seventh Circuit wrote when confronted with a capital murder sentencing scheme virtually identical to the one at issue:

> [Defendant's] jurors were never expressly informed in plain and simple language that even if one juror believed that the death penalty should not be imposed, [defendant] would not be sentenced to death. . . .   [T]here is a substantial possibility that one or more of [defendant's] jurors might have been precluded from granting mercy to [defendant] because of a mistaken belief that the sufficiency of mitigating factors had to be found unanimously.

*Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir. 1989), *cert. denied sub nom Kubat v. Greer,* 493 U.S. 874( 1989).

The risk that the death penalty will be imposed in spite of facts which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments."   *Mills*, 486 U.S. at 376-77.   Because of the

instructions –  instructions that inaccurately stated Texas law – combined with the jury's knowledge of the effect of its answers, that risk is readily apparent in this case.

In sum, the instructions at the penalty phase effectively requiring ten jurors to agree to impose a life sentence inaccurately stated the governing law.  In fact, the holdout of only one juror would have resulted in imposition of a life sentence.  By inaccurately stating the law and impressing upon the jurors that no single juror could have a determinative impact on the outcome of the sentencing phase of the trial, the instructions undermined the juror's sense of responsibility for imposing a death sentence, in violation of the Eighth Amendment, and so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process.  *See Mills*, *supra.* As a consequence, Petitioner submits that the "12-10" rule is, in reality, contrary to Supreme Court precedent. However, the *Magistrate's Findings* denied this complaint. *Magistrate's Findings*, at 21-22.

Petitioner's second basis for objection is that the *Magistrate's Findings* conclude that adoption of the rule advanced by Petitioner, that the "12-10" rule violates the Eighth and Fourteenth Amendments would constitute a new rule pursuant to *Teague*, *supra*. *Magistrate's Findings*, at 22 (citing, *inter alia*, *Hughes v. Dretke*, 412 F.3d 582 (5th Cir. 2005)). Petitioner objects that the basis for the instant claim is found in *Mills*, *supra*. That is, the rule Petitioner claims was violated is dictated by *Mills*. Consequently, it is not a new rule within the ambit of *Teague*. *See, e.g., Abdul-Kabir*, 550 U.S. at 248 n. 10 (observing that the rule sought by Penry in *Penry I* was not a new rule under *Teague* because it was dictated by earlier precedent).

Moreover, as submitted earlier in *Abdul-Kabir*, the Court held that Texas' instructions on punishment in capital cases – many parts of which remain unchanged – were unconstitutional. *Id*. at 262-64. Relying on its continuously evolving precedents interpreting the Eighth Amendment and emphasizing the magnitude of the decision to execute a human being, the Court addressed the application of its recent decisions to the federal habeas petitioner in that case. *Id*. Ultimately, the Court found that it the federal habeas petitioner must be granted relief and that *Teague* did not prevent this result. *Id*.

As *Abdul-Kabir* makes clear, the Eighth Amendment's protections must be vigorously enforced when it is a matter of life and death. Moreover, courts must follow the lead of the Supreme Court and recognize that the procedural bars of *Teague* do not trump the Eighth Amendment. The Magistrate Judge erred by failing to follow the guidance of *Abdul-Kabir*

For the reasons set forth in this Objection, this Court should find that Petitioner has clearly stated that his claim that possesses merit.

## OBJECTION NO. XII

XII. The Magistrate Judge committed error by finding that the failure to require the state to prove beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant imposition of a life sentence did not violate *Apprendi* and its progeny.

In his twelfth ground, Petition complained that *Apprendi* and *Ring* were violated because the jury instructions did not require the state to prove beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant imposition of a life sentence. (Pet. at 172). Petitioner complained that this functionally and improperly shifted the burden of proof to Petitioner. (Pet. at 174-77). The *Magistrate's Findings* recommended denial of the claim because the Fifth Circuit has held that there is no

constitutional requirement that Texas's mitigation issue be assigned a burden of proof, *Magistrate's Findings*, at 53 (citing *Rowell v. Dretke*¸ 398 F.3d 370, 378 (5th Cir. 2003)), and looked to rejection of an identical argument in *Granados v. Quarterman*, 455 F.3d 529, 536-37 (5th Cir. 2006). *Magistrate's Findings*, at 53.

Respectfully, Petitioner "concedes that this argument is squarely foreclosed by circuit precedent and he maintains it only to preserve the issue for further review." *Rivas v. Thaler*, No. 10-70007, 2011 U.S. App. LEXIS 14471 (5th Cir. Tex. July 14, 2011) (per curiam) (not designated for publication). Petitioner contends that *Apprendi* requires that the burden not be placed on Petitioner to prove mitigation but rather the state must prove the converse. Simply, Texas's method of not allocating the burden lessened Texas burden to prove aggravating circumstances. *Cf. Walton v. Arizona*, 497 U.S. 639, 650 (1990), *overruled in part, Ring v. Arizona*, 536 U.S. 584, 589 (2002). (Pet. at 175-76).

## OBJECTION NO. XIII

XIII. The Magistrate Judge committed error by finding that the mitigation issue did not send mixed signals in contravention of the Constitution as interpreted by *Penry II*, and *Smith v. Texas*.

Petitioner submits that the Findings erred in rejecting his thirteenth claim, that the mitigation special issue unconstitutionally sent mixed signals, in derogation of *Penry v. Texas*, 532 U.S. 782 (2001) (*Penry II*), and *Smith v. Texas*, 543 U.S. 37 (2004). *Magistrate's Findings*, at 54-55; (Pet. at 177-179). The Findings concluded that the complained-of special issue in this case did not present the same nullification concerns present in *Penry II* and *Smith* and noted that in *Penry II*, the High Court "noted with approval the new mitigation special issue . . . ." *Magistrate's Findings*, at 54 (*Penry II*, 532 U.S. at 803). Thus, the Findings concluded that the state court's decision to deny this

claim was not contrary to well-established federal law, and so, should be denied.

*Magistrate's Findings*, at 55. Petitioner respectfully objects to this view of *Penry II* as dispositive of his claim. The language relied on, Petitioner believes, is:

> At the very least, the brevity and clarity of this instruction highlight the confusing nature of the supplemental instruction actually given, and indicate that the trial court had adequate alternatives available to it as it drafted the instructions for Penry's trial.

*Penry II*, 532 U.S. at 803. Petitioner's complaint was that the failure to assign a burden "produces a confusing effect, sending a mixed signal in derogation of *Penry* [I]" . . .[and] because the mitigation definition was unduly narrow the jury could not give effect to all of the . . . evidence." (Pet. at 178). The cited language from *Penry II* spoke to the mitigation special issue, not the instruction on moral blameworthiness, the failure to assign any burden of proof or persuasion, or the 12-10 rule problem. That is, the mixed signals complaint remains and does not fall to this language from *Penry II*.

> XV. The Magistrate Judge committed error by finding that Fifth, Eighth, and Fourteenth Amendments were not violated by the Texas Death Penalty framework.

In his fifteenth claim, Petitioner contended that the Texas Death Penalty Scheme denied him Due Process and violated the Fifth, Eighth, and Fourteenth Amendments by allowing open-ended jury discretion condemned by *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*), *Penry II*, and *Furman v. Georgia*, 408 U.S. 238 (1972). (Pet. at 183-86). Petitioner also relied upon the dissent in *Callins v. Collins*, 510 U.S. 1141, 1152 (1994) (BLACKMUN, J.A, dissenting), for the proposition that it was not possible to restrict a jury's discretion and concomitantly afford it unfettered discretion. (Pet. at 184-85). The

Magistrate Judge rejected Petitioner's claim in a three-fold fashion. To each determination, Petitioner respectfully objects.

First, the Findings considered as illustrative of constitutional propriety the narrowing of a class of murder defendants and providing a sufficient vehicle for punishment evidence pursuant to *Jurek v. Texas*, 428 U.S. 262 (1976), and *Tuilaepa v. California*, 512 U.S. 967, 974 (1994). *Magistrate's Findings*, at 55-56. Petitioner objects because there is no sufficient vehicle as contemplated by these cases: "the Texas statutory scheme fails to require that the jury properly and fully consider [all] mitigation evidence." (Pet. at 184). Petitioner further resubmits Justice Blackmun's dissent in *Callins* as correct.

Moreover, Petitioner resubmits as argued initially in his objection to denial of his ninth ground that this is an improper view of *Jurek*, *supra. Jurek* concerned a facial challenge to the statute, and thus, its holding "did not preclude the possibility that the Texas sentencing statute might be found unconstitutional *as applied* . . . ." *Abdul-*, 550 U.S. at 247 (emphasis in original). And, this holding apparently rested on an express assurance that the special issues would be interpreted with sufficient breadth to allow full consideration of all relevant mitigating evidence. *Id.* at 254 n. 15 (citing *Penry*, 492 U.S. at 318). In practice, though, this assurance failed for not every problem was anticipated: "When we deemed the Texas sentencing scheme constitutionally adequate in *Jurek*, we clearly failed to anticipate that when faced with various other types of mitigating evidence, the Texas special issues would not provide the sentencing jury with the requisite 'adequate guidance.'" *Abdul-Kabir*, 550 U.S. at 250 n. 12.

Second, the Findings found that in *Penry II* the High Court approved the new mitigation issue and approved the future dangerousness issue in *Jurek*. *Magistrate's Findings*, at 56. Petitioner objects to this view of *Penry II* as dispositive of his claim. As noted earlier, the language is:

> At the very least, the brevity and clarity of this instruction highlight the confusing nature of the supplemental instruction actually given, and indicate that the trial court had adequate alternatives available to it as it drafted the instructions for Penry's trial.

*Penry II*, 532 U.S. at 803. Petitioner's complaint was that guided and unfettered discretion were incompatible mandates. (Pet. at 183, 184-86). The cited language from *Penry II* spoke to the mitigation special issue, not the instruction on moral blameworthiness, the failure to assign any burden of proof or persuasion, or the 12-10 rule problem. That is, the discretion complaint remains and does not fall to this language from *Penry II.*

Third, the Findings note that the Fifth Circuit has rejected an identical claim and found it to be procedurally barred pursuant to *Teague*. *Magistrate's Findings*, at 56 (citing *Hughes v. Dretke*, 412 F.3d 582, 593-94 (5th Cir. 2005)).

Petitioner objects that this is incorrect. The basis for the instant claim is *Apprendi* and progeny. That is, the rule Petitioner claims was violated is dictated by *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*), *Penry II*, and *Furman v. Georgia*, 408 U.S. 238 (1972). Consequently, it is not a new rule within the ambit of *Teague*. *See, e.g., Abdul-Kabir*, 550 U.S. at 248 n. 10 (2007) (observing that the rule sought by Penry in *Penry I* was not a new rule under *Teague* because it was dictated by earlier precedent).

As argued earlier, in *Abdul-Kabir*, the Court held that Texas' instructions on punishment in capital cases – many parts of which remain unchanged – were unconstitutional. *Id*. at 262-64. Relying on its continuously evolving precedents interpreting the Eighth Amendment and emphasizing the magnitude of the decision to execute a human being, the Court addressed the application of its recent decisions to the federal habeas petitioner in that case. *Id*. Ultimately, the Court found that it the federal habeas petitioner must be granted relief and that *Teague* did not prevent this result. *Id*.

As *Abdul-Kabir* makes clear, the Eighth Amendment's protections must be vigorously enforced when it is a matter of life and death. Moreover, courts must follow the lead of the Supreme Court and recognize that the procedural bars of *Teague* do not trump the Eighth Amendment. The Magistrate Judge erred by failing to follow the guidance of *Abdul-Kabir*

For the reasons set forth in this Objection, this Court should find that Petitioner has clearly stated that his claim that possesses merit.

WHEREFORE, PREMISES CONSIDERED, Petitioner Licho Escamilla respectfully requests this Court evaluate his Objections under the *de novo* standard of review, grant his objections and grant his requested federal habeas relief.

Respectfully Submitted,

*Mary M. Penrose*
Mary M. Penrose
Texas Wesleyan School of Law
1515 Commerce Street
Fort Worth, TX  76102
(972) 310-8669
mpenrose@law.txwes.edu

67

## CERTIFICATE OF SERVICE

I, Mary Margaret Penrose, certify that on October 31, 2011, I served Petitioner's Objections to the Magistrate Judge's Findings of Fact and Conclusions of Law on lead counsel for Respondent, Leslie K. Kuykendall, via email at her email address: leslie.kuykendall@oag.state.tx.us.

*Mary M. Penrose*