IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LICHO ESCAMILLA, | § | |
| *Petitioner,* | § | |
| | § | |
| V. | § | Civil Action No. 3:06-CV-2248-O |
| | § | |
| RICK THALER, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| *Respondent.* | § | |

**ORDER ACCEPTING AND MODIFYING FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND
DENYING A CERTIFICATE OF APPEALABILITY**

The United States Magistrate Judge made findings, conclusions, and a recommendation

("Recommendation") to deny habeas corpus relief in this case.  Licho Escamilla ("Escamilla") has

filed objections, and the Court has made a *de novo* review of those portions of the Recommendation

to which objection was made.  The Court **overrules** the objections, finds that the Recommendations

of the Magistrate Judge are correct and they are **accepted**, as modified by this order, as the Findings

and Conclusions of the Court.  The Court **dismisses** one of Escamilla's grounds for relief without

prejudice, and **denies** the remaining grounds for habeas-corpus relief, for the reasons that follow.

**I. BACKGROUND**

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254.  Escamilla is a

Texas inmate convicted of capital murder and sentenced to death for the murder of Dallas police

officer Christopher James.  Escamilla shot James and another uniformed officer as they approached

a disturbance outside of the nightclub where they worked off duty.  *Escamilla v. State*, 143 S.W.3d

814, 817 (Tex. Crim. App., 2004).  The other wounded officer survived and testified at the trial.

Escamilla's conviction and sentence were affirmed on direct appeal, *id.,* and his petition for a writ of certiorari to the Supreme Court was denied on March 28, 2005.  *Escamilla v. Texas*, 544 U.S. 950 (2005).  Escamilla filed an application for habeas relief in the trial court on January 6, 2006 (Vol. 1, State Habeas Record ("SHR"), at 5), on which the trial court made findings and conclusions to deny relief.  (9 SHR at 2740-2802.)  The Texas Court of Criminal Appeals ("CCA") adopted the findings and conclusions of the trial court and denied relief on October 10, 2007.  *See Ex parte Escamilla*, WR-67,421-01, 2007 WL 2955561 (Tex. Crim. App. 2007).  Escamilla filed his original petition for federal habeas-corpus relief (entitled "Skeletal Petition") on December 21, 2007 (Pet., doc. 20), and an amended petition on May 2, 2008.  (Am. Pet., doc. 24.)  The United States Magistrate Judge recommends that one of Escamilla's claims be dismissed without prejudice and that the remaining claims be denied.  (R., doc. 52.)  Escamilla has filed objections to the Recommendation.  (Obj., doc. 57.)

## II. CLAIMS

Escamilla asserts fifteen grounds for habeas-corpus relief, as follows:

(1)    Trial counsel provided ineffective assistance in the investigation and presentation of mitigating evidence in the punishment phase (Am. Pet. at 4-77; Obj. at 6-45),

(2)    Trial counsel provided ineffective assistance in conceding guilt of murder at the guilt stage (Am. Pet. at 78-92; Obj. at 45-47),

(3)    Trial counsel provided ineffective assistance in a suppression hearing when his attorneys precluded him from testifying (Am. Pet. at 92-105; Obj. at 48-49),

(4)    The jury venire did not reflect a fair cross-section of the community (Am. Pet. 105-109),

- 2 -

(5)     Trial counsel provided ineffective assistance for failing to challenge the lack of a fair cross-section in the jury venire (Am. Pet. at 109-111),

(6)     The method of execution in Texas constitutes cruel and unusual punishment (Am. Pet. at 111-128),

(7)     The definition of mitigation in the jury charge was unconstitutionally narrow (Am. Pet. at 128-141; Obj. to proc. bar at 49-50, and Obj. to merits at 50-53),

(8)     Appellate counsel provided ineffective assistance for not challenging the mitigation definition in the jury charge (Am. Pet. at 141-145; Obj. at 53),

(9)     The use of the term "probability" in the first punishment special issue diluted the prosecution's burden of proof (Am. Pet. at 145-152; Obj. to proc. bar at 53-54, and Obj. to merits at 54-58),

(10)    Appellate counsel provided ineffective assistance for not challenging the use of the term "probability" in the first special issue (Am. Pet. at 152-154; Obj. at 58),

(11)    The punishment jury charge violated the Eighth and Fourteenth Amendments by preventing the jury from knowing about the consequences of a deadlock (Am. Pet. at 155-171; Obj. at 58-62),

(12)    The punishment instructions were unconstitutional because they failed to require the state to prove beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant imposition of a life sentence (Am. Pet. at 172-177; Obj. at 62-63),

(13)    The mitigation issue sent mixed signals in contravention of the Constitution, (Am. Pet. at 177-179; Obj. at 63-67),

(14)    Trial counsel provided ineffective assistance in failing to properly challenge a juror (Am. Pet. at 179-183), and

(15)    The Texas death penalty statute permits unconstitutional jury discretion (Am. Pet. at 183-186).

Escamilla objects to the Recommendation on ten of those grounds as set out in the discussion of individual claims below.  Respondent opposes each of these claims.

### III. LEGAL STANDARD

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This statute sets forth a number of preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding.

### A. Exhaustion

Under this statute, a federal court may not grant habeas relief on any claim that the state prisoner has not first exhausted in the state courts.  *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 787 (2011).  To satisfy this requirement, a habeas petitioner must have fairly presented the substance of his claim to the state courts, alerting the court to the federal nature of his claim.  *See Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (per curiam); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).  The exhaustion requirement is not satisfied if a petitioner "presents material additional evidentiary support to the federal court that was not presented to the state court."  *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996).  Further, "it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  The claim must be presented "in terms so particular as to call to mind a specific right protected by the Constitution" or allege "a pattern of facts that is well within the mainstream of constitutional litigation." *Coleman v. Dretke*, 395 F.3d 216, 220 (5th Cir. 2004) (citing *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231-33 (2d Cir.1992), and *Gartrell v. Lynaugh*, 833 F.2d 527, 528-29 (5th Cir. 1987)).  However, the federal court may deny relief on the merits notwithstanding any failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

### B. State-Court Procedural Determinations

If the state court denies the claim on state procedural grounds, a federal court will not reach the merits of those claims if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), modified by *Martinez v. Ryan*, 566 U.S. ___, 2012 WL 912950 (2012). However, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must resolve the claim *de novo*. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits" (citing *Nobles*, 127 F.3d at 416)); *Mercadel v. Cain*, 179 F.3d 271, 274-275 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claim not adjudicated on the merits by the state court); *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA deferential standard of review would not apply to a procedural decision of the state court).

### C. State-Court Merits Determinations

If the state court denies the claim on the merits, a federal court may not grant relief unless it first determines that the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)  In the context of a § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v.*

*Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief, but restricts this Court's power to grant relief by barring claims in federal court that were not first unreasonably denied by the state courts. "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 131 S.Ct. at 784. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. ____, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *Chester v. Thaler*, 666 F.3d 340, 344 (5th Cir. 2011).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first justifies a finding of unreasonableness under § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been

adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## IV. ANALYSIS

Escamilla makes numerous objections to the Recommendation. He objects generally to the standards applied by the Magistrate Judge in the denial of his claims. Escamilla complains that the Magistrate Judge applied a double standard in reviewing the affidavit evidence in this case.[1] (Obj. at 2-3.) Escamilla objects to the exclusion of a juror affidavit under Federal Rule of Evidence 606(b). (Obj. at 3-5.) Escamilla also objects to similarities in the language of the Recommendation and the Respondent's answer. (Obj. at 5-6.) Escamilla also presents objections to the Magistrate Judge's recommended denial of ten of his claims.

### A. Ineffective Assistance of Counsel: Mitigation Investigation and Presentation

Escamilla first claims trial counsel failed to investigate and present readily available mitigating evidence at the trial. (Am. Pet. at 4-77.) Specifically, Escamilla claims that trial counsel failed to investigate and discover evidence of Escamilla's troubled background and family environment including his substance-abuse problem that began at an early age, his family's extensive criminal history, and his verbally abusive and physically violent upbringing by an alcoholic father.

---

[1]These objections are not "specific" because they do not specify the place in the Recommendation where the disputed determination is found, despite the Magistrate Judge's warning. (Obj. at 2-3; R. at 59, citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).)

(Am. Pet. at 9-16, 18-19.)  Respondent asserts that Escamilla has failed to prove the merits of this claim by showing either deficient performance or prejudice.

### 1.  Review of Ineffective-Assistance-of-Counsel Claims

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), set forth the two-pronged standard by which a claim of ineffective assistance of counsel is measured. The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient.  *Id.* at 687.  The second prong of this test requires the defendant to show prejudice resulting from counsel's deficient performance.  *Id.* at 694.  The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one.  *Id.* at 697, 700.

Further, because these claims were adjudicated on their merits in the state courts, the presumption of competence required by *Strickland*, combined with the deference required under § 2254(d), makes this Court's review of the state court's denial of these claims "doubly deferential." *Pinholster*, 131 S.Ct. at 1403.  Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir.), *cert. denied*, ___ U.S. ____, 131 S.Ct. 265 (2010).  In the federal habeas review of a *Strickland* claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and not whether the reviewing court itself believes trial counsel's performance violated *Strickland's* standards.  *See Harrington*, 131 S. Ct. at 785.  In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*.  *Id.*  Instead, on federal habeas review of such a fully-adjudicated claim, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*  A

state death-row inmate in federal habeas proceedings "must demonstrate that it was necessarily unreasonable for the [state court] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's sentence of death." *Pinholster*, 131 S.Ct. at 1403.

### 2. *State Court Adjudication*

The state habeas court found that Escamilla failed to prove that "counsel was deficient for not finding or presenting such evidence," and failed to prove that, "but for counsel's purported failure to find and present this evidence, applicant's jury was unlikely to have assessed a death sentence." (9 SHR at 2761.)  Specifically, the state court found that counsel pursued appropriate investigative and expert assistance in their mitigation investigation (9 SHR at 2762-2765), and appropriately sought information about Escamilla's family and his background, including mental and substance-abuse issues, any abuse in the family, and any abuse related to Escamilla.  (9 SHR at 2763-2773.)  The state court found that trial counsel was aware of the criminal record of Escamilla's brothers, and had interviewed one that was incarcerated.  (9 SHR at 2767.)  The state court found that trial counsel was aware of Escamilla's substance abuse, and his defense was partly based on it. (9 SHR at 2767-2768.)  It observed that, during the trial, Escamilla's sister Brenda "testified at some length about applicant's abuse of alcohol and drugs as a juvenile, her frustrated efforts to obtain drug counseling and treatment for him, and his increased drinking after his mother's death."  (9 SHR at 2767-2768.)

The state court determined that although trial counsel made every effort to discover any abuse by members of the family, including the father, they were prevented from discovering any evidence that Escamilla had an abusive, alcoholic father because of the refusal of Escamilla's family and

friends to reveal anything about it to trial counsel. (9 SHR at 2769-2772.) All of these witnesses presented a very different picture of Escamilla's father, including Escamilla himself who "specifically and emphatically denied" any such abuse to counsel. (9 SHR at 2771-2772.) Escamilla's family "not only denied the abuse, they were insistent that his murder spree in 2001 was directly attributable to the change in him following his mother's death." (9 SHR at 2772.)

The state court determined that trial counsel presented an effective mitigation case that relied upon Escamilla's father to be presented to the jury as a sympathetic figure, which was consistent with so much of the evidence in the case, including Escamilla's own recorded interviews. (9 SHR at 2774-2777.) The state court found that the jury elected to assess the death penalty, not because the defense presented the wrong mitigation case, but because the prosecution's case "was just too powerful to overcome." (9 SHR at 2777.) These findings were adopted by the CCA in its order denying relief. *Ex parte Escamilla*, 2007 WL 2955561.

### 3. Magistrate Judge's Recommendation

The Magistrate Judge noted the evidence presented in the state habeas proceedings and the findings of the state habeas court. (R. at 33-42.) It also noted the new evidence submitted in these federal habeas proceedings. (R. at 42-43.) Based on this evidence, the Magistrate Judge found that Escamilla's trial attorneys began investigating potentially mitigating evidence immediately after being appointed, and did not complete this investigation earlier because Escamilla's family was reluctant to meet with them, avoided phone calls, did not return phone calls, cancelled meetings, or did not appear for scheduled meetings. (R. at 44.) The Magistrate Judge also found that Dr. Pearson, who examined Escamilla at the beginning of trial, did not make any evaluations that would

have helped the defense, and that Escamilla has presented no evidence that Dr. Pearson or any other expert would have testified any differently if retained earlier.  (R. at 44.)

The Magistrate Judge also found that Escamilla applied the wrong version of the American Bar Association Guidelines for counsel in death penalty cases as evidence of counsel's ineffectiveness, relying upon the 2003 Guidelines when he had been tried in 2002.  The Magistrate Judge also noted the state habeas court finding that trial counsel complied with the applicable ABA Guidelines in place at the time of trial by hiring appropriate expert assistance.  (R. at 45.)  The Magistrate Judge concluded that Escamilla had neither shown the state court's finding that trial counsel was not ineffective for hiring Dr. Pearson to be unreasonable nor established that counsel was ineffective for making the strategic decision not to call him as a witness.  (R. at 45)

Regarding the allegations that trial counsel failed to contact and call witnesses that could have shown Escamilla's father had been an abusive alcoholic, the Magistrate Judge also found that Escamilla failed to show that any of the identified witnesses actually knew of the alleged abuse or that the witnesses were available and willing to testify. (R. at 45-47.)  The Magistrate Judge contrasted this with the affidavit of trial counsel Brooks Busbee, who detailed the contacts with family members and the lack of any mention of such abuse despite her questioning.  The Magistrate Judge observed that Escamilla specifically denied any such abuse and mentioned nothing about it to the experts, investigator, or even in his own affidavit. (R. at 47.)  The Magistrate Judge  concluded that even considering the new evidence, Escamilla had not shown that trial counsel's investigation into potential mitigating evidence of abuse was not reasonable. (R. at 47.)

The Magistrate Judge also discussed the application of *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Wiggins v. Smith*, 539 U.S. 510 (2003), and contrasted those cases from the facts of this

one.  (R. at 48.)   In particular, Escamilla only identified family members and friends as sources of information about the alleged abuse, and trial counsel had contacted family members and friends to get information about any such abuse.  (R. at 48.)  Those family members and friends that responded to the investigative efforts did not reveal that such abuse might exist.  (R. at 48.)  The Magistrate Judge concluded that Escamilla has not shown deficient performance in this investigation.  (R. at 49.)  The Magistrate Judge also discussed the mitigation case counsel presented based on Escamilla's loss of his mother and subsequent substance abuse and concluded that, although Escamilla argues that another mitigation case would have been more effective, he failed to overcome the presumption of correctness afforded the state court findings that counsel were not deficient in their strategic presentation of the information they had.  (R. at 49.)

The Magistrate Judge discussed Escamilla's complaint that his attorneys failed to investigate and present the criminal histories of his two brothers, his father, and his extended family, and argue that this evidence would have shown that Escamilla was a product of his violent environment rather than the "black sheep" of the family, as the prosecutor argued.  (R. at 49.)  The Magistrate Judge noted the affidavit of trial counsel Busbee, explaining that she knew about the criminal background of the brothers, and even met with one while he was incarcerated.  (R. at 49.)  The Recommendation noted Busbee's statement that she did not know about the father's two misdemeanor gun possession charges, but even if she did, "she would not have presented it at trial because he was a sympathetic figure who had recently lost his wife, was in danger of losing his son, and had a great effect on the jury."  (R. at 49-50.)  The Magistrate Judge also noted the "double-edged" nature of this evidence, and the reasonableness of trial counsel's mitigation strategy, concluding that Escamilla had not overcome the presumption of correctness of the state court findings.  (R. at 50.)

- 12 -

The Magistrate Judge also addressed Escamilla's complaint that trial counsel were ineffective for failing to discover and present additional evidence of his history of substance abuse. (R. at 50-51.) The Magistrate Judge discussed the testimony from multiple witnesses at trial about Escamilla's drinking and drug abuse, and how Escamilla was not provided with necessary substance-abuse counseling during his past incarceration. (R. at 51.) The Recommendation cited Fifth Circuit precedent that a reviewing court should be wary of claims that an attorney failed to present enough evidence of a certain type, and stated that the state court's conclusion that counsel were not deficient in their investigation and presentation of mitigation evidence was not unreasonable. (R. at 51.)

Finally, the Magistrate Judge addressed the prejudice prong of *Strickland*. Because Escamilla had not satisfied the deficiency prong, the Magistrate Judge found that it was unnecessary to consider the prejudice prong, but did so in the alternative. (R. at 51.) The Recommendation noted the state habeas court's determination that Escamilla failed to prove the second prong of the *Strickland* standard, and found that he had not shown that such finding was unreasonable or that there was a reasonable probability that he would not have received the death penalty had this type of evidence been presented at trial. (R. at 51.) Considering the new evidence presented in federal court, the Magistrate Judge distinguished *Wiggins* and *Rompilla* as not rising to the same level of abuse and neglect. (R. at 51-52.) The Magistrate Judge observed that, although Escamilla's new evidence describes his father's alcoholism, brutal discipline and domestic violence, the record also reflects that Escamilla came from a close and loyal family, was devoted to his father and mother, and was loved by his siblings and parents. (R. at 52.) The Magistrate Judge concluded that relief on this ground should be denied. (R. at 52.)

### 4. Objections

- 13 -

Escamilla objects to the Magistrate Judge's findings that he had not shown trial counsel's mitigation investigation inadequate because the Recommendation (1) failed to properly apply the ABA Guidelines, (2) failed to evaluate the strategy in light of *Strickland*, *Wiggins*, and *Rompilla*, (3) failed to place these strategic decisions in the context of counsel's "incomplete and dilatory" mitigation investigation, (4) improperly stated that the only source of information regarding physical abuse and criminal history was from Escamilla's family, and (5) failed to properly apply the prejudice standard for ineffective assistance of counsel claims which requires a weighing of all the evidence in mitigation against the existing aggravating evidence.  (Obj. at 7-32.)  Escamilla also objects that the Recommendation erred in finding that trial counsel relied upon a reasonable strategy in failing to present mitigation evidence regarding Escamilla's violent and abusive upbringing, his father's violent and criminal past, and his family's criminal past.  (Obj. at 32-43.)  Finally, Escamilla objects that the Recommendation erred in finding that trial counsel's failings relating to mitigation evidence did not prejudice the sentencing phase of Escamilla's trial.  (Obj. at 43-45.)

### 5. Analysis

This Court's *de novo* review of this ground supports the Recommendation even though it was too accommodating to Escamilla's evidence and argument.  While the Magistrate Judge carefully considered new evidence presented by Escamilla to this Court that was not presented to the state court, such evidence "has no bearing on § 2254(d)(1) review." *See Pinholster*, 131 S.Ct. at 1400. Even if it merely supplements the claim made in state court, does not materially alter it, and does not render the claim unexhausted, a federal court is "precluded from considering" such new evidence that additionally supports a state prisoner's claim.  *Clark v. Thaler*, ___ F.3d ___, 2012 WL 688519 at *3 (5th Cir. Mar. 5, 2012) (quoting *Pinholster*, 131 S.Ct. at 1402 n.11).  "Once the Supreme Court

determined, based only on the record that was before the state court, that the petitioner was not entitled to relief under § 2254(d), it pronounced, 'our analysis is at an end.'" *Id.* (quoting *Pinholster*, 131 S.Ct. at 1411 n.20).

Further, while the Magistrate Judge properly determined that Escamilla relied upon ABA Guidelines that did not apply to his trial in 2002, even the 1989 Guidelines do not control the evaluation of trial counsel's conduct. The ABA Guidelines are helpful only if they "reflect 'prevailing norms of practice.'" *Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct. 13, 17 n.1 (2009) (quoting *Strickland*, 466 U.S. at 688). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo v. Moore*, 131 S.Ct. 733, 740 (2011) (quoting *Strickland*, 466 U.S. at 690). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Van Hook*, 130 S.Ct. at 16 (quoting *Strickland*, 466 U.S., at 688-689). Also, the Guidelines "must not be so detailed that they would 'interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.'" *Id*. (quoting *Strickland*, 466 U.S. at 689); *see also Ayestas v. Thaler*, 2012 WL 573436 at *4 (5th Cir. 2012) (unpublished) (rejecting a habeas petitioner's reliance on ABA Guidelines to the exclusion of authority explaining the professional norms in the Texas bar as they existed at the time of the trial).[2]

---

[2]The Court notes the affidavit of a law partner in the firm of one of the appointed counsel herein that sets forth some professional norms for Dallas County. (Am. Pet. Ex. No. 5.) While the pertinent norms that existed at the time of Escamilla's trial are not clear from this affidavit, it was not presented to the state court and may not be considered in the § 2254(d) analysis. *See Pinholster*, 131 S.Ct. at 1400.

Escamilla has not overcome the presumption of correctness afforded the state court findings. Trial counsel's investigation began immediately after appointment and continued into the trial. (9 SHR 2528-2529, 2534, 2769-2770.) Counsel presented a reasonable mitigation case that was inconsistent with the evidence of an abusive, alcoholic father that is now being presented and that was not revealed to trial counsel despite their efforts to discover it. (9 SHR 2530, 2776-2777.) In fact, it was expressly denied by Escamilla. (9 SHR 2524, 2530. 2771.) Trial counsel also presented evidence of Escamilla's substance abuse and lack of treatment. The Magistrate Judge properly distinguished *Wiggins* and *Rompilla*. The evidence of an abusive, alcoholic father was not readily available by "looking into a file" of a case identified by the prosecution,[3] but was instead withheld from trial counsel by Escamilla, his family and friends, if it is true.[4] (9 SHR 2523-2524, 2528-2530, 2534-2535.) "In general, counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir.1997).

---

[3]As the Supreme Court observed in *Rompilla*,

Questioning a few more family members and searching for old records can promise less than looking for a needle in a haystack, when a lawyer truly has reason to doubt there is any needle there. But looking at a file the prosecution says it will use is a sure bet: whatever may be in that file is going to tell defense counsel something about what the prosecution can produce.

545 U.S. at 389 (citing *Strickland*, 466 U.S. at 699.) Escamilla has pointed to no such readily available method to discover the evidence that he and his family did not disclose to counsel.

[4]This Court does not find that the abuse actually occurred. The state court found that Escamilla had not produced any records to corroborate these allegations, and that some of his own evidence refuted the claimed abuse. (9 SHR 2769.) Escamilla has not proven otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

- 16 -

Further, Circuit precedent holds that when a defendant blocks his attorney's efforts to defend him he cannot later claim ineffective assistance of counsel. *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir.2007) (quoting *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir.2004)); *Ayestas*, 2012 WL 573436 at 5. Recently, even a failure to contact a defendant's incarcerated mother, who would have testified to his tragic childhood and upbringing, without any other available mitigation witnesses at trial due, in part, to the defendant's own obstructions, did not require a finding of ineffective assistance of trial counsel. In *Clark v. Thaler*, 2012 WL 688519, the Court of Appeals described the omitted testimony from the defendant's mother.

> His mother . . . described the difficulties faced by Clark as a child in light of her frequent incarceration brought on by drug addiction and prostitution, and the abuses and frequent relocations he suffered while living with various family members while his mother was in prison. Clark also had a cleft palate as a child and was teased by other children. It interfered with his speech as well. Clark's mother explained that he had lived on his own since he was fifteen, when she consented to his marriage to prevent him from being placed in another foster-care program. She also revealed that Clark held himself responsible for his brother's suicide, which occurred the day after Clark and his brother had fought.

2012 WL 688519 at *5. The Court of Appeals found that relief under § 2254(d) was not warranted because "fairminded jurists could disagree on the correctness of the state court's determination that counsel's performance was not deficient." *Id.* at *7. Regarding prejudice, the Court of Appeals held that the omitted testimony was double-edged, that much of the testimony was of doubtful admissibility, and that the aggravating evidence admitted at trial was overwhelming. *Id.* at *9.

Any failure of trial counsel to discover evidence of an abusive, alcoholic father was caused by Escamilla, his family and friends. Escamilla has not made the showing of unreasonableness required under § 2254(d) for relief on this claim. His first claim for relief is **DENIED**.

### B. Ineffective Assistance of Counsel: Conceding Guilt of Lesser Offense

- 17 -

In his second claim for relief, Escamilla asserts that trial counsel provided ineffective assistance for conceding his guilt of the lesser-included offense of murder without first obtaining his consent.  (Am. Pet. at 78-92.)  Specifically, Escamilla complains of trial counsel's closing argument in the guilt stage that he was guilty only of the lesser-included offense of murder because the victim was not "acting in the lawful discharge of an official duty" as required by Section 19.03(a)(1) of the Texas Penal Code that defines the capital murder of a police officer.  (Am. Pet. at 78; citing 37 RR 89-91.)  Escamilla's state habeas affidavit states that he was not informed that trial counsel intended to concede guilt to the lesser offense, he felt he acted in self-defense, and he would not have agreed to concede guilt if he had been asked.  (3 SHR 654.)  He also stated that he could not blurt out anything to interrupt Busbee during this argument because of the stun belt.  (3 SHR 654.)

### 1. State Court Findings

The state habeas court found that counsel did consult Escamilla about their strategy of conceding guilt for the lesser offense of murder.  (9 SHR at 2752.)  It found that Escamilla's assertions and evidence to the contrary lacked credibility.  (9 SHR at 2751-2754, 2756.)  It credited trial counsel's testimony that "they met with applicant throughout his trial and kept him informed of their plans, including the strategic decision to concede his guilt for murder," and that Escamilla "never objected to this strategy."[5]  (9 SHR at 2753.)  The state court found that Escamilla "showed no interest in this or any other strategic decision they made" and effectively "abdicated all responsibility for strategic decisions" to trial counsel.  (9 SHR at 2753-2754.)

---

[5]Escamilla relied upon a statement from one of his trial counsel that was corrected in a later affidavit. (3 SHR at 652; 9 SHR 2530-2531, 2752-2754.)

The state court also rejected Escamilla's claims he would have blurted out his objection to this strategy during Ms. Busbee's argument but for fear of being shocked by the stun belt he was forced to wear.  (3 SHR at 654.)  It found that the record and Escamilla's conduct during the trial showed the contrary: that Escamilla was informed that the stun belt would not prevent him from communicating with counsel, that he did not fear the stun belt, that it did not deter him from continual disruptions of the trial, and that despite his disruptive behavior it was not activated until some time after this argument ended.[6]  (9 SHR 2754-2755.)  The state court concluded that Escamilla knew of the strategy and had no objection to it.  (9 SHR at 2755-2756.)

The state court also found that trial counsel's strategy was reasonable based on the corroborated eyewitness testimony that Escamilla stood over Officer James--who was dressed in his uniform, wounded, and lying on the pavement--and shot him three times in the head.  (9 SHR at 2757.)  The state court found that, while this concession strategy was not without problems because of conflicting evidence, it posed fewer difficulties than the self-defense theory that lacked any of the required evidence that the officer exceeded the proper use of force.  (9 SHR at 2758-2759.)  The state court found that the only evidence suggesting self defense--Escamilla's interview with news reporter Bud Gillett--was inconsistent with the physical evidence and all eyewitness testimony admitted, including evidence "that Officer James and Officer Lockett never drew their weapons, much less fired a shot at [Escamilla]. Officer James's weapon was still snapped into his holster and it had been damaged by gun-fire, rendering it inoperable."  (9 SHR at 2759, citing 33 RR 101, 34 RR 133-134,

[6]The state court noted that "Deputy Silva did not activate the belt until the very end of trial when applicant grabbed the water pitcher at counsel table and started to throw it at the jury." (9 SHR at 2755 n.3, citing Silva Aff., 9 SHR 2544.)  This incident happened after the jury verdict on punishment was read. (9 SHR 2531.)

146-147, 157, 36 RR 36-43.)  The state court concluded that Escamilla had not shown prejudice, that trial counsel had no effective defense to guilt, that arguing self-defense would have harmed counsel's credibility with the jury for the punishment stage, and that "[u]nlike self-defense, at least the concession theory afforded the jury an alternative to a capital murder conviction that would not result in applicant's unfettered freedom."  (9 SHR at 2760.)

### 2.  Magistrate Judge's Findings and Recommendation

The Magistrate Judge found that the state habeas court's conclusions are not an unreasonable application of the *Strickland* standard.  (R. at 31.)  Comparing this case with *Florida v. Nixon*, 543 U.S. 175 (2004), the Magistrate Judge found that counsel fulfilled their duty to discuss this strategy with Escamilla, but that when he neither consented nor objected to the strategy, counsel were not automatically barred from pursuing it and were not ineffective under *Strickland*.  Based on the record and the circumstances of this case, the Magistrate Judge concluded that trial counsel's strategy to concede the lesser offense was reasonable, and that the proposed self-defense argument was not supported by the evidence.  (R. at 31-32.)

### 3.  Objections

Escamilla objects that the Recommendation (R. at 31-32) erred by isolating his ineffective assistance of counsel claim to the guilt-innocence phase of the case and that as a consequence of this narrow scope of review, the Recommendation did not address his argument "that by conceding guilt despite a legal anchor – the jury charge – from which to argue self-defense trial counsel sacrificed Escamilla's credibility and foreswore any contention of residual doubt."  (Obj. at 46-47, citing Am. Pet. at 84, 88, 91).  Escamilla also distinguishes his case from *Nixon* by arguing that trial counsel's

concession in the instant case was not made with a clear view towards punishment and a well-prepared punishment case.  (Obj. at 47.)

### 4. Analysis

This Court applies the same standard for review of ineffective-assistance-of-counsel claims as listed in Section A, Subsection 1, above.  Escamilla has not overcome the presumption of correctness afforded the state court findings.  The first affidavit of attorney Busbee, suggesting that Escamilla was not informed of the strategy to concede guilt to the lesser-included offense (3 SHR 652), is explained and clarified in her second affidavit.  (9 SHR 2530-2531.)  The state-court findings that trial counsel adequately communicated with Escamilla and that he knew about the proposed argument are supported by the second affidavit of attorney Busbee and the affidavit of attorney Wayne C. Huff, who testified that he remembered "telling [Escamilla] that, given the strength of the State's evidence of his guilt, there was no way to credibly deny that he wasn't guilty of anything."  (9 SHR 2524.)  These two affidavits also support the state court's findings that Escamilla did not object to the proposed strategy of conceding guilt to the lesser-included noncapital offense.  (9 SHR 2755-2756.)

Further, this Court does not review the state-court finding that self-defense requires evidence that the officer used excessive force.  (9 SHR 2759, citing TEX. PEN. CODE ANN. §§ 9.31 & 9.32 (Vernon 2003).)  This matter of state law has been determined adversely to Escamilla, and federal courts in post-conviction habeas proceedings do not sit to review questions of state law.  *See Engle v. Isaac*, 456 U.S. 107, 118-121 (1982), *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).  Since Escamilla has not identified any evidence in the record to show that the officer used excessive force, this defense was not available.

- 21 -

The failure to make a meritless argument is not ineffective assistance.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see also Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (determination by CCA that state-law complaint lacked merit precluded ineffective-assistance claim for failure to raise the complaint (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997)).  In light of these circumstances, including the evidence admitted at trial, the strategy of conceding the lesser-included offense was a reasonable one and support the trial court's conclusion that counsel's performance was not deficient.

Further, the state findings that Escamilla was not prejudiced are supported by the record. Escamilla's attempts to rely upon the presumption in *United States v. Cronic*, 466 U.S. 648 (1984), and distinguish *Nixon* are not convincing.  As in *Nixon*, Escamilla was tried for capital murder and defendant's trial counsel conceded the defendant's guilt to a lesser-included noncapital murder offense.  *See id.*, 543 U.S. at 178.  As in *Nixon*, Escamilla's trial was not a "truncated proceeding" as had been the case in *Brookhart v. Janis*, 384 U.S. 1, 6-7 (1966).  *See Nixon*, 543 U.S. at 188-189. As in *Nixon*, Escamilla was not particularly cooperative with counsel or the court and effectively abandoned matters of trial strategy to counsel.  *See id.*, 543 U.S. at 189.  Therefore, Escamilla is not entitled to rely upon the presumption in *Cronic*, and has not shown prejudice under *Strickland*.  In light of the overwhelming evidence of guilt, and the complete absence of evidence that Officer James used excessive force, Escamilla has not shown that a self-defense argument in the guilt stage would have fared any better than the one that was used.  Since a self-defense claim was not available under state law, this Court may not find prejudice for failing to make the unavailable argument.  *See Paredes*, 574 F.3d at 291 (citing *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999)).

- 22 -

Escamilla has proven neither prong of *Strickland* on this claim, much less that the state-court adjudication was unreasonable.  Therefore, his second claim for relief is **DENIED**.

### C. Ineffective Assistance of Counsel: Preventing Testimony

In his third claim for relief, Escamilla asserts that trial counsel provided ineffective assistance by preventing him from testifying at the pretrial suppression hearing regarding the admissibility of his videotaped interview with local television reporter Bud Gillett.   (Am. Pet. at 92-105.) Specifically, Escamilla claims that he would have testified that one of the detention officers at the Dallas County jail told him that it would be good for him to speak to the reporter.

#### 1. State Court Findings

The state habeas court found that counsel did not deny Escamilla the opportunity to present his  testimony about the detention officer's purported statement, and that Escamilla never disclosed such a statement to trial counsel, who had directly asked Escamilla why he gave the interview.  (9 SHR at 2745.) The state court found that trial counsel would have investigated such evidence if they knew about it.  (9 SHR at 2745).  The state court observed that counsel fought vigorously to exclude the interview through filing the pretrial motion, presenting several witnesses at the hearing, and arguing multiple grounds to exclude the evidence.  (9 SHR at 2745-2746.)  The state court found it unlikely that trial counsel would have ignored the evidence or not have advised him of his right to testify in the pretrial hearing, but would have given him the opportunity to testify.   (9 SHR at 2745-2746.)   The state court concluded that Escamilla did not prove a deficiency in counsel's representation (9 SHR at 2745, 2751), or any resulting prejudice.  (9 SHR at 2747-2751.)  The state court listed alternate reasons to support the admission of the interview and the continued lack of proof to warrant its exclusion.  (9 SHR at 2748-2749.)  The state court also set forth the limited use

of the interview at trial, the weight of evidence that otherwise existed against Escamilla, and the ways that Escamilla also used the interview to support his claim of self defense. (9 SHR at 2749-2751.)

### 2. Magistrate Judge's Findings and Recommendation

The Magistrate Judge found that the record supports the state court's finding that Escamilla never informed his attorneys of this statement and that, therefore, his attorneys were not ineffective in failing to have him testify at the hearing. (R. at 27.) The Magistrate Judge also found that no prejudice had been shown because of the amount of other evidence in the record that Escamilla had shot and killed the victim, and knew the victim was a police officer. (R. 27-28.) Therefore, there was no reasonable probability that Escamilla would not have been convicted had the videotape been excluded from evidence. (R. at 28.) The Magistrate Judge concluded that Escamilla had not overcome the presumption of correctness that attached to the state court findings, had failed to prove either prong of the *Strickland* standard, and that the state-court decision was not a result of an unreasonable determination of the facts or an unreasonable application of the *Strickland* standard. (R. at 27-28.)

### 3. Objections

Escamilla objects that the Recommendation erred in relying on evidence that was contradicted in state court and not tested by a live, evidentiary hearing. (Obj. at 48.) Escamilla also objects that these findings are premised upon the conclusion that there was no reasonable probability that exclusion of the video would have prevented Escamilla's conviction because the state court viewed the interview as part and parcel of the state's case and the prosecutor stressed the interview in its closing at both phases of trial. (Obj. at 48-49; citing Am. Pet. at 103, 104.)

- 24 -

### 4. Analysis

Escamilla complains that the state-court findings were made without a live hearing, but there is no requirement that a full and fair hearing be conducted before AEDPA deference applies to such factual findings. *See Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir.2001). "[U]nless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." *Id.*

Escamilla has not overcome the presumption of correctness afforded the state-court findings, including the finding that Escamilla did not disclose the information despite counsel's questions. (9 SHR 2745.)  Counsel is not ineffective for failing to discover evidence that the defendant withholds and, thereby, blocks from use. *See Lackey*, 116 F.3d at 152; *Sonnier*, 476 F.3d at 362. Further, Escamilla has not shown how this statement renders his media interview inadmissible. The state court findings that his testimony would not have prevented the admission of this evidence and would not have altered the outcome of the trial (9 SHR 2747-2751) have not been proven incorrect. Escamilla has satisfied neither of the two prongs of *Strickland*. Therefore, his third claim for relief lacks merit and is **DENIED**.

### D. Fair Cross-Section

In his fourth claim, Escamilla asserts that he was denied his Sixth and Fourteenth Amendment rights to a jury drawn from a fair cross-section of the community. (Am. Pet. at 105-109.) In his fifth claim, Escamilla complains that he was denied the effective assistance of counsel because trial counsel failed to object to the venire on the ground asserted in his fourth claim.

The Magistrate Judge found that the fourth claim was procedurally barred (R. at 13-14), but also addressed it on the merits "out of an abundance of caution" (R. at 14), and found that it lacked

merit (R. at 14-17).  Rejecting the fifth claim, the Magistrate Judge also found that counsel were not

ineffective for failing to make a meritless objection.  (R. at 24, citing *Clark v. Collins*, 19 F.3d at

966).  Escamilla's objections do not address this portion of the Recommendation, but even if they

did, this portion of the Recommendation is proper.[7]

Escamilla claims that Dallas County's method of convening venires results in a systematic

exclusion of Hispanics.  (Am. Pet. at 105-106.)  In support of his claim, Escamilla relies upon a

study reported in the Dallas Morning News and the SMU Law Review and upon the expert testimony

of Dr. Harold Hietala, Ph.D.  (Am. Pet. at 106-108.)  Subsequent decisions confirm that the analysis

of the fair-cross-section claim in the Recommendation is correct.

In *Berghuis v. Smith*, ___ U.S. ____, 130 S.Ct. 1382, 1395-1396 (2010), the Supreme Court

held that it has never clearly established that features of the venire-selection process similar to those

described in Dr. Hiatala's affidavit and the Dallas Morning News could give rise to a

fair-cross-section claim.  Specifically, the Supreme Court has never clearly decided whether the

impact of social and economic factors such as those raised by Escamilla could support a

fair-cross-section claim necessary for federal habeas relief under AEDPA.  *Id.,* at 1395 n.6.  Further,

Escamilla's claim is virtually identical to a claim found meritless in *Rivas v. Thaler*, 432 Fed. Appx.

395, 402-403 (5th Cir. 2011) (unpublished).

Escamilla's fourth claim (fair-cross-section) lacks merit.  Therefore, his fifth claim

(ineffective-assistance-of-counsel) relies on a meritless claim.  This Circuit continues to adhere to

the rule that "the failure to 'raise meritless objections is not ineffective lawyering.'"  *Halley v.*

---

[7]Due to the lack of objection, this portion of the Recommendation is reviewed in the alternative.  *See Douglass*, 79 F.3d at 1420, 1428-29.

*Thaler*, 448 Fed.Appx. 518, 524 (5th Cir. 2011) (citing *Clark*, 19 F.3d at 966).  Escamilla's fourth and fifth claims are **DENIED**.

### E.  Execution Protocol

In his sixth claim, Escamilla asserts that the use of a three-drug execution protocol administered by non-medical personnel violates his right to be free from cruel and unusual punishment.  (Am. Pet. at 111-128.)  The Magistrate Judge found that this claim was not cognizable in a habeas proceeding brought under § 2254 because claims challenging the method of execution do not concern the fact or duration of a sentence and cannot be raised in a habeas proceeding.  (R. at 57, citing *Hill v. McDonough*, 547 U.S. 573 (2006), and *Rachal v Quartermann*, 265 Fed. Appx. 371 (5th Cir. Feb. 14, 2008).)  Therefore, the Recommendation recommends that this ground for relief be dismissed without prejudice so that Escamilla may raise it in a § 1983 action.  Escamilla's objections do not address this portion of the Recommendation, but even if they did, this portion of the Recommendation is proper.[8]

The Magistrate Judge's analysis is correct.  *See also United States v. Bourgeois*, Civ. A. No. C–07–223, 2011 WL 1930684 at *110 (S.D.Tex., May 19, 2011) (similar treatment of identical claim).  The Court finds that this claim is premature and noncognizable.  Therefore, Escamilla's sixth claim is **DISMISSED WITHOUT PREJUDICE** to the refiling of same in an action brought under 42 U.S.C. § 1983.

### F.  Jury Instructions

---

[8]Due to the lack of objection, this portion of the Recommendation is reviewed in the alternative. *See Douglass*, 79 F.3d at 1420, 1428-29.

In his seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth claims, Escamilla asserts complaints related to the jury instructions in the punishment stage of his trial.

### 1. Punishment-Issue Claims

In his seventh claim, Escamilla complains that the statutory definition of mitigation included in the jury instructions was unconstitutionally narrow. (Am. Pet. at 128-141; Obj. to proc. bar at 49-50, and Obj. to merits at 50-53.) In his ninth claim, Escamilla complains that the term "probability" used in the first special issue diluted the reasonable doubt standard and shifted the burden of proof to Escamilla in derogation of due process. (Am. Pet. at 145-152; Obj. to proc. bar at 53-54, and Obj. to merits at 54-58.) In his eleventh claim, Escamilla complains that Texas's 10-12 Rule (also referred to as the 12/10 Rule), that fails to inform jurors of the consequences of an 11-1 finding regarding future dangerousness, violates his rights to due process and to be free from cruel and unusual punishment. (Am. Pet. at 155-171; Obj. at 58-62.) In his twelfth claim, Escamilla complains that the punishment instructions were unconstitutional because they failed to require the state to prove beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant imposition of a life sentence. (Am. Pet. at 172-177; Obj. at 62-63.) In his thirteenth claim, Escamilla complains that the mitigation issue sent mixed signals in contravention of the Constitution as interpreted by *Penry v. Johnson*, 532 U.S. 782 (2001) (*Penry II*), and *Smith v. Texas*, 543 U.S. 37 (2004). (Am. Pet. at 177-179; Obj. at 63-67.)

### 2. Ineffective Assistance of Counsel Claims

Escamilla's eighth and tenth claims are ineffective-assistance-of-counsel claims related to these jury-instruction complaints. In his eighth claim, Escamilla claims that his appellate counsel provided ineffective assistance of counsel for failing to raise the complaint made the basis of his

seventh claim.  (Am. Pet. at 141-145; Obj. at 53).  In his tenth claim, Escamilla claims that his appellate counsel provided ineffective assistance of counsel for failing to raise the complaint made the basis of his ninth claim.  (Am. Pet. at 152-154; Obj. at 58).

### 3. *Magistrate Judge's Recommendation*

The Magistrate Judge found that each of these claims lacked merit.  Regarding the seventh claim, the Recommendation observed that neither Supreme Court nor Fifth Circuit case law supports Escamilla's contention, and further that the United States Court of Appeals for the Fifth Circuit upheld this definition as not unconstitutionally limiting or precluding the consideration of any mitigating factor.  (R. at 20, citing *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001), and *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).)  Regarding Escamilla's eighth claim (ineffective assistance of counsel), the Magistrate Judge found that it relied upon the seventh claim which lacked merit, and the failure of counsel to raise a meritless claim was not ineffective assistance.  (R. at 52.)

Regarding Escamilla's ninth claim, the Recommendation observed that the United States Court of Appeals for the Fifth Circuit has consistently held that the terms used in the Texas future-dangerousness special issue, including the term "probability," are not unconstitutionally vague and can instead be understood in their common meaning.  (R. at 18, citing *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996), *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir. 1993), and *Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir 1984).)  "It has also found that nothing in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] and *Ring* [*v. Arizona*, 536 U.S. 584 (2002)] or *Blakely v. Washington*, 124 S.Ct. 2531, 2537 (2004), even requires that the future dangerousness special issue be subjected to a reasonable doubt burden of proof."  (R. at 18, citing *Rowell v. Dretke*, 398 F.3d 370, 379 (5th Cir. 2005).)  It also found that Escamilla's argument relies upon what would

be a new rule of criminal procedure barred by *Teague v. Lane*, 489 U.S. 288 (1989).  (R. at 18-19.)
Similarly, the Magistrate Judge observed that Escamilla's tenth claim (ineffective assistance of
counsel) relied on the ninth claim which lacked merit, and it was not ineffective assistance for
counsel to fail to raise a meritless claim.  (R. at 52-53.)

Regarding Escamilla's eleventh claim, the Recommendation observed that the United States
Court of Appeals for the Fifth Circuit has rejected the argument that the "12-10 rule" in Texas
violated a capital murder defendant's rights under the Eighth and Fourteenth Amendments.  (R. at
22, citing *Alexander v. Johnson*, 211 F.3d 895, 897 n. 5 (5th Cir. 2000).)  "It has also consistently
held that any ruling that the '12-10 rule' violated the federal Constitution would be a new
constitutional rule of criminal procedure as defined in *Teague v. Lane*, and therefore could not form
the basis for federal habeas-corpus relief."  (R. at 22, citing *Hughes v. Dretke*, 412 F.3d 582 (5th Cir.
2005), *Alexander*, 211 F.3d at 897, *Davis v. Scott*, 51 F.3d 457, 467 (5th Cir. 1995), and *Webb v.
Collins*, 2 F.3d 93 (5th Cir. 1993).)

Regarding Escamilla's twelfth claim, the Recommendation observed that this identical
argument based on *Ring* and *Apprendi* has also been rejected in this Circuit. There is no
constitutional requirement that Texas's mitigation issue be assigned a burden of proof (R. at 53,
citing *Rowell*, 398 F.3d at 378), and a petitioner's Sixth Amendment rights are not violated when
state law does not require the prosecution to prove the absence of mitigating factors beyond a
reasonable doubt.  (R. at 53, citing *Grandos v. Quarterman*, 455 F.3d 529, 536-37 (5th Cir. 2006).)

Regarding Escamilla's thirteenth claim, the Magistrate Judge determined that the mitigation
special issue in this case did not present the same nullification concerns as in *Penry II* or *Smith*, and

- 30 -

that the Supreme Court noted with approval the new mitigation special issue in *Penry II* that was submitted to the jury in Escamilla's trial. (R. at 54-55, citing *Penry II*, 532 U.S. at 803.)

### 4. Objections

Escamilla objects to the Magistrate Judge's findings that he failed to raise the claim made in his thirteenth ground for federal habeas relief in his direct state appeal, and that when he raised it on state habeas review the state court found it procedurally barred. (Obj. at 49-50, citing R. at 13-14, 19 n.7.) Escamilla claims that he raised the claim made in his thirteenth ground as his seventeenth point of error in his direct appeal, and that similar claims were raised in four other appeal points. (Obj. at 49, citing *Escamilla v. State*, 143 S.W.3d at 828.) Escamilla further objects to the denial of this claim in reliance on *Beazley v. Johnson*, 242 F.3d at 260, and presents arguments to distinguish *Beazley*. (Obj. at 50-53, citing R. at 20.) Escamilla also objects to the Magistrate Judge's finding on his fourteenth ground for relief that his appellate counsel was not ineffective for failing to present in his direct appeal the claim made the basis of his thirteenth ground for relief, and incorporates the arguments in support of his thirteenth ground for relief. (Obj. at 53, citing R. at 19, 52.)

Escamilla objects to the Magistrate Judge's finding that the claim made in his ninth ground for federal habeas relief was not raised in his direct state appeal, and that when he raised it on state habeas review the state court found it procedurally barred. (Obj. at 53-54, citing R. at 13-14, 17 n.6.) Escamilla claims that he raised the claim made in his ninth ground as his twenty-second point of error in his direct appeal, because that issue also "related to the term 'probability.'" (Obj. at 54, citing *Escamilla v. State*, 143 S.W.3d at 828.) Escamilla further objects to the denial of this claim in reliance on *Jurek v. Texas*, 428 U.S. 262 (1976), and *Rowell v. Dretke*, 398 F.3d at 379. Escamilla

concedes that his argument is foreclosed by circuit precedent, but he maintains it to preserve the issue for further review. (Obj. at 56, citing R. at 18.) Escamilla also objects to the Magistrate Judge's finding on his tenth ground for relief (ineffective assistance of counsel) that his appellate counsel was not ineffective for failing to present the claim made the basis of his ninth ground for relief in his direct appeal, by incorporating the arguments in support of his ninth ground for relief. (Obj. at 53, citing R. at 19, 52.)

Escamilla objects to the Magistrate Judge's finding that his eleventh claim lacks merit by reasserting arguments in support of this claim, although acknowledging that the Recommendation was based upon the prevailing case authority. (Obj. at 59, citing R. at 21-22, *Jones v. United States*, 527 U.S. 373, 381 (1999), and *Alexander v. Johnson*, 211 F.3d at 897 n.5.)

Escamilla objects to the Magistrate Judge's finding that his twelfth claim lacks merit by reasserting arguments in support of this claim, although he concedes that "this argument is squarely foreclosed by circuit precedent and he maintains it only to preserve the issue for further review." (Obj. at 63, citing R. at 53, *Rowell v. Dretke*¸ 398 F.3d at 378, and *Granados v. Quarterman*, 455 F.3d at 536-37.)

Escamilla objects to the Magistrate Judge's finding that his thirteenth claim lacks merit by reasserting arguments in support of this claim. (Obj. at 63-64, citing R. at 54-55.)

### 5. *Analysis*

On *de novo* review of each of these claims, the Court finds that the Magistrate Judge properly applied controlling authority on each of these claims and that habeas relief is foreclosed by Circuit precedent. Therefore, Escamilla's seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth claims are all **DENIED**.

### G.  Ineffective Assistance of Counsel: Failure to Challenge Individual Juror

In his fourteenth claim, Escamilla asserts that his trial counsel provided ineffective assistance by failing to adequately challenge a juror who could not properly apply the "doctrine of mitigation." (Am. Pet. at 179-183.)  This claim relies upon the assumption that the prospective juror would have been excluded on a challenge for cause.  Escamilla claims that the twelfth juror should have been excluded because she erroneously believed that mitigation only applied to self-defense or accident (Am. Pet. at 179, 182), and that but for trial counsel's failure to preserve this error through a challenge for cause, the CCA would have found on direct appeal that it was error to not excuse this juror.  (Am. Pet. at 180-181.)   Respondent contends that this claim is unexhausted and now procedurally barred.  (Ans. at 67.)

#### 1.  Magistrate Judge's Recommendation

The Magistrate Judge found that the state court analyzed this juror's voir dire testimony in a footnote and determined that the denial of a challenge for cause would not have been a meritorious point on appeal.  (R. at 25, citing *Escamilla*, 143 S.W.3d at 822, n.1, *Green v. State*, 934 S.W.2d 92, 105, n. 6 (Tex. Crim. App. 1996) and *Robertson v. State*, 871 S.W.2d 701, 712 (Tex. Crim. App. 1993).)  After observing that the unexhausted ineffective-assistance-of-counsel claim may be denied on the merits (R. at 24 n.8, citing 28 U.S.C. § 2254(b)(2) and *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998)), the Magistrate Judge concluded that "the state court's denial of this ground is not contrary to clearly established federal law" (R. at 25), because the juror's views on mitigation would not prevent or substantially impair the performance of her duties as a juror.  (R. at 25-26, citing

*Wainwright v. Witt*, 469 U.S. 412, 424 (1985).)  Escamilla has not made an objection to this conclusion.[9]

### 2.  Exhaustion and Procedural Bar

The Court finds that this ineffective-assistance-of-counsel claim was not presented to the state court, and is therefore unexhausted and may not be granted.  *See* 28 U.S.C. § 2254(b)(1); *Beazley v. Johnson*, 242 F.3d at 263.   Generally, a petition containing both exhausted and unexhausted claims must be dismissed or stayed so that the petitioner may return to state court to exhaust state remedies.  *See Rhines v. Weber*, 544 U.S. 269, 277-278 (2005); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982).  However, such action would be futile and the federal court should find claims to be procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Coleman v. Thompson*, 501 U.S. at 735 n.1; *see also, Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir. 2005) (holding unexhausted claims ineligible for stay when state court would find them procedurally barred).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (West 2011).  This is a codification of the judicially created Texas abuse-of-the-writ doctrine.  *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational

---

[9]Due to the lack of objection, this portion of the Recommendation is reviewed in the alternative. *See Douglass*, 79 F.3d at 1420, 1428-29.

juror would have found for the State. *Id.* Therefore, such unexhausted claims would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley*, 242 F.3d at 264. "These exceptions allow for federal habeas review if a petitioner can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Cantu v. Thaler*, 632 F.3d 157, 166 (5th Cir. 2011) (quoting *Coleman*, 501 U.S. at 750).

On March 20, 2012, the Supreme Court in *Martinez v. Ryan*, 566 U.S. ___, 2012 WL 912950, modified the rule in *Coleman* to expanded the "cause" that may excuse a procedural default,

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

2012 WL 912950 at *11. Assuming that the state habeas proceeding was the first opportunity for Escamilla to have raised this claim, and that under Texas law he would have been required to raise such claims of ineffective assistance of counsel in those state habeas proceedings, this exception would still not excuse his procedural default. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 2012 WL 912950 at *8. As shown in the alternative merits analysis below, this claim lacks any merit. Therefore, Escamilla has not shown that he can satisfy an exception to the bar.

The Court finds that Escamilla's fourteenth claim is unexhausted and procedurally barred.

### 3. Alternative Merits Analysis

In the alternative, the Court finds that, for many of the same reasons provided by the Magistrate Judge, this claim lacks merit. *See* 28 U.S.C. § 2254(b)(2). However, the portion of the Recommendation stating that "[t]he state court's denial of this ground is not contrary to clearly established federal law" is not adopted. (R. at 25) That language suggests that this claim was analyzed under § 2254(d). Since the ineffective-assistance-of-counsel claim was never actually presented to the state court, a review of this claim must be *de novo*, without AEDPA deference, but subject to the limitations of § 2254(e)(2) on factual development. *See Porter v. McCollum*, ___ U.S. ____, 130 S.Ct. 447, 452 (2009) (deficiency prong analyzed *de novo* because state court did not decide this element of *Strickland*); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003); *Crutsinger v. Thaler*, No. 4:07-CV-703-Y, 2012 WL 369927 at *4 (N. D. Tex., Feb. 6, 2012) (Means, J.).

The Magistrate Judge set forth the proper standard for determining whether a venire member may be excluded for cause as whether the prospective juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." (R. at 25, quoting *Wainwright*, 469 U.S. at 424.) The Recommendation also properly stated that a sentencing juror must be allowed to consider any aspect of a defendant's character or background as a mitigating factor, but that a defendant in a capital case is not entitled to challenge prospective jurors for cause simply because they might view the evidence the defendant offers in mitigation of a death sentence as aggravating rather than mitigating. (R. at 25, citing *Soria v. Johnson*, 207 F.3d 232, 244 (5th Cir. 2000)); *see also, Dorsey v. Quarterman*, 494 F.3d 527, 533 (5th Cir. 2007) (same).

The Magistrate Judge correctly observed that the prospective juror did not refuse to apply the mitigation instruction, and would not have been subject to a valid challenge for cause. (R. at 25-26.) However, that portion of the Recommendation suggesting that the juror stated a reluctance to view certain evidence as mitigating is not adopted. (R. at 25.) The trial record does not reveal what evidence the prospective juror would not view as mitigating.[10] Not only does the record not reflect that the prospective juror had a restricted view of mitigating evidence, it suggests that she had a view favorable to Escamilla's defense. Although no burden of proof is assigned to the mitigation issue, the juror agreed with the prosecution that the State always had the burden of proof, and that she would not require the defense attorneys to do anything, not even to produce mitigating evidence.[11] (26 RR at 36-37.) And although Escamilla's claim of self defense did not conform to Texas law

---

[10]The prospective juror repeatedly stated not only that she would be able to consider all of the evidence, keep an open mind, and make a decision based on the evidence and the instructions (25 RR at 21, 22, 28, 33, 38), but specifically that she would keep an open mind to whatever evidence might warrant a life sentence rather than a death penalty. (26 RR 29, 32, 49.) After the prosecutor listed a number of potentially mitigating factors, such as the circumstances of the offense, the defendant's birth, upbringing and environment, and specifically asked if the juror would consider the defendant's character and background, she agreed "I was just going to say that, that's the reason that you have the trial is so that all of this information can be brought out," and "there might be a lot of stuff that comes forward that we don't know." (26 RR at 30-31.)

[11]After explaining that "the State always has the burden of proof" (26 RR at 36), the prosecutor questioned the prospective juror as follows:

Q.     Like I said, they are really good lawyers, but, you know, they don't have to do anything. The Jury can't require them to do anything. You might expect it, but you can't require them to do it. You can't require them to disprove that he is going to be violent in the future, you can't ask them to prove to you, you know, *you can't require them to prove to you that there is mitigating evidence*. You just have to, because they have got the presumption of innocence on their side. Okay?

A.     Okay.

(26 RR at 37) (emphasis added). The juror apparently remembered this exchange later when asked by defense counsel whether she would "need to hear something from us over here" to find that Escamilla was not a future danger. (26 RR at 46-47.)

because he did not have proof that the police officer used excessive force, evidence that Escamilla "may have been in fear for [his] own life" was the first type of evidence this juror listed as capable of convincing her that she should not assess a death penalty.[12] (26 RR at 48.)  This juror's inability to come up with more examples of mitigating evidence may have originated in the limiting nature of the attorney's examination rather than any restricted view on the part of the prospective juror.[13]

The prospective juror did not express a reluctance to view certain evidence as mitigating, but even if she had, that would not have subjected her to a valid challenge for cause.  The failure of counsel to make a meritless challenge does not constitute ineffective assistance.[14] *See Clark*, 19 F.3d at 966; (R. at 26).

Escamilla's fourteenth claim is **DENIED** as unexhausted and procedurally barred.  In the alternative, it is **DENIED** for lack of merit.

### H.  *Unfettered Jury Discretion*

In his fifteenth and final claim, Escamilla asserts that the Texas death penalty statute permits the open-ended jury discretion condemned by the Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302

---

[12]The prospective juror said this after stating that it made sense to her that the jury should be able to give a life sentence even after finding someone to be guilty and a dangerous killer.  It was the attorney, not the prospective juror, that introduced the term "self defense" and limited it to the first phase of the trial. (26 RR 48.)  The prospective juror offered another example that some kind of accident or factor affecting the defendant's perception or intent could also convince her to not assess a death penalty.  (26 RR at 48.)

[13]After the attorney dismissed the prospective juror's first two ideas as "having been determined in the first part" of the trial, the attorney explained that what the juror would be "considering there is the circumstance of the offense or the Defendant's character or moral culpability, which is moral guilt, I suppose."  (26 RR at 48-49.)  This appears more restricted than the juror's understanding of mitigation. Although the juror did not offer another example, she affirmed that she was open to any evidence showing that she should not give the death penalty.  (26 RR at 49.)

[14]Trial counsel may have had other strategic reasons for expressing dissatisfaction with this juror, such as that this prospective juror had previously worked for the City of Dallas as a police dispatcher, that jury selection was nearing its end, and the defense had run out of peremptory strikes.  (26 RR at 51-52.)

(1989), *Penry II*, and *Furman v. Georgia*, 408 U.S. 238 (1972). (Am. Pet. at 183-186.) The Magistrate Judge observed that the United States Court of Appeals for the Fifth Circuit has held an identical claim to be without merit, and that it would rely on a new constitutional rule of criminal procedure barred by the nonretroactivity doctrine of *Teague*. (R. at 56, citing *Hughes v. Dretke*, 412 F.3d at 593-94.) Escamilla's objections do not address this portion of the Recommendation, but even if they did, this portion of the Recommendation is correct.[15]

The Magistrate Judge applied the proper AEDPA standard of review to this claim and the controlling authority. (R. at 55-56.) Relief on this claim remains foreclosed by Circuit precedent. *See Adams v. Thaler*, 421 Fed.Appx. 322, 337 (5th Cir. 2011); *Hughes*, 412 F.3d at 593-94. Escamilla's fifteenth claim is **DENIED**.

## V. CONCLUSION

Escamilla's sixth claim is **DISMISSED WITHOUT PREJUDICE** to the refiling of same in an action brought under 42 U.S.C. § 1983, and the remaining claims are all **DENIED**. The petition for writ of habeas corpus is **DENIED**.

Considering the record in this case and pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court **ACCEPTS and INCORPORATES by reference** the Magistrate Judge's Findings, Conclusions and Recommendation filed in this case in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional

---

[15]Due to the lack of objection, this portion of the Recommendation is reviewed in the alternative. *See Douglass*, 79 F.3d at 1420, 1428-29.

claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the event, the petitioner will file a notice of appeal, the court notes that the petitioner will need to pay the $455.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

**SO ORDERED.**

**SIGNED this 26th day of March, 2012.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**