IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LICHO ESCAMILLA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | No: 3:06-CV-2248-O (BH) |
| | § | |
| RICK THALER, Director TDCJ | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

**PETITIONER'S REPLY TO RESPONDENT THALER'S RESPONSE
REGARDING MOTION FOR NEW TRIAL WITH BRIEF IN SUPPORT**

Comes now Petitioner, Licho Escamilla, by and through his counsel of record and respectfully submits this his Reply to Respondent Thaler's Response in Opposition to Petitioner's Motion for New Trial. For the reasons that follow, Petitioner reiterates his request for Oral Argument and challenges the legal and practical accuracy of Respondent Thaler's Response.

I.      Request for Oral Argument

Petitioner reasserts his request for Oral Argument on his Motion for New Trial. Respondent inaccurately suggests that "the *Martinez* opinion is not particularly complicated" and that Petitioner has "not demonstrated any reason that the parties' briefing cannot advise the Court of their respective positions and supporting law, and none exists." *Respondent Thaler's Response*, at 15.

Because Respondent misrepresents that actual law and practice in Texas regarding the ability of death penalty convicts to raise the issue of ineffective assistance of counsel through a Motion for New Trial or on Direct Appeal, Petitioner reiterates his request for Oral Argument.

1

Petitioner is prepared to present several Board Certified Criminal Defense Attorneys to prove that the law and practice in Texas is remarkably similar to that addressed in *Martinez v. Ryan*. If this Court is inclined to address *Martinez* and its application to his case, Petitioner respectfully requests a full opportunity to present live witnesses that can be cross-examined on the issue.

Respondent's crabbed reading of *Martinez* is based on either a misunderstanding or a misstatement of the actual practice in Texas courts regarding ineffective assistance of counsel claims. *See Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Petitioner seeks oral argument to present evidence of this practice, particularly as it relates to Texas death penalty litigants challenging trial counsel's duty to investigate and present mitigating evidence. The Respondent's constrained reading of *Martinez* is only defensible if one ignores the actual law and practice in Texas courts that non-record errors are inappropriate for appellate review. *See Thompson v. Texas*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999). In fact, the statutory mandate in *Martinez* is nearly identical to the actual practice in Texas.

Notably, Respondent fails to present any evidence regarding the applicable practice in Texas death penalty cases. Instead, Respondent's citations include a possession of marijuana case, *see Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993)(merely stating, in the abstract, that "ineffective assistance of counsel *may* be raised in a motion for new trial") and an aggravated sexual assault of a child case. *See Lopez v. State*, 343 S.W3d 137 (Tex. Crim. App. 2011). The citation to *Reyes*, and the statement relied upon in Thaler's Response, is incomplete and contrary to the actual practice in Texas death penalty cases.

The same shortcoming applies to Respondent's citation to *Lopez v. State*, an "e.g." citation proffered by Respondent. *See Respondent Thaler's Response*, at 9, *citing Lopez v. State*, 343 S.W3d 137, 142-44 (Tex. Crim. App. 2011). Much like *Reyes*, *Lopez* is not a death penalty

case. In neither *Reyes* nor *Lopez* would the transcripts include individual voir dire of the venire or the commonly extensive transcripts in Texas death penalty cases that often span 40 to 50 volumes. Such cases do not involve the potential loss of life as a penalty or the extensive duty to investigate all potential mitigating evidence.

More importantly, *Lopez* actually supports Petitioner's assertion that his only real, viable opportunity to present his ineffective assistance of counsel claims in Texas occurs during the state writ process. *Lopez*, 343 S.W.3d at 143. Inexplicably, Respondent wholly failed to point this Court to the governing language revealing the applicable Texas law that is clearly stated in *Lopez*:

> In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. . . .
>
> *This Court [the Texas Court of Criminal Appeals] has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. On direct appeal, the record is usually inadequately developed* and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation.

*Id.* (emphasis added).

Respondent fails to cite even a single Texas death penalty case where ineffective assistance of counsel has successfully been raised by a Petitioner in a Motion for New Trial or on direct appeal. Petitioner has several witnesses that will testify directly to this issue – why neither a Motion for New Trial nor direct appeal are available options for asserting ineffective assistance of counsel claims in Texas death penalty situations, particularly where the issue is whether counsel complied with the duty to investigate mitigating evidence. Petitioner's witnesses can testify to the similarities between the Texas system and the Arizona system. Respondent's citations to *Reyes* and *Lopez* misrepresents the actual law and practice in Texas and only

underscores Petitioner's need to present admissible testimony regarding the actual practice in Texas death penalty cases and, thus, the applicability of *Martinez v. Ryan.*

    II.       Misrepresentation of Existing Law and Practice

With all due respect, Respondent's characterization of the existing law and practice in Texas regarding the presentation options for ineffective assistance of counsel claims is, at best, inaccurate. While Respondent cites two cases whose literal language suggests that ineffective assistance of counsel claims can, at least theoretically, be raised either in a Motion for New Trial (within 30 days of verdict) or on direct appeal, the actual law and practice in Texas death penalty cases negates these citations. *See Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

The governing standard in Texas, even in ordinary cases, remains that set forth in *Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997):

> Generally, a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus. However, this doctrine should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding. In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. Moreover, the trial record ordinarily does not reflect counsel's reasons for doing or failing to actions of which the defendant complains. While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely is trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

*Id.*

Remarkably, Respondent cites no authority that reveals the general state of the law in Texas as indicated by *Torres* and its progeny. The *Torres* language is repeated in numerous cases authored by the Texas Court of Criminal Appeals. Yet, Respondent fails to cite a single one of these cases or make reference to the *Torres* opinion. *See Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999)(A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel"); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of a such a serious allegation: 'in the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel).

III.   Applicability of *Martinez v. Ryan*

Despite Respondent's protestations that *Martinez v. Ryan* is inapplicable in this case, Petitioner's situation is precisely the scenario covered under *Martinez v. Ryan*. 566 U.S. ____ (2012). In all practicality, the first and only option for a Texas death penalty convict to assert claims of ineffective assistance of trial counsel, and specifically challenging his or her duty to

investigate, is through the state writ process. *Anton Affidavit* (March 9, 2012). *See also Ex Parte Torres*, 943 S.W.2d 469, 475 (reminding that "in most ineffective assistance of counsel claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims"); *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Since most Texas death penalty cases have extensive transcripts, including voir dire, often going into 40 to 50 volumes, there is no possible way that a transcript will be available during the 30 day period for New Trial. *Anton Affidavit*, 2. *See also Torres*, 943 S.W2d at 475 ("While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not be transcribed at this point"). Likewise, since matters of strategy can never be resolved from the trial transcript standing alone, there is no legitimate way to present these claims prior to a thorough investigation of the record and evaluation of trial counsel's conduct. *Id.* (explaining that "the trial record ordinarily does not does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains"); *see also Mitchell v. State*, 68 S.W3d 640, 642 (Tex. Crim. App. 2002)(reminding that "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record"). This reality likewise negates Petitioner's option to present his ineffective assistance of counsel claims via direct appeal. *Id.* (noting "the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims").[1]

---

[1] The two instances where habeas counsel located capital cases with ineffective assistance claims asserted on direct appeal do not undercut Petitioner's argument. *See Tong v. State*, 25 S.W.3d 707, 714 n. 10 (Tex. Crim. App. 2000)(explaining that "[b]ecause a record focused on the conduct of trial counsel is not typically developed at trial, it is often difficult to review an effective assistance of counsel claim on direct appeal. Hence, these claims are usually better raised in an post-conviction application for a writ of habeas corpus. In such an instance, prior rejection of the claim on direct appeal will not bar relitigation of the claim to the extent that an applicant gathers and introduces evidence not contained in the direct appeal record."); *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)(reminding that "rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation [as ineffective assistance of counsel]: 'in the majority

Petitioner asserts, similar to *Martinez*, that "[Texas] law, however, did not permit [Petitioner] to argue on direct appeal that trial counsel was ineffective. . . . "[Texas] laws instead [for all practical purposes] requires claims of ineffective assistance at trial to be reserved for state collateral proceedings." *Martinez*, 566 U.S. at 8.[2] The *Martinez* Court continues:

> Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim. . . .
>
> Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. . . .
>
> While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the record.

*Id.* (internal citations omitted). Texas, for the very reasons noted by the Supreme Court in *Martinez*, rarely allows resolution of a claim for ineffective assistance of counsel in a Motion for New Trial or on direct appeal. The undeniable preference, if not policy, of Texas courts is to reserve claims of ineffective assistance of counsel for state habeas review. *See Anton Affidavit.*

In language nearly identical to that used by the Texas Court of Criminal Appeals in *Torres*, the *Martinez* majority explained:

> Ineffective assistance claims often depend on evidence outside the trial record. Direct appeals, without evidentiary hearings, may not be as effective as other proceedings for developing the factual basis for the claim. Abbreviated

---

of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.' A reviewing court can frequently speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective speculation; rather, they must 'be firmly founded in the record.'") Both capital cases suggest that truncated review of ineffective assistance claims before a Texas appellate court is disfavored. Petitioner's witnesses he will present during Oral Argument, if granted, will further testify that such review has literally been denied as not ripe for consideration in nearly all instances because the appellate court recognizes that an incomplete record precludes an accurate determination of non-record errors. A good example of this latter approach is *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999), wherein the Court of Criminal Appeals explains that it is "not deciding on this direct appeal, therefore, that appellant did or did not receive the effective assistance of counsel." *Id.*

[2] Because only the slip opinion is currently available for *Martinez v. Ryan*, habeas counsel's citations refer to the currently available PDF slip opinion pages.

>deadlines to expand the record on direct appeal may not allow adequate time for an attorney to investigate the ineffective-assistance claim. Thus, there are sound reasons for deferring consideration of the ineffective-assistance-of-trial-counsel claims until the collateral review stage, but this decision is not without consequences for the State's ability to assert a procedural default in later proceedings.

*Id.* at 10. Because the Texas and Arizona systems are nearly identical in their practice – Texas routinely disallowing the assertion of ineffective assistance of trial claims in either a Motion for New Trial or on direct appeal, *Martinez* assures Petitioner "that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default." *Id.*

Respondent's desire to constrict *Martinez* is understandable. The crabbed reading is not, however, valid in light of *Torres* and the actual Texas practice in death penalty cases challenging trial counsel's duty to investigate and present mitigating evidence. *See e.g., Ex Parte Torres*, 943 S.W.2d at 475. The Texas Court of Criminal Appeals has made clear its nearly automatic preference for ineffective assistance claims to be pursued during state habeas or, under *Martinez*, in the initial-review collateral proceeding. *Id. See also Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This state practice qualifies Petitioner to benefit from the *Martinez* holding regarding procedural default.

Further, Justice Kennedy makes clear that *Martinez* is an equitable rule. As such, this Court should consider the actual practice and literal application of Texas law – from an equitable perspective wherein the Court assesses a litigant's first real opportunity for first-tier review and not some abstract notion of "opportunity" that is nearly impossible to utilize. *Anton Affidavit*, at 3.

For these reasons, and due to the Texas Court of Criminal Appeals precedent in *Torres* and its progeny, Texas death penalty convicts have only one viable option to assert their

ineffective assistance of trial counsel claims – state habeas. *Ex Parte Torres*, 943 S.W.2d at 475. *See also Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Respondent's misunderstanding of the actual practice in Texas death penalty cases does not diminish the reality that Texas death penalty convicts face a situation that, for all practical purposes, is identical to *Martinez*. What Arizona law requires via statute, Texas law requires via practice. *Id.* For these reasons, Petitioner urges this Court to apply *Martinez v. Ryan* to Texas death penalty cases as a logical extension of the Supreme Court's holding regarding first-tier, first-opportunity review.

Respondent's hollow assertion that Texas death penalty convicts "have seventy-five days to develop and present [their ineffective assistance of counsel] claims in the motion-for-new-trial-context," ignores the reality in Texas, noted by the Texas Court of Criminal Appeals in *Torres*, that the transcripts in Texas death penalty cases are not available for review or consideration under this time frame. *Id.* (finding, in a non-death penalty case, that a Motion for New Trial is generally not a suitable vehicle for raising ineffective assistance of trial counsel claims because "that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point."). Rather, the reality is that most Texas death penalty transcripts are not available for review for four to five months after trial. *Anton Affidavit*, at 2. That reality undermines Respondent's entire theoretical argument. Theory, in the academic context, is one thing. However, the Supreme Court's holding in *Martinez v. Ryan* is not based on an academic reading of theoretically possible options. Instead, *Martinez v. Ryan* faces the real situation, identical to that faced by Texas death penalty convicts articulated in *Torres* and its progeny, that individuals must be permitted one viable opportunity to assert their Sixth Amendment right to the effective assistance of counsel claims. *See Ex Parte Torres*, 943

9

S.W.2d 469, 475 (Tex. Crim. App. 1997); *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Respondent's assertion that to find *Martinez* applies to Escamilla's Texas criminal judgment, the Court would have to construe Texas precedent in a manner that "contradict[s] a recent decision of the highest state court," is simply unsupportable. *Respondent Thaler's Response*, at 9. Petitioner's numerous citations to the contrary support his argument regarding Texas practice. *See Ex Parte Torres*, 943 S.W.2d at 475; *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Respondent fails to inform this Court that its chosen authority, *Lopez*, not only does not overrule or otherwise diminish *Torres* and its progeny, *Lopez* itself reminds that the Texas Court of Criminal Appeals "*has repeatedly* stated that claims of ineffective assistance of counsel are generally not successful on direct appeal *and are more appropriately urged in a hearing on an application for writ of habeas corpus*." *Lopez*, 343 S.W.3d at 143 (emphasis added). The *Lopez* court further supports Petitioner's argument for the application of *Martinez v. Ryan* to his case where the Texas Court of Criminal Appeals reminds that "[o]n direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation." *Id.  Lopez* is but a reassertion of *Torres* and its progeny indicating that the preferred, if not mandatory, course of action for asserting ineffective assistance of counsel claims in Texas is through the state habeas process. *See Anton Affidavit*, at 4 (explaining that under the Attorney General's approach to state habeas, which focuses on trial counsel's strategy, such determination cannot be litigated without the trial attorney's explanation).

Respondent's incomplete, if not erroneous, reliance on *Lopez* is inapposite.  Practically, Petitioner's case is identical to *Martinez v. Ryan*.  The Texas Court of Criminal Appeals has "repeatedly stated" that the record and transcript limitations in Texas cases precludes the assertion of ineffective assistance of trial counsel claims in either Motions for New Trial or direct appeal.  *Id.  See also Ex Parte Torres*, 943 S.W.2d at 475; *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  These same concerns motivated the *Martinez* court to hold that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 15.

Petitioner's state habeas counsel failed to provide important and readily available evidence supporting Petitioner's ineffective assistance of trial counsel claims.  Failure to provide evidentiary support for habeas claims falls below professional norms of practice and ensures denial of the claim.  Because Petitioner has raised a substantial ineffective assistance of counsel claim against his trial counsel for failure to investigate and present mitigating evidence, and his habeas counsel failed to develop or admit any evidence supporting this claim during the state habeas proceedings, this Court should find *Martinez v. Ryan* applicable to his case, excuse any procedural default and GRANT Petitioner's requested Motion for New Trial in all respects.

In the alternative, Petitioner respectfully requests that this Court GRANT him a Certificate of Appealability on the *Martinez* issue.  Because the *Martinez* issue presents a case of first impression in this Circuit and reasonable jurists could disagree on its application and scope, a Certificate of Appealability is justified.

IV.     Petitioner's Request that this Court Apply the Proper Prejudice Standard

Respondent Thaler wholly dismisses Petitioner's request for New Trial based on this Court's failure to apply the proper prejudice standard under clearly established federal law. *Respondent Thaler's Response*, at 2 (noting that only Petitioner's *Martinez* claim "warrants a response"). Petitioner's request for New Trial on this issue, however, is appropriate and represents an accurate statement of the governing legal standards.

Petitioner's Motion for New Trial challenges that the Magistrate Judge erred on pages 51-52 of her Findings by suggesting that because Petitioner's abusive and violent upbringing did not rise to the level of *Wiggins* and *Rompilla* he failed to show prejudice. This is not the proper test for prejudice under clearly established federal law. Instead, the test is simply whether, in light of the evidence presented in the state trial and state habeas proceedings, there is a reasonable probability that Petitioner would have received a life sentence. *See Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). Reviewing courts must balance all the mitigating evidence against the aggravating evidence. *Williams v. Taylor*, 529 U.S. at 397-98. The Magistrate Judge failed to do so. And, by adopting these Findings, this Court likewise applied the wrong standard.

Neither the Magistrate Judge nor this Court applied the proper governing legal standard in relation to the prejudice prong of *Strickland* and, thus, Petitioner has shown himself entitled to a New Trial at least on this issue. Reasonable jurists could not disagree that the governing standard for the prejudice assessment under *Strickland* requires a balancing of all mitigating evidence against the aggravating evidence, not simply a comparison as to whether a Petitioner's evidence is less than or greater than another litigant. *See Williams v. Taylor*, 529 U.S. 362

(2000); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005).

As Petitioner asserted in his initial Motion, this Court, in adopting the Magistrate Judge's Findings that Petitioner's evidence did not "rise to the level of abuse and neglect" of Wiggins and Rompilla committed legal error. The trilogy of *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005), all resort back to the seminal case of *Strickland v. Washington*, 466 U.S. 688 (1984). None of these cases serve as the floor – an example whereby if you fail to prove extreme sexual abuse or maltreatment – you cannot succeed under an ineffective assistance of counsel claim. Rather, these decisions require that reviewing courts balance the aggregate mitigating evidence, both that adduced at trial and during the state habeas proceedings, against the aggravating factors. *See Williams v. Taylor*, 529 U.S. at 397-98.

Petitioner respectfully requests that this Court GRANT his Motion for New Trial on this issue or, in the alternative, GRANT him a Certificate of Appealability regarding whether the federal courts have provided him proper legal review under the governing prejudice standard set forth in clearly established federal law. To date, Petitioner asserts his *Strickland* prejudice claims have not received analysis under the proper legal standard of review.

V.   Conclusion

For all the preceding reasons, and the reasons set forth in his initial Rule 59 Motion for New Trial Petitioner respectfully requests that this Court GRANT, in all respects, his Motion for New Trial and, further, GRANT his request for federal habeas relief. In the alternative, Petitioner respectfully requests this Court GRANT him a Certificate of Appealability regarding

the applicability of *Martinez v. Ryan* to Texas death penalty cases and the proper prejudice standard under clearly established federal law.

Respectfully Submitted,

*Mary M. Penrose*
Mary M. Penrose
Texas Wesleyan School of Law
1515 Commerce Street
Fort Worth, TX  76102
(972) 310-8669
mpenrose@law.txwes.edu

## CERTIFICATE OF SERVICE

I, Mary Margaret Penrose, certify that on May 9, 2012, I served Petitioner's Reply to Respondent Thaler's Response and Opposition to Motion for New Trial and Supporting Affidavit on lead counsel for Respondent, Leslie K. Kuykendall, via email at her email address: leslie.kuykendall@oag.state.tx.us.

*Mary M. Penrose*