IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LICHO ESCAMILLA, | § § § | |
| Petitioner, | § § | |
| vs. | § § | No: 3:06-CV-2248-O (BH) |
| RICK THALER, Director TDCJ Institutional Division, | § § § | |
| Respondent. | § § | |

AFFIDAVIT

BEFORE ME, the undersigned authority, this date personally appeared Bruce Anton, who after being sworn by me did state on his oath the following:

My name is Bruce Anton. I am over the age of 18 years, I have never been convicted of a felony or crime of moral turpitude, and am otherwise fully competent to make this affidavit. The matters contained in this affidavit are within my personal knowledge and are true and correct.

As a board certified criminal law specialist with 31years experience, ( 26 with a certification) as well as a board certified criminal appellate law specialist I believe that the opportunity to litigate ineffective assistance of counsel claims via a motion for new trial or on direct appeal do not exist, except in theory. I have

represented at least ten people on death row with post-conviction litigation, have handled two death penalty appeals and have tried a death penalty case to a verdict.

In Texas, a motion for new trial, setting forth all the claims and supported by affidavit or other proof must be filed within thirty days of the verdict. Thereafter. The trial court may allow an additional forty five days to resolve any issues. The motion may not be amended after the thirty day period has expired. Appellate counsel is not typically appointed until after the verdict.

In order to raise and litigate an ineffective assistance of counsel claim by motion for new trial, the appellate attorney would have to have knowledge of the unprofessional act. Then, counsel would have to marshal the evidence or affidavits necessary to establish trial counsel's deficiency. If trial counsel were consulting with an expert, that expert would undoubtedly have to have read the pertinent part of the trial record in order to make an informed decision. Since capital murder trials are often fifty volumes long, with half a dozen or more volumes of exhibits and ten or so volumes of actual trial testimony, there is no practical chance that the pertinent part of the record can be typed up and distributed to counsel quick enough to give him the opportunity to raise the claims.

The types of issues in death penalty cases concerning ineffective assistance claims frequently involve mitigation evidence. This requires the post-conviction attorney to obtain, from the court, trial counsel and the experts, all the mitigation

gathered. It then requires that counsel retain a mitigation expert to review the material and an investigative team to talk with client and his family to evaluate the evidence presented as well as the evidence not obtained. In short, within thirty days appellate counsel would have to do what trial counsel is routinely given six to nine months to accomplish, in addition to getting the court to provide a transcript.

If appellate counsel then rushes to complete this job to beat the deadline and misses other issues, he would be as ineffective as trial counsel. Simply put, the state's suggestion that such IAC claims in a death penalty case can be litigated in a motion for new trial is absurd.

Even if the issue is one of trial error, such as a *Crawford* objection, trial counsel would have to obtain the complete trial record in order to put the error in context. He would have to interview trial counsel about the error, providing such counsel a copy of the transcript so that trial counsel is given a fair chance to respond. The entire record, including the punishment phase and the exhibits, would have to be fully examined in order to show a prejudicial effect.

If the IAC claim involves jury selection, then the attorney must assimilate approximately thirty to forty additional volumes of testimony. The attorney would have to examine the list of the venire and then question trial counsel on the reason for their choices. If the court reporter produced one volume a day, the record could not be completed within the thirty day limit for filing.

Of course these hypotheticals beg the question: how does the appellate attorney know what errors to look for unless he sat through the entire trial and made a detailed log of the errors at trial? Appellate counsel could not conceivably begin to locate error until he read and studied the record. Appellate attorneys are not clairvoyant the entire of history of post-conviction litigation establishes that trial attorneys are unwilling to admit their mistakes.

Notwithstanding the attorney general's assertion to the contrary, the case law in Texas is unmistakably clear that IAC claims are disfavored on direct appeal because the appellate record never reflects the trial attorney's subjective strategy. Therefore, unless preceded by a motion for new trial, there is no opportunity to address these issues on direct appeal. Consider mitigation issues, where the reasonableness of the investigation, the reasonableness of the decision to utilize experts and the reasonableness of the decision to exclude evidence are key. None of these issues can be litigated on direct appeal because the trial record will not contain the trial attorney's justifications for his decisions.

Likewise, the attorney general often cites cases for the proposition that the decision not to object to evidence is a strategic one that requires an explanation. Therefore, even where the record plainly shows that inadmissible evidence was presented, the issue cannot be litigated without the trial attorney's explanation.

In sum, the Texas criminal justice system presents no vehicle for appropriately litigating IAC claims by motion for new trial or on direct appeal. The attorney

Further, Affiant sayeth not.

_____
Bruce Anton

SUBSCRIBED AND SWORN TO BEFORE ME on this 9th day of May, 2012.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS.

My commission expires: 2-9-16



CECILIA YVONNE SUAREZ
Notary Public, State of Texas
My Commission Expires
February 09, 2016

5